1    SUNNY S. HUO (State Bar No. 181071)
    ssh@severson.com
2    KALAMA M. LUI-KWAN (State Bar No. 242121)
    kml@severson.com
3    SEVERSON & WERSON
    A Professional Corporation
4    One Embarcadero Center, Suite 2600
    San Francisco, CA 94111
5    Telephone: (415) 398-3344
    Facsimile: (415) 956-0439
6

7    Attorneys for Defendants
    America's Wholesale Lender, Countrywide
    Home Loans Servicing L.P., ReconTrust
8    Co., Bank of America, N.A., and
    Bank of New York Mellon
9

ORIGINAL
FILED

NOV 30 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

**WHA**

10            UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA

**CV 09    5630**

12    PETRA MARTINEZ,           Case No.:
                             (Superior Court Case No. M100410)
13         Plaintiff,

14       v.                        **NOTICE OF REMOVAL**

15    AMERICA'S WHOLESALE LENDER, *et al.*,

16         Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

E-fil

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA:

Defendants America's Wholesale Lender, Countrywide Home Loans Servicing L.P.,

ReconTrust Co., Bank of America, N.A., and Bank of New York Mellon (erroneously sued herein

as Bank of New York) (Defendants') hereby remove to this Court the state-court action described

below.

### THE REMOVED ACTION

1.      Defendants are named in the civil action filed on October 22, 2009, by plaintiff

Petra Martinez ('Plaintiff') in the Superior Court of the State of California for the County of

Monterey ('Superior Court'), Case No. M100410, entitled *Petra Martinez v. America's Wholesale*

*Lender, Countrywide Home Loans Servicing L.P., ReconTrust Co., N.A., Mortgage Electronic*

*Registration Systems, Inc., Bank of America, N.A., Bank of New York and Does 1 through 100*

('State Court Action').

2.      On October 27, 2009, defendants Bank of America, N.A. and Bank of New York

Mellon were purportedly served with copies of the Summons and Complaint that were filed with

the Superior Court in this action.  Attached hereto as Exhibit A are copies of all process,

pleadings, and orders filed in the State Court Action, including the Summons and Complaint.

### BASIS FOR REMOVAL

3.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331.  This

action may be removed pursuant to 28 U.S.C. § 1441(b) because the Complaint raises questions

of federal law.  Specifically, the Complaint alleges violations of the federal Real Estate

Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ('RESPA'), and Fair Debt Collection

Practices Act, 15 U.S.C. §§ 1692, *et seq.* ('FDCPA').  (*See, e.g.*, Complaint ¶¶ 95-99, 103-04.)

4.      The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28

U.S.C. §§ 1367, 1441(c).

5.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed on

November 30, 2009, which is within 30 days of the first service on any defendant of a copy of the

Complaint.

6.      Removal to this District Court is proper because this is the District that embraces the county in which Plaintiff filed the State Court Action.  28 U.S.C. § 1441(a); Civ. L.R. 3-2(e).

7.      The only non-removing defendant in this action is Mortgage Electronic Registration Systems, Inc. ("MERS").  As far as Defendants are aware, MERS has not been properly served and has not appeared in the State Court Action.  As of November 30, 2009, no proof of service has been filed in the Superior Court with respect to MERS.  Defendants' counsel contacted and was informed by the clerk of the State Court that Plaintiff filed a proof of service, which states that she served "Mortgage Electronic Registration Systems" on October 26, 2009 by serving an individual identified as "Brosnan" at 3321 Vincent Road in Pleasant Hill, California. The entity that was served, however, is not MERS.  MERS is incorporated in Delaware, not California, and is not affiliated with the "Mortgage Electronic Registration Systems" entity that was purportedly served.  Indeed, MERS obtained an injunction against the "Mortgage Electronic Registration Systems" entity in a trademark infringement action pending in this District.  *See Mortgage Electronic Registration Sys., Inc. v. Brosnan*, 2009 WL 3647125, at *10 (N.D. Cal. Sept. 4, 2009).  Defendants that have not been served are not required to join in a removal, and the served defendants may remove without those defendants.  *See Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429-30 (9th Cir. 1984) (superseded in irrelevant part by statute); *Cmty. Bldg. Co. v. Maryland Cas. Co.*, 8 F.2d 678, 678-79 (9th Cir. 1925); *Lopez v. BNSF Railway Co.*, 614 F.Supp.2d 1084, 1088 (E.D. Cal. Dec. 7, 2007).  MERS is therefore not required to join in the removal of this action.

WHEREFORE, Defendants pray that this action be removed to this Court for final determination.

DATED: November 30, 2009

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By: _____/s/ Kalama M. Lui-Kwan_____
           Kalama M. Lui-Kwan

Attorneys for Defendants America's Wholesale Lender, Countrywide Home Loans Servicing L.P., ReconTrust Co., Bank of America, N.A., and Bank of New York Mellon

# EXHIBIT A

Monterey County Superior Court
Monterey
1200 Aguajito Road
Monterey, California  93940
11-30-09     9:43 am

Number: 783995

From: Sayler

Check
#29692

GN M100410
Martinez, Petra A vs. America's Wholesale Lender

Copy Fees                    $210.50
                        ---------------
          File Total:    $210.50

CDEVI

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Michael Rooney SBN 248491<br>Michael Rooney Law Office<br>580 California Street FL 16<br>San Francisco, CA 94104<br>(415) 533-0282<br>ATTORNEY FOR Plaintiff | **FILED**<br>NOV 0 3 2009<br>CONNIE MAZZEI<br>CLERK OF THE SUPERIOR COURT<br>DEPUTY<br>S. HANS |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY<br>1200 Aguajito Rd<br>Monterey, CA 93940 | |
|---|---|
| PLAINTIFF/PETITIONER: PETRA MARTINEZ<br>DEFENDANT/RESPONDENT: AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
| Proof of Service of Summons | REF NO OR FILE NO:<br>Martinez |

**Filed By Fax**

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   Summons on First Amended Complaint, First Amended Complaint

   Case Management Notice, ADR Packet

3a. Party Served:

   THE BANK OF NEW YORK

3b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made):

   Margret Wilson
   Authorized agent for Service of Process at CT Corporation System

4. Address where the party was served:

   818 WEST SEVENTH ST 200
   LOS ANGELES, CA 90017

5. I served the party:
   a. By personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party.

      (1) on: 10/27/2009     (2) at: 11:15 AM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of: THE BANK OF NEW YORK

      under the following Code of Civil Procedure section:

      416.10 (Corporation)

7. Person who served papers
   a. Name: John Duong
   b. Address: 14748 Pipeline Avenue, Suite B, Chino Hills, CA 91709

CONTINUED ON NEXT PAGE

Form Adopted for Mandatory Use<br>Judicial Council of California  POS-010<br>[Revised January 1, 2007]

Proof of Service of Summons

Code of Civil Procedure, §417.10

Invoice No: 732657-02

| PLAINTIFF/PETITIONER: PETRA MARTINEZ<br>DEFENDANT/RESPONDENT: AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
|---|---|

c. Telephone number: 909-664-9565
d. The fee for this service was: 119.50
e. I am:
  (3) [X] a registered California process server.
    (i) [X] Employee
    (ii) Registration No.: 5932   Expires: 10/23/2010
    (iii) County: Los Angeles

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

10/29/2009

John Duong

Rapid Legal, Inc., San Bernardino Co. Reg. #1086, Expires 04-15-10

Form Adopted for Mandatory Use
Judicial Council of California  POS-010
[Revised January 1, 2007]

**Proof of Service of Summons**

Invoice No:  732657-02

Code of Civil Procedure,  §417.10

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY**<br>Michael Rooney SBN 248491<br>Michael Rooney Law Office<br>580 California Street FL 16<br>San Francisco, CA 94104<br>(415) 633-0282<br>ATTORNEY FOR Plaintiff | FOR COURT USE ONLY<br><br>**FILED**<br>OCT 30 2009<br>CONNIE MAZZEI<br>CLERK OF THE SUPERIOR COURT<br>S. HANS DEPUTY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY<br>1200 Aguajito Rd<br>Monterey, CA 93940 |

| | |
|---|---|
| PLAINTIFF/PETITIONER: PETRA MARTINEZ<br>DEFENDANT/RESPONDENT: AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
| Proof of Service of Summons | REF NO OR FILE NO:<br>Martinez |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    Summons on First Amended Complaint, First Amended Complaint

    Case Management Notice, ADR Packet

3a. Party Served:

    BANK OF AMERICA, NATIONAL ASSOCIATION

3b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made):

    Margret Wilson<br>    Authorized agent for Service of Process at CT Corporation System

4. Address where the party was served:

    818 WEST SEVENTH ST 200<br>    LOS ANGELES, CA 90017

5. I served the party:
    a. By personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party.

        (1) on: 10/27/2009    (2) at: 11:15 AM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    d. on behalf of: BANK OF AMERICA, NATIONAL ASSOCIATION

    under the following Code of Civil Procedure section:

    416.10 (Corporation)

7. Person who served papers
    a. Name: John Duong
    b. Address: 14748 Pipeline Avenue, Suite B, Chino Hills, CA 91709

CONTINUED ON NEXT PAGE

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Revised January 1, 2007] | **Proof of Service of Summons** | Code of Civil Procedure, §417.10<br>Invoice No: 732657-01 |

| PLAINTIFF/PETITIONER:  PETRA MARTINEZ<br>DEFENDANT/RESPONDENT:  AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
| --- | --- |

   c. Telephone number: 909-664-9565
   d. The fee for this service was: 85.00
   e. I am:
     (3) [X] a registered California process server.
       (I) [X] Employee
       (II) Registration No.: 6932   Expires: 10/23/2010
       (III) County: Los Angeles

  8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

10/29/2009

John Duong

Rapid Legal, Inc., San Bernardino Co. Reg. #1066, Expires 04-15-10

Form Adopted for Mandatory Use
Judicial Council of California POS-010
(Revised January 1, 2007)

Proof of Service of Summons

Code of Civil Procedure, §417.10

Invoice No:   732657-01



POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Michael Rooney SBN 248491<br>Michael Rooney Law Office<br>580 California Street FL 16<br>San Francisco, CA 94104<br>(415) 533-0282<br>ATTORNEY FOR Plaintiff | **FILED**<br>OCT 2 7 2009<br>CONNIE MAZZEI<br>CLERK OF THE SUPERIOR COURT<br>B. IVANS          DEPUTY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY<br>1200 Aguajito Rd<br>Monterey, CA 93940 | |
| PLAINTIFF/PETITIONER: PETRA MARTINEZ<br>DEFENDANT/RESPONDENT: AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
| Proof of Service of Summons | REF NO OR FILE NO:<br>Martinez |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   Summons on 1st Amended Complaint _ First Amended
   Complaint _ Case Management Notice _ ADR
   Information Packet (Monterey County)

3a. Party Served:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC
   By Serving JOHN BROSNAN, Agent for Service

4. Address where the party was served:

   3321 VINCENT RD
   PLEASANT HILL, CA 94523

5. I served the party:
   b. By substituted service. On: 10/26/2009 at: 03:40 PM I left the documents listed in item 2 with or in the presence of:

   Wendy Zimmerman
   Person in Charge

   (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of
   business of the person to be served. I informed him or her of the general nature of the papers.

   (4) I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
   at the place where the copies were left (Code Civ. Proc., Section 415.20). I mailed the documents on

   A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC

   under the following Code of Civil Procedure section:

CONTINUED ON NEXT PAGE

Form Adopted for Mandatory Use                                                                  Code of Civil Procedure, §417.10
Judicial Council of California POS-010          **Proof of Service of Summons**          Invoice No: 732658
[Revised January 1, 2007]

| PLAINTIFF/PETITIONER: PETRA MARTINEZ<br>DEFENDANT/RESPONDENT: AMERICA'S WHOLESALE LENDER, et al | CASE NUMBER:<br>M100410 |
| --- | --- |

416.10 (Corporation)

7. Person who served papers
   a. Name: Josh Darty
   b. Address: 14748 Pipeline Avenue, Suite B, Chino Hills, CA 91709
   c. Telephone number: 909-664-9565
   d. The fee for this service was: 89.50
   e. I am:
   (3) [X] a registered California process server:
        (i) [X] Independent Contractor
        (ii) Registration No.: 724   Expires: 4/22/2010
        (iii) County: Contra Costa

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

10/27/2009

Josh Darty

Rapid Legal, Inc., San Bernardino Co. Reg. #1086, Expires 04-15-10

Proof of Service of Summons

Code of Civil Procedure, §417.10

Invoice No:   732658

ORIGINAL

**File by Fax**

| ATTORNEY OR PARTY WITHOUT ATTORNEY   (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Michael Rooney SBN 248491<br>Michael Rooney Law Office<br>580 California Street FL 16<br>San Francisco, CA 94104<br>ATTORNEY FOR   Plaintiff | (415) 533-0282<br><br>Ref. No. or File No.<br>Martinez | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY - CENTRAL
1200 Aguajito Rd
Monterey, CA 93940

SHORT TITLE OF CASE:
PETRA MARTINEZ vs AMERICA'S WHOLESALE LENDER, et al

| INVOICE NO.<br>732858 | DATE: | TIME: | DEP./DIV. | CASE NUMBER:<br>M100410 |
|---|---|---|---|---|

Proof of Service by Mail

I am a citizen of the United States and employed in the County of Solano State of California. I am and was on the dates herein mentioned, over the age of eighteen years and not a party to the action.

On 10/27/2009, I served the within:

Summons on 1st Amended Complaint _ First Amended Complaint _ Case Management Notice _ ADR Information Packet (Monterey County); .;

On the defendant, in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon pre-paid for first class in the United States mail At: Fairfield, California, addressed as follows:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC
3321 VINCENT RD
PLEASANT HILL, CA 94523

Declarant:
  a. Name: Maya Solis
  b. Address: 14748 Pipeline Avenue, Suite B, Chino Hills, CA 91709
  c. Telephone number: 909-664-9565
  d. The fee for this service was: 89.50
  e. I am:
    (3) [X] a registered California process server:
      (i) [X] Employee
      (ii) Registration No.: 337-08
      (iii) County: Solano

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

10/27/2009

Maya Solis

Rapid Legal, Inc., San Bernardino Co. Reg. #1086, Expires 04-15-10

Proof of Service by Mail

Stephen L. Magnini                    CRREBECCA
Monterey County Recorder              9/29/2009
Recorded at the request of            9:35:22
**Filer**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Michael Patrick Rooney, Esq.
580 California Street 16th Floor
San Francisco, CA 94104

**DOCUMENT: 2009061388**   Titles: 1/ Pages: 6

Fees....     25.00
Taxes...
Other...
AMT PAID    $25.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**FILED**

OCT 2 2 2009

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
Stolone   DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

MONTERREY COUNTY (UNLIMITED CIVIL JURISDICTION)

PETRA MARTINEZ,

    Plaintiff,

vs.

AMERICA'S WHOLESALE LENDER,
COUNTRYWID/BANK OF AMERICA,
RECON TRUST/MERS, and DOES 1-100,

    Defendants.

CASE NO: M 100410

**NOTICE OF PENDENCY OF ACTION**
[Cal. Code Civ. Proc. § 405.20]

    Notice is given that the above-entitled action was filed in the above-entitled court on August 23, 2009 by PETRA MARTINEZ, against AMERICA WHOLESALE LENDER, *et al.*, Defendants. The action affects title to specific real property and the right to possession of specific real property identified in the COMPLAINT.

    The specific real Property affected by the action is located in MONTERREY County, California, and is described as in Exhibit A, attached and hereby incorporated by reference.

Dated September 23, 2009

ACKNOWLEDGMENT ATTACHED

_____
Michael Patrick Rooney, Esq.
MICHAEL ROONEY LAW OFFICE
Attorney for PETRA MARTINEZ

# EXHIBIT A

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of MONTEREY, State of California**, and described as follows:

**PARCEL I:**

PARCEL "D", AS SHOWN AND DESIGNATED ON THAT CERTAIN MAP FILED DECEMBER 5, 1985 IN VOLUME 16 OF PARCEL MAPS, AT PAGE 117, MONTEREY COUNTY RECORDS.

**PARCEL II:**

NON-EXCLUSIVE EASEMENT FOR ROAD AND UTILITY PURPOSES OVER THE FOLLOWING DESCRIBED PARCEL OF LAND:

CERTAIN REAL PROPERTY SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF A 40 FOOT COUNTY ROAD KNOWN AS ROBLEY ROAD, AT THE INTERSECTION TO THE NORTHERLY BOUNDARY OF A 3.000 ACRE PARCEL OF LAND SHOWN ON THAT CERTAIN RECORD OF SURVEY FILED ON AUGUST 19, 1959 IN VOLUME X-2 OF SURVEYS, AT PAGE 32, RECORDS OF MONTEREY COUNTY, CALIFORNIA, DISTANT FROM THE NORTHWEST CORNER OF SAID PARCEL N. 87° 20' E., 26.26 FEET; THENCE, LEAVING THE LINE OF SAID ROAD AND FOLLOWING THE NORTHERLY BOUNDARY OF SAID PARCEL.

(1) N. 87° 20' E., 16.85 FEET; THENCE, LEAVING SAID BOUNDARY

(2) S. 67° 10' E., 5.53 FEET; THENCE

(3) EASTERLY, 93.46 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 170 FEET; THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS S. 82° 55' E., 92.29 FEET); THENCE

(4) N. 81° 20' E., 114.00 FEET; THENCE

(5) EASTERLY, 97.39 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 930 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS N. 84° 20' E., 97.34 FEET); THENCE

(6) N. 87° 20' E., 143.00 FEET, PARALLEL TO AND ONE FOOT SOUTHERLY OF THE NORTHERLY BOUNDARY OF SAID 3.000 ACRE PARCEL; THENCE

(7) SOUTHEASTERLY, 90.06 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH A RADIUS OF 180 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS S. 78° 20' E., 89.12 FEET); THENCE.

(8) S. 64° 00' E., 166.51 FEET, TO A POINT ON THE EASTERLY BOUNDARY OF SAID 3.00 ACRE PARCEL; THENCE, ALONG SAID BOUNDARY

(9) S. 1° 01' E., 67.35 FEET, TO A 3/4" PIPE, AT THE SOUTHEAST CORNER OF SAID PARCEL;

THENCE, LEAVING SAID BOUNDARY

(10) N. 64° 00' W., 197.10 FEET; THENCE

(11) NORTHWESTERLY, 60.04 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 120 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS N. 78° 20' W., 59.42 FEET); THENCE

(12) S. 87° 20' W., 143.00 FEET; THENCE

(13) WESTERLY, 91.11 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH RADIUS OF 870 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS S. 84° 20' W., 91.06 FEET); THENCE

(14) S. 81° 20' W., 114.00 FEET; THENCE

(15) WESTERLY, 126.45 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 230 FEET, THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS N. 82° 55' W., 124.86 FEET); THENCE

(16) N. 67° 10' W., 30.65 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF ROBLEY ROAD; THENCE FOLLOWING SAID LINE

(17) NORTHEASTERLY, 54.5 FEET, ALONG THE ARC OF A NON-TANGENT CURVE TO THE RIGHT, THE CENTER OF WHICH BEARS S. 61° 37' 45" E., 280.00 FEET, THROUGH A CENTRAL ANGLE OF 11° 03' 35" (LONG CHORD BEARS N. 33° 54' 02" E., 53.96 FEET), TO THE POINT OF BEGINNING.

PARCEL III:

A NON-EXCLUSIVE EASEMENT, RIGHT OF WAY, AND RIGHT ON, OVER, UNDER, ACROSS AND THROUGH THE FOLLOWING DESCRIBED PROPERTY FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS AND EGRESS AND FOR THE PLACEMENT, INSTALLATION, CONSTRUCTIONS, USE, OPERATION, MAINTENANCE, REPAIR AND REPLACEMENT OF SUCH WORKS OR IMPROVEMENTS THEREON AS MAY BE NECESSARY, USEFUL OR CONVENIENT TO FURTHER OR TO EXPEDITE THE USE OR UTILIZATION OF THE FOLLOWING DESCRIBED PROPERTY FOR SUCH PURPOSES OF ACCESS, INGRESS AND EGRESS INCLUDING THE RIGHT TO CONSTRUCT, PLACE, INSTALL, USE, OPERATE, MAINTAIN, REPAIR, AND REPLACE DRAINAGE, WATER, SEWER, ELECTRICAL, GAS, CABLE, COMMUNICATION AND OTHER UTILITY LINES OR FACILITIES AND ANY APPURTENANCES THERETO, SAID EASEMENT TO BE RETAINED BY AND INURE TO THE BENEFIT OF GRANTEE, ITS SUCCESSORS AND ASSIGNS AND SHALL RUN WITH AND BENEFIT ANY PARCEL OF LAND OR PART THEREOF NOW OWNED BY GRANTEE WHICH LIES ADJACENT THERETO, SAID EASEMENT BEING ON PROPERTY DESCRIBED AS FOLLOWS:

BEING A PART OF PARCELS, 2, 3 AND 4 OF THAT CERTAIN MAP FILED IN VOLUME 3 OF PARCEL MAPS, AT PAGE 81, MONTEREY COUNTY RECORDS, AND BEING A STRIP OF LAND 60.00 FEET IN WIDTH, 30.00 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING IN THE WESTERN BOUNDARY OF SAID PARCEL 2 FROM WHICH A 1 INCH IRON PIPE "RCE 1215" AT THE SOUTHEASTERN CORNER FOR THAT CERTAIN 2.915 AC. NET PARCEL SHOWN ON THE MAP ENTITLED, "RECORD OF SURVEY OF 3.000 AC. TRACT IN U.S. LOT 4, SEC. 9, T. 16 S., R. 2 E., M.D.B. & M." FILED IN VOLUME X-2 OF SURVEYS AT PAGE 32, MONTEREY COUNTY RECORDS, BEARS ALONG WESTERN BOUNDARY SOUTH 1° 01' EAST 23.56 FEET DISTANT THENCE FROM SAID POINT OF BEGINNING SOUTH 61° 58' EAST, 102.83 FEET TO THE BEGINNING

OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE LEFT WITH A RADIUS OF 800.00 FEET THROUGH A CENTRAL ANGLE OF 16° 02' FOR A DISTANCE OF 223.87 FEET; THENCE SOUTH 78° 00' EAST, 104.75 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 185.00 FEET THROUGH A CENTRAL ANGLE OF 45° 44' FOR A DISTANCE OF 147.67 FEET; THENCE SOUTH 32° 16' EAST, 45.64 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE EASTERLY CURVING TO THE LEFT WITH A RADIUS OF 175.00 FEET, THROUGH A CENTRAL ANGLE OF 72° 30' A DISTANCE OF 221.41 FEET; THENCE NORTH 75° 14' EAST 133.43 FEET TO THE BEGINNING A TANGENT CURVE; THENCE NORTHERLY CURVING TO THE LEFT WITH A RADIUS OF 150.00 FEET THROUGH A CENTRAL ANGLE OF 72° 38', FOR A DISTANCE OF 190.15 FEET, THENCE NORTH 2° 36' EAST, 44.30 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE NORTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 200 FEET A DISTANCE OF 48 FEET MORE OR LESS TO THE NORTHEASTERN BOUNDARY OF SAID PARCEL 4.

TOGETHER WITH SLOPE EASEMENTS AS REQUIRED FOR CUT AND FILL PURPOSES FOR THE PROPOSED ROAD CONSTRUCTION.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL B, AS SAID PARCEL IS SHOWN AND SO DESIGNATED ON PARCEL MAP FILED DECEMBER 5, 1985 IN BOOK 16 OF PARCEL MAPS AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL IV:

AN EASEMENT 8 FEET WIDE, FOR ACCESS, UTILITIES AND INCIDENTAL PURPOSES, SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF PARCEL 2, AS SAID PARCEL IS SHOWN AND DESIGNATED UPON THAT CERTAIN PARCEL MAP FILED DECEMBER 13, 1972 IN VOLUME 3 OF PARCEL MAPS AT PAGE 81, RECORDS OF MONTEREY COUNTY, CALIFORNIA, AND RUNNING ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL

1) S. 26° 34' 15" W., 341.92 FEET TO AN ANGLE POINT IN SAID LINE; THENCE CONTINUING ALONG SAID LINE

2) S. 49° 34' 45" W., 20.47 FEET; THENCE LEAVING SAID LINE

3) N. 26° 34' 15" E., 361.81 FEET TO THE NORTHEASTERLY LINE OF SAID PARCEL; THENCE ALONG SAID LINE

4) S. 60° 25' E., 8.01 FEET TO THE POINT OF BEGINNING.

PARCEL V:

AN UNDIVIDED 1/30TH INTEREST IN AND TO THAT CERTAIN WATER SYSTEMS DESIGNATED IN THE DOCUMENT ENTITLED "CHAMISAL WATER ASSOCIATION, RECORDED JUNE 28, 1979 IN REEL 1341, PAGE 572 MONTEREY COUNTY RECORDS, AS DESCRIBED IN THE DEED FROM CHAMISAL TENNIS CLUB, ET AL, RECORDED NOVEMBER 28, 1989 IN REEL 2438, PAGE 124, OFFICIAL RECORDS.

APN No: 416-321-016-000

# END OF DOCUMENT

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Francisco_ }

On _9/23/09_ before me, _Joseph N. Cervelin, Notary Public_,
<br>Date<br>Here Insert Name and Title of the Officer

personally appeared _Michael Patrick Rooney_
<br>Name(s) of Signer(s)

JOSEPH N. CERVELIN
Commission # 1862556
Notary Public - California
San Francisco County
My Comm. Expires Aug 24, 2013

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Joseph N Cull_
<br>Signature of Notary Public

Place Notary Seal and/or Stamp Above

—————— **OPTIONAL** ——————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Individual
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
- ☐ Corporate Officer — Title(s): _____
- ☐ Individual
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 2008 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## DECLARATION OF SERVICE
### [Cal. Code Civ. Proc. § 405.20]

I, Michael Patrick Rooney, declare:

1.  On September 23, 2009, I sent via certified mail, return receipt requested, a copy of the

    *Lis Pendens* executed on September 23, 2009 on behalf of PETRA MARTINEZ,

    affecting title to the real property commonly known as 25339 Camino de Chamisal,

    Salinas, CA 93908 in Monterrey County, CA, to all known addresses of the parties to

    whom the real property claim is adverse and to all owners of record of the real property

    affected by the real property claim as shown by the latest county assessment roll, which

    are:
    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. C/O Countrywide
    Home Loans, Inc., 400 Countrywide Way SV-35, Simi Valley, CA 93065; BANK OF
    AMERICA CA 919-01-41 450 America Street, Simi Valley, CA 93065; RECON TRUST
    Corp. 1800 Tapo Canyon Road CA-6-914-01-94, Simi Valley, CA 93063

2.  I declare under penalty of perjury under the laws of the State of California that the foregoing is

    true and correct, and was executed at San Francisco, California, on September 23, 2009.

                                            Michael Patrick Rooney, Esq.
                                    MICHAEL ROONEY LAW OFFICE
                                        Attorney for PETRA MARTINEZ

## END OF DOCUMENT

SUM-100

# SUMMONS  *on First Amended Complaint*
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMERICA'S WHOLESALE LENDER, COUNTRYWIDE HOME LOANS
SERVICING LP, RECON TRUST COMPANY, N.A., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., BANK OF AMERICA, N.A., BANK OF NEW
YORK, AND DOES 1-100,

**FILED**

OCT 2 2 2009

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
DEPUTY
S. HANS

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

PETRA MARTINEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,0000 más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es)* Monterey County Superior Court, 1200 Aguajito
Road, Monterey, CA 93940

CASE NUMBER
*(Número del Caso):* M100410

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Patrick Rooney, Esq. MICHAEL ROONEY ~~California Street, Fl. 16, San Francisco, CA 94104~~
(415) 533-0282

CONNIE MAZZEI

DATE:
*(Fecha)* OCT 2 2 2009

Clerk, by _____ Deputy
*(Secretario)* S. HANS *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


(SEAL)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure
§§ 412.20, 465

*Filed By Fax*

1

Michael Patrick Rooney, Esq. (State Bar Number 248491)
2 MICHAEL ROONEY LAW OFFICE
580 California Street, FL 16
3 San Francisco, CA 94104
(415) 533-0282
4 (415) 704-3321

5 Attorney for Plaintiffs
PETRA MARTINEZ
6

7

8

9



**FILED**

OCT 22 2009

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
                    DEPUTY
S. HANS

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY

10

11 PETRA MARTINEZ,

12       Plaintiffs,

vs.
13

14 AMERICA'S WHOLESALE LENDER,
COUNTRYWIDE HOME LOANS SERVICING
15 LP, RECON TRUST COMPANY, N.A.,
MORTGAGE ELECTRONIC REGISTRATION
16 SYSTEMS, INC., BANK OF AMERICA, N.A.,
BANK OF NEW YORK AND DOES 1-100,

17       Defendants.

18

Case No. M 100410

FIRST AMENDED COMPLAINT
**JURY TRIAL DEMANDED**

**Filed By Fax**

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

1

## I.   INTRODUCTION

1. Comes now PETRA MARTINEZ, Plaintiff, to seek relief from the adverse and unfounded claims of Defendants BANK OF NEW YORK and RECON TRUST against their home, 25339 Camino De Chamisal, Salinas, CA 93908 ("the Subject Property") and its related collection efforts along with Recon Trust Company, N.A. ("Trustee") including, but not limited to, slanderous and unjustified recordings against Plaintiff's title to the Subject Property, because no security interest was ever formed or perfected in the Subject Property, and even if *arguendo*, the Deed of Trust was not fatally defective in its terms, the subsequent recordings, including the Substitution of Trustee, Notice of Default, Notice of Trustee's Sale, have been defective and illegal. Plaintiff asks the court for cancellation of a voidable instrument, declaratory judgment, and quiet title to the Subject Property as of January 20, 2006.

2. The gravamen of Plaintiff's Complaint is that Defendants AMERICA'S WHOLESALE LENDER and MORTGAGE ELECTORNIC REGISTRATION SYSTEMS, INC. attempted to create a security instrument which did not comply with California's statutory and common law mortgage requirements. Thereafter, Defendants BANK OF NEW YORK and RECON TRUST attempted a non-judicial foreclosure on the property, in which they had no interest and continue to have no interest, and have caused Plaintiffs emotional distress damages and the payment of attorney fees and court costs.

## II.   PARTIES

3. Plaintiffs are, and at all times relevant to this Complaint were, the owners of real property commonly known as 25339 Camino De Chamisal, Salinas, CA 93908, MONTEREY County, California ("Subject Property"). The legal description of the Subject Property is attached as Exhibit A and incorporated herein by reference. The assessor's parcel number is 416-321-016.

4. Defendant Trustee, Recon Trust Company, N.A., is a California corporation authorized to engage in, and at all times mentioned in this Complaint was engaged in, the title

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

2

insurance, banking and trust business as a trustee. This Defendant purports to be the current trustee of the deed of trust described in paragraph 14.

5. Defendant AMERICA'S WHOLESALE LENDER is a D.B.A. for Countrywide Home Loans, Inc., authorized to engage in, and at all times mentioned in this Complaint, was in the business of making subprime consumer mortgage loans, and at all times relevant to this Complaint did business within the County of MONTEREY, California.

6. Defendant Servicer is a subsidiary of Bank of America, N.A., authorized to engage in, and at all times mentioned in this Complaint was, engaged in business as a servicer of mortgage loans in the county of MONTEREY, California.

7. Defendant BANK OF NEW YORK is the trustee of CHL Mortgage Pass-Through Trust 2006-HYB4, which claims interest in the subject Note and Deed of Trust.

8. Defendant Beneficiaries believe themselves to be the current beneficiaries of the Deed of Trust described in paragraph 13. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued as Doe 1 through Doe 100, i.e., the Beneficiaries. Each fictitiously named Defendant is in some manner liable to Plaintiff, claims some right, title, or interest in the Subject Property, or both.

9. At all times relevant to this Complaint, each of the Defendants was the agent or employee of each of the remaining Defendants, and was acting within the course and scope of such agency or employment.

III. FACTUAL SUMMARY

10. On 1/4/2006, for valuable consideration, Plaintiff, as borrower, made, executed and delivered to Defendant, AMERICA'S WHOLESALE LENDER, a written Promissory Note ("Note") in the amount of $1,500,000.00. A copy of the Promissory Note is attached as Exhibit B and incorporated herein by reference.

11. To secure payment of the principal sum and interest as provided in the Note and as part of the same transaction, Plaintiff, as trustor, executed and delivered to Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as "nominee" for Defendant AMERICA'S WHOLESALE LENDER, as beneficiary, a Deed of Trust ("Deed of Trust") dated 1/4/2006, by the terms of which Plaintiff, as trustor, conveyed to

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

3

Defendant CTC REAL ESTATE SERVICES, as trustee, the real property described in paragraph 3 ("Subject Property"). On 1/20/2006, the Deed of Trust was recorded against the Subject Property, in Doc # 2006006030 of the Official Records of MONTEREY County, California. A copy of the Deed of Trust is attached as Exhibit C and incorporated herein by reference.

12. The Note was sold without recordation of such transfer some time after the effective date of the Note, and the originally named beneficiary is no longer the true beneficiary under the Note.

13. Defendants are not holders in due course of the Note, due to ineffective endorsement, and Defendants have failed to respond to requests proving their right to collect under the Note by Plaintiff.

14. Attached as Exhibit D is a diagram of the purported relationships existing with respect to the Note and Deed of Trust.

15. Defendant Recon Trust Company, N.A. has not yet relinquished their and/or Countrywide Home Loans Servicing LP's and/or Bank of New York's title claim to the Subject Property.

16. On 1/27/2009, Defendant Recon Trust Company, N.A. caused to be recorded a notice of default and of election to sell, in Doc # 2009004966 of the Official Records of MONTEREY County, California, alleging (a) that a breach of the obligation secured by the deed of trust had occurred, consisting of Plaintiff's alleged failure to pay certain monthly installments of principal and interest, and (b) that Defendant Bank of New York, as beneficiary, elects to sell, or to cause to be sold, the trust property to satisfy that obligation. A true and correct copy of the Recorded Notice of Default and Election to Sell is attached as Exhibit E and incorporated herein by reference.

17. Defendant Recon Trust Company, N.A. has not yet removed the recorded Notice of Default under the alleged Note, even though Plaintiff mailed a demand letter which was received by Defendants, on May 12, 2009, demanding proof of interest or release of all claims. Defendants did not respond.

18. The breach of the obligation for which the Deed of Trust purports to serve as security is not grounds to collect under the Deed of Trust because the Deed of Trust is voidable as of its execution, and Plaintiffs hereby void it.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

4

19. An actual controversy exists between Plaintiff and Defendants concerning their respective rights and duties pertaining to the Subject Property and the described transactions in that (a) Plaintiff contends that the Note and Deed of Trust must be extinguished in their entireties, and all subsequent recordings must be likewise extinguished, including the Notice of Default and Notice of Trustee's Sale and (b) Defendants Recon Trust Company, N.A. and Bank of New York, and each of them, dispute this contention and contend that the Note and Deed of Trust are legally enforceable and that, therefore, Defendants Recon Trust Company, N.A. and/or Bank of New York have the right to conduct a trustee's sale.

20. Upon information and belief, Defendants imminently intend to conduct a Trustee's Sale on the Subject Property ostensibly to collect the unpaid balance on the Note.

21. Upon information and belief, Defendant Bank of New York is not and was not the holder of the Note, nor is it or was it in possession of the Note properly endorsed to it, nor was it otherwise entitled by law in this State to initiate foreclosure under the security instrument pursuant to this State's summary non-judicial foreclosure remedies, which provide a complete statutory scheme for THOSE ACTUALLY IN INTEREST to collect debts *actually* owed to *them.*

22. Defendant Bank of New York has and had no right to initiate foreclosure under the security instrument, nor did it have a right to direct Defendant Trustee to foreclose and sell the Subject Property. Bank of New York knew or reasonably should have known that it had no right to foreclose the security instrument unless and until it actually has in its possession the original Note properly endorsed to it or assigned to it as of a date preceding the Notice of Default recorded by the Trustee, because it is otherwise not in interest under the instrument.

23. Defendant Trustee was never properly substituted as the acting Trustee according to the terms of the Deed of Trust, even if the Deed of Trust were enforceable, and therefore all efforts at sale are void.

24. Plaintiff further alleges that the foreclosure sale of the Subject Property was not executed in accordance with the requirements of Cal. Civ. Code §§ 1624, and 2924 *et seq.*

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

25. Plaintiff further alleges that the Trustee who was acting as the agent of the principal failed to have written authorization to act for the principal, and under Cal. Civ. Code § 1624, the agency relationship must also be in written form.

26. Moreover, Plaintiff alleges that the notices and foreclosure failed to conform to the provisions of Cal. Civ. Code §§ 1624 and 2932.5 *et seq.*, and Cal. Comm. Code § 3302 *et seq.*

27. Plaintiff further alleges that the non-judicial foreclosure of Plaintiff's Subject Property does not conform with the strict mandates of Cal. Civ. Code § 2924 and is therefore unlawful, for the following reasons:

    a. The Trustee is not empowered to conduct a sale;

    b. Despite its boilerplate declaration attached to the Notice of Default, Defendant Countrywide never contacted the Plaintiff prior to recording its Notice of Default, in violation of Civil Code §2923.5;

    c. Upon information and belief, Servicer was not in possession of the original Note; further, the Note when it was assigned to the current beneficiary did not covey the Power of Sale (because it violated the terms of Cal. Civ. Code § 2932.5); further, the assignment of the Note is void or voidable, because when it was made to the Note executed by Plaintiff, the Note was no longer a negotiable instrument; further, the assignment was not physically applied to the Note, although there was sufficient room on the back of the Note to complete the assignment.

    d. The service of the Notice of Default, Notice of Substitution of Trustee, and Notice of Trustee's Sale was defective because the documents served on Plaintiff were materially different than those recorded at the County Recorder's Office in Monterey.

28. Plaintiff alleges that by so acting, the Defendants engage, in this case and with respect to many other mortgage or trust deed security instruments, in a pattern and practice of using the non-judicial foreclosure procedures of this State to take title to real properties when they do not, in fact, have the right to do so, knowing that the several of the affected property owners do not have the knowledge and means to contest the right of Defendants to foreclose. This is oppressive, malicious, and fraudulent conduct, as well as an unfair business practice.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

29. Plaintiff alleges that Defendants', and each of their, standard operating procedures require representatives to summarily deny all grievances under TILA, RESPA, California Consumer Protection laws, as well as any other challenges to title, Trustee's Sale, or business practices, which is an unfair business practice.

30. Plaintiff further demands a detailed accounting of how the amount stated in the Notice of Default and Notice of Trustee's Sale necessary to redeem the property from foreclosure has been calculated, so that Plaintiff can adequately evaluate Plaintiff's rights under the law with Plaintiff's presale rights of reinstatement and redemption.

31. Defendants Countrywide Home Loans Servicing LP and Recon Trust Company, N.A. have improperly conducted the sale in that Defendants failed to comply with the publishing and posting requirements of Cal. Civ. Code § 2924f by THE NOD is NOT COMPLIANT WITH 2923.5-- THE DATES ARE ALL WRONG. Also, Defendants Countrywide, Bank of New York, and each of them, failed to make the required contact under Civil Code § 2923.5, and therefore the Recordation of the Notice of Default and all subsequent activities were wrongful.

32. The terms of the Deed of Trust give MERS no power to act independently, and the Lender retains all powers to act under the deed of trust, thereby rendering MERS an agent, rather than a true nominee in the legal sense of the word.

33. The terms of the Deed of Trust specifially allow AMERICA'S WHOLESALE LENDER to Substitute the Trustee, "to the exclusion of all other provisions for substituting trustee." MERS was not acting at the Lender's instruction when it attempted to substitute the trustee, which was not even allegedly done on behalf of AMERICA'S WHOLESALE LENDER, according to the Recorded document called "Substitution of Trustee", a true and correct copy of which is attached at Exhibit F and herein incorporated by reference.

34. The Substitution of Trustee is by a party not empowered to substitute the trustee.

35. The Deed of Trust, as alleged herein, as defective to begin with, and therefore all subsequent recordations have been defective.

36. On information and belief, Elisavet Meza is not truly an assistant secretary for MERS, but rather an employee of Recon Trust and her signature on documents purporting to act on MERS's behalf amounts to real estate fraud.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

7

37. Service of The Notice of Trustee Sale and Substitution of Trustee was improper. The served copies are not only materialy different, but the Sugbstitution of Trustee was served 3 months much later than the date on the recorded copy, which on information and belief was fraudulently backdated to create the illusion of procedural complaince. The copies of the Notice of Sale dated APRIL 29, 2009, and BLANK Notice of Substitution of Trustee served on the Plaintiff are attached hereto as Exhibit G and incorporated by reference. The documents are unsigned, the dates are materially different than the recorded versions, and they are not timely served.

38. An actual controversy exists between Plaintiff and Defendants concerning their respective rights and duties pertaining to the Subject Property and the described transactions in that (a) Plaintiff contends that the defects in process require the Notice of Default and Notice of Trustee's sale to be declared null and void and to be extinguished without further attempt at sale, and (b) Defendants dispute this contention and contend that the sale has been properly conducted.

39. Plaintiff desires a judicial determination and declaration of Plaintiff's and Defendants' respective rights and duties; specifically, that Plaintiff did not breach Plaintiff's obligations; or, that Trustee failed to meet statutory requirements for conducting the sale. Such a declaration is appropriate at this time because Plaintiff's rights and duties must be clearly defined before the Subject Property is sold at a foreclosure sale, or before Plaintiff is evicted from the Subject Property prior to the resolution of Plaintiff's claims.

40. Further, even assuming, *arguendo*, that they do have the right to proceed to foreclose under the Note, Defendants are attempting to profit in amounts greater than their rights under the Note would allow.

41. The purported debt which Defendants attempted to collect from Plaintiff was a "consumer debt" as defined by the Rosenthal Act, Cal. Civ. Code §1788.2(f).

42. In violation of RESPA and the other statutes cited in Plaintiff's demands, said Defendants have failed to respond to said notices by Plaintiff and have failed to respond to all other communications and inquiries by Plaintiff.

43. An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights, obligations and duties as it relates to the Subject Property. In particular, on one hand, Plaintiff contend: (a) that Plaintiff tendered

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

the full amount owing as of the date of tender as more particularly alleged in paragraph 31 (31), *supra*; (b) that failing to comply with RESPA as more particularly alleged in paragraph 41, Defendants are not entitled to proceed with the foreclosure until such compliance occurs; and (c) that Defendants are not otherwise entitled to continue with said foreclosure because of the lack of proper statutory execution of the Deed of Trust as more fully alleged in paragraph 14. On the other hand, Defendants contend that Plaintiff have not tendered the correct amount owed; that they are not required to respond to Plaintiff's Notices under RESPA, or that they have responded to such notices, or that they are not subject to said law. Further, Defendants contend that said Deed of Trust has been properly executed pursuant to Cal. Civ. Code §§ 1624 and 2924 *et seq*.

44. Defendants and each of them, in committing the acts alleged in this and in other cases engaged in a pattern of unlawful activity. These unlawful activities caused Plaintiff to suffer damages: Plaintiff hired attorneys before bringing this action, and had to and will have to incur attorneys' fees to stop the wrongful acts of the Defendants. Moreover, Plaintiff suffered further damages in other ways that are not readily apparent at this time, but will amend this Complaint to allege further damages as they are determined.

45. In pursuing non-judicial foreclosure, Defendants and each of them represented that they had the right to payment under the Note, payment of which was secured by the Deed of Trust. Contrary to Defendants' assertions, Defendants were not in possession of the Note, and were not either holders in due course of the Note, or non-holders of it entitled to payment, as those terms are used in Commercial Code §§ 3301. Therefore, Defendants were proceeding to foreclose non-judicially without right under the law. Further, Defendants added costs and charges to the payoff amount, which were not justified and proper under the terms of the Note or the law.

46. Plaintiff alleges that Defendants, and each of them, engaged in an illegal scheme the purpose of which was to execute loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction. Plaintiff alleges that Defendants, and each of them, have represented to Plaintiff and to third parties that they were the owner of the Trust Deed and Note as either the Trustee or the Beneficiary regarding Plaintiff's real property. Based on this representation they caused a Notice of

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

9

1   Default to be issued and recorded without disclosing their true role, and thereafter a

2   Notice of Intent to Foreclose.

3   47. Plaintiff alleges that the Promissory Note which was executed by Plaintiff and which

4   initially formed a basis of a security interest in the Subject Property, was assigned in

5   violation of Civil Code § 2932.5 *et seq.*, and as such the Promissory Note was rendered

6   as non-negotiable. Consequently, no Power of Sale was conveyed with the Note at the

7   time of the assignment and, therefore, Defendants could not have a lawful security

    interest in the Subject Property.

8   48. Defendants, and each of them, misrepresented facts intending to either force Plaintiff to

9   pay large sums of money to Defendants, to which they were not entitled under the law, or

10  to abandon the Subject Property to foreclosure sale.

11

                              FIRST CAUSE OF ACTION
12  (Cancellation of a Voidable Contract under Rev & Tax Code §§ 23304, 23305a as to
13       Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)

14  49.        Plaintiff hereby re-alleges and re-states all previous paragraphs and each and

15  every part thereof with the same force and effect as though fully set out herein.

16  50.        Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is

17  and was at all times relevant to this complaint an unregistered foreign corporation doing

    business in California.

18  51. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'s failure to

19  comply with the California franchise tax laws, the Deed of Trust alleged herein is

20  voidable by the Plaintiff pursuant to Rev & Tax Code §§ 23304, 23305a.

21  52. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is not a

22  lender, does not originate loans, never had any true interest in the subject loan or Deed of

23  Trust, and thereby does not meet any legal exceptions to the registration requirement for

    foreign corporations.

24  53. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is not

25  owned in 100% interest by an out of state banking institution or otherwise qualified for

26  any exception to the Revenue and Tax Code's foreign corporation registration

27  requirement.

28

    FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000
                                    10

54. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is in the business of operating a database and serving as a straw man for banks wishing to avoid paying recordation fees to County Records Offices, Including Contra Costa County, depriving the state of a significant amount of revenue, in addition to its other tax-evading activities alleged in the preceding paragraphs.

55. Plaintiff hereby explicitly requests an adjudication to the effect that his contract with Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is void.

SECOND CAUSE OF ACTION
(Quiet Title)

56. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

57. Defendants have no standing to enforce a non-judicial foreclosure. Defendants are strangers to this transaction, and have no authority to go forward with the foreclosure and Trustee's Sale.

58. Plaintiff executed a Promissory Note (hereinafter "Note") and a Deed of Trust to AMERICA'S WHOLESALE LENDER.

59. AMERICA'S WHOLESALE LENDER is the Lender and only party entitled to enforce the Note and any security interest with it.

60. Defendant Recon Trust Company, N.A. is not listed anywhere in the Deed of Trust or Promissory Note.

61. In California, Cal. Civ. Code § 2932.5 governs the Power of Sale under an assigned mortgage, and provides that the Power of Sale can only vest in a person entitled to money payments: "Where a power to sell real property is given to a mortgagee, or other encumbrance, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The Power of Sale may be exercised by the assignee if the assignment is duly acknowledged and recorded." *(emphasis added)*

62. The MONTEREY County Recorder's Office does not contain any evidence of a recorded assignment from AMERICA'S WHOLESALE LENDER to Countrywide Home Loans Servicing LP. AMERICA'S WHOLESALE LENDER has never assigned their rights

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

11

under the Note. Moreover, the MONTEREY County Recorder's Office does not contain evidence of a proper Subsitution of Trustee pursuant to the express provision under the Deed of Trust for doing so. Therefore, none of the Defendants who are acting in such brutal regard with respect to Plaintiff's life and property have any interest to stand on to justify these activities.

63. The Power of Sale may not be exercised by any of the Defendants since there was never an acknowledged and recorded assignment pursuant to Cal. Civ. Code § 2932.5.

64. Since the Defendants did not comply with Cal. Civ. Code § 2932.5, the Notice of Default provisions of Cal. Civ. Code § 2924 and Notice of Sale provisions of Cal. Civ. Code § 2924(f) were likewise never complied with.

65. Civil Code §2923.5 was never complied with prior to the sale.

66. Neither CTC REAL ESTATE SERVICES nor Recon Trust Company, N.A. complied yet with the Notice of Default provisions of Cal. Civ. Code § 2924 or the Notice of Sale provisions of Cal. Civ. Code § 2924(f).

67. The basis of Plaintiff's title is a deed from Stanley Atkinson, a married Man as his sole and separate property granting the Subject Property in fee simple to Plaintiff dated 8/2/2005, and recorded in the Official Records of the County of MONTEREY, Book/Reel 2005094877. The alleged Grant Deed is attached at Exhibit H and incorporated herein by reference in its entirety.

68. A Promissory Note is personal property and the Deed of Trust securing a Note is a mere incident of the debt it secures, with no separable ascertainable market value, as per Cal. Civ. Code §§ 657, 663.

69. Any transfers of the notice and mortgage fundamentally flow back to the Note. *Hyde v. Mangan* (1891) 88 Cal. 319 ("The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer[.]"); *Johnson v. Razy* (1919)181 Cal 342; *Bowman v. Sears* (1923) 63 Cal.App 235; *Treat v. Burns* (1932) 216 Cal 216. *See also Kelley v. Upshaw* (1952) 39 Cal.2d 179 ("A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity."); *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543 ("A trust deed has no assignable quality

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect.").

70. The Promissory Note is a negotiable instrument.

71. Transferring a Deed of Trust by itself does not allow enforcement of the instrument unless the Promissory Note is properly negotiated.

72. Where an instrument has been transferred, enforceability is determined based upon possession.

73. Cal. Comm. Code § 3301 limits a negotiable instrument's enforcement:

> "Person entitled to enforce an Instrument" means
> (a) the holder of the instrument,
> (b) a nonholder in possession of the instrument who has the rights of a holder, or
> (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3309 or subdivision (d) of § 3418 [of this Code].
> A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

74. None of the Defendants are present holders of the instrument.

75. None of the Defendants are non-holders in possession of the instrument who has rights of the holder.

76. None of the Defendants are entitled to enforce the instrument pursuant to Cal. Comm. Code § 3309 or subdivision (d) of § 3418.

77. Defendants have no enforceable rights under Cal. Comm. Code § 3301(a) to enforce the negotiable instrument.

78. Since there is no right to enforce the negotiable instrument, the Notice of Default provisions of Cal. Civ. Code § 2924 and Notice of Sale provisions of Cal. Civ. Code § 2924(f) were likewise never complied with, and there is no subsequent incidental right to enforce any deed of trust and conduct a non-judicial foreclosure.

79. Defendant Trustee and Defendant Servicer are acting as agents of Defendant Beneficiaries, and are executing documents and otherwise acting as the agents of Beneficiaries for Plaintiff's Note and the notices therein, even though the Note was non-negotiable prior to the foreclosure sale of the Subject Property.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

13

80. By virtue of the method and manner of Defendants' carrying out Cal. Civ. Code § 2924 *et seq.*, the foreclosure of the Subject Property is void *ab initio* as a matter of law.

81. Defendants' conduct as set forth above was intentional, oppressive, fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient to ensure that such conduct will not be repeated. Plaintiff further alleges that the loan contained excessive financing, was approved to allow closing costs to be financed, that Defendants failed to utilize adequate due diligence regarding Plaintiff's ability to repay the loan, Defendants as part of their continuing scheme intentionally placed Plaintiff in a sub-prime loan to the benefit of the Defendants with excessively high interest rates, Defendants failed to provide Plaintiff mandated disclosures, and Defendants repeatedly employed coercive tactics in order to force Plaintiff to sign the loan documents.

82. Plaintiff alleges that due to the fraud of Defendants Recon Trust Company, N.A., the title to the Subject Property has been rendered unmarketable in that Recon Trust Company, N.A., and Countrywide Home Loans Servicing LP and their assigns; have caused to be recorded as against the Subject Property documents which have clouded Plaintiffs' title thereto.

83. Plaintiff is seeking to quiet title against the claim of Defendant(s) as follows: Servicer, Trustee, and All Does, who claims/claim some right, title, estate, lien, or interest in and to the lands of Plaintiff as described in this Complaint, based on the purported Deed of Trust described in paragraph 11, supra; the claims of all unknown Defendants described in paragraph 8 supra, whether or not the claim or cloud is known to Plaintiff; and the unknown, uncertain, or contingent claim, if any, of Beneficiaries more fully described in paragraph 8

84. Defendants' claims are without any foundation whatever and said Defendants have no right, title, estate, lien, or interest whatsoever in the above-described property, or any part of that property except the following: that DOE Defendants, and each of them, may have a claim or claims, however, Plaintiffs are unaware as to the nature of each and any such claims should they in fact exist.

85. The Defendants named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto" (sometimes referred to as "the

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

14

unknown Defendants") are unknown to Plaintiff. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the previously described property adverse to Plaintiff's title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that property. As such, the claims of Defendants DOES 1-100 are uncertain.

86. Plaintiff seeks to quiet title as of the date of execution of the voidable Deed of Trust, which Plaintiff hereby voids.

87. Plaintiff has recently learned that Defendants, and each of them, are not the legal owners of the Note and Deed of Trust, and were not at the time they issued the notices and commenced the foreclosure process, notwithstanding the fact that the Note was not negotiable and did not contain a valid Power of Sale.

88. Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiff that they were untrue, and Defendants knew at the time of their attempt to foreclose on Plaintiff's Note and Deed of Trust that they had no right to do so.

89. Plaintiff alleges that Defendants, and each of them, intentionally and fraudulently converted Plaintiffs' right, title and interest to the Subject Property, and any equity therein.

90. Plaintiff alleges that, due to Plaintiff's reasonable reliance on Defendants representations, Plaintiff has been damaged in an amount that currently exceeds $1,500,000.00, and additionally costs of moving out of Plaintiffs' property, and Plaintiff will foreseeably suffer damages amounting to the costs to relocate back to the Subject Property.

91. Additionally, Plaintiff suffered deep and severe emotional distress, mortification, anxiety and humiliation all to their damage and injury in an amount not yet fully ascertained, but in no event less than the jurisdictional limitations of this Court.

92. Defendants' conduct as set forth above was intentional, oppressive, fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient to ensure that such conduct will not be repeated.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

15

### THIRD CAUSE OF ACTION
(An Accounting, Against Defendants AMERICA'S WHOLESALE LENDER,
Countrywide Home Loans Servicing LP, Recon Trust Company, N.A., And
DOES 1-100)

93. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

94. The amount of money Defendants, and each of them, owe to Plaintiff is unknown to Plaintiff and cannot be determined without an accounting.

### FOURTH CAUSE OF ACTION
(Tortious Violation of Statute Against Countrywide Home Loans Servicing, LP.:
Real Estate Settlement Procedures Act ("RESPA")
12 U.S.C. § 2607(b))

95. Plaintiff re-alleges and incorporates by reference the above paragraphs as set forth fully herein.

96. Plaintiff alleges that Plaintiff was a member the group of persons for whom 12 U.S.C. Section 2601, *et seq.* was intended to protect and that Plaintiff suffered damages which were actually and proximately caused by Defendants' violations thereof.

97. Plaintiff alleges that 12 U.S.C. § 2607(d)(5) provides for a private right of action to recover damages and treble damages for violations therein. Said section provides both civil and criminal penalties for violations thereof.

98. That the Defendants' failure to respond to Plaintiff's communications under RESPA constitutes a violation of 12 U.S.C. § 2607(b) and that, therefore, as provided by statute Plaintiff is entitled to and seeks now treble damages therefore in a sum subject to proof at trial.

99. Plaintiff has suffered damages actually and proximately caused by Defendants' violation of the statute in an amount not yet fully ascertained, but in no event less than the jurisdictional requirements of this court.

### FIFTH CAUSE OF ACTION
(Unfair Competition, Against Defendants AMERICA'S WHOLESALE LENDER, Countrywide
Home Loans Servicing LP, and Bank of New York)

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

100. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

101. Defendants' advertising, as alleged above, constitutes unfair competition in violation of Cal. Bus. & Profs. Code § 17200.

102. Plaintiff has been damaged by Defendants' actions including but not limited to hiring an attorney, suffering severe and extreme emotional distress, and having the title to their property rendered unmarketable.

### SIXTH CAUSE OF ACTION
(Unfair Debt Collection Practices, Against Defendants Countrywide Home Loans Servicing LP and Recon Trust Company, N.A.)

103. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

104. On information and belief, Defendants and each of them, in taking the aforementioned actions have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to Cal. Civ. Code §§ 1788 (e) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C. § 1692 *et seq.*, and the Real estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617.

### SEVENTH CAUSE OF ACTION
(For Declaratory Relief, Against All Defendants)

105. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

106. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends that Defendants have no right to the Subject Property and that damages, rescission, and injunctive relief are proper, whereas Defendants dispute these contentions and contend that Defendants have done nothing wrong.

107. The Notice of Default ("NOD") was recorded on 1/27/2009 at the County Recorder of MONTEREY County, under 2009004966.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

108. None of the Defendants, except possibly the unnamed DOES, are entitled to enforce the NOTE or DEED OF TRUST under ANY APPLICABLE LAW.

109. Plaintiff demands proof of Defendant Servicer's right to foreclose on behalf of the true holders of the Note.

110. Plaintiff demands proof that the Note was ever assigned by the original Lender to any other party whatsoever.

### Count I. (For Determination of Rights and Duties of Each Party)

111. This Court should intervene to establish the relative rights of the Parties and order the Defendant Servicer to reveal the identities of the true beneficiaries under the Note, who are necessary and indispensable parties to the action, as well as a declaration as to whether the Note has been assigned, and that the Deed of Trust is void.

### Count II. (For Declaration of No Default on Note)

112. On information and belief, the Note has been paid in full and there is no default on this particular obligation, under the terms of the Pooling and Servicing Agreement, which permits any funds in the pool to be applied to any of the notes in the pool. On information and belief, this Note may also have been subject to an insurance claim under a credit swap agreement by the servicer. This Court should intervene to order an accounting, and to declare that the Note is not in default.

### Count III. (For Declaration of Wrongful Recordation)

113. A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiff may ascertain Plaintiff's rights and duties to tender to the Defendants, or to complete Plaintiff's rescission and allow Plaintiff to remain in possession of the property.

114. Plaintiff remains damaged by the slander of Plaintiff's consumer credit rating as well as the clouds on Plaintiff's title to the Subject Property.

### EIGHTH CAUSE OF ACTION
### (Slander of Title Against All Defendants)

115. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

18

116. On or about 1/27/2009, Defendants Trustee and Servicer willfully, wrongfully, without justification, and without privilege caused to be recorded a Notice of Default.

117. Said recording of the Notice of Default directly impaired the immediate salability of the property to a particular purchaser or vendibility of the property on the open market. Such direct impairment of damaged Plaintiff in an amount according to proof at trial.

118. Said recording of the Notice of Default made it necessary for Plaintiff to retain attorneys and to bring this action to cancel the instrument casting doubt on Plaintiff's title. Therefore, Plaintiff is entitled to recover attorney's fees and costs incurred in canceling the instrument. The exact amount of such damages is not known to the Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes known, or on proof thereof.

119. Furthermore, the aforementioned recording of the Notice of Default was motivated by oppression, fraud, or malice on the part of the Defendants as alleged in this Complaint, *supra*. Therefore, Plaintiff is entitled to exemplary and punitive damages.

## NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress, Against All Defendants)

120. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

121. Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendants' conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

122. As the proximate result of the acts alleged above, Plaintiff suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body as follows: loss of sleep, nightmares, cold sweats, increased heart rate, extreme anxiety, loss of consortium, dreaded fear and hopelessness, all to Plaintiff's damage.

## TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress Against All Defendants)

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

19

123. Plaintiff hereby re-alleges and re-states all previous paragraphs and each and every part thereof with the same force and effect as though fully set out herein.

124. Defendants knew, or should have known, that Defendants' failure to exercise due care in the negotiations and execution of the subject Note, and the recordation of the Notice of Default and Notice of Trustee Sale would cause Plaintiff severe emotional distress.

125. As a proximate result of Defendants' aforementioned acts and omissions and the consequences proximately caused by it, as hereinabove alleged, Plaintiff suffered severe emotional distress and mental suffering, all to Plaintiff's damage.

WHEREFORE, Plaintiff prays for relief as follows:

1. That the Court issue a declaration of the rights and duties of the parties; specifically, that trustee has no right to conduct the sale, because no breach occurred or because there is no valid lien, that trustee has not followed required sale procedures, that Servicer has no right to engage in any further collection activities unless and until it can present proof that it is entitled, under the law of negotiable instruments in force in California, to enforce the underlying promissory Note described in the Deed of Trust.

2. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction restraining Defendants Servicer and Trustee, and their agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the Subject Property either under the Power of Sale in the deed of trust or by foreclosure action.

3. That the Court render an accounting between Plaintiff and Defendants, and each of them determining the amount, if any, that Defendant actually owes Plaintiff or vice versa.

4. That Plaintiff be awarded statutory damages and attorneys fees for Unfair Debt Collection practices under the federal and California statutes.

5. If the sale goes forward during the pendency of this action, Plaintiff asks for a set aside of the sale.

6. That Plaintiff be awarded treble damages as permitted by law.

7. That prejudgment interest be awarded to Plaintiff as permitted by law.

8. That Plaintiff recover reasonable attorney fees and costs incurred in this action as permitted by law.

FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

9.  For such other and further equitable relief, declaratory relief, and legal damages as may
    be permitted by law and as the court may consider just and proper.

Dated: 10/21/2009                    MICHAEL ROONEY LAW OFFICE

                                     By:
                                         Michael Patrick Rooney, Esq.
                                         Attorney for Plaintiff
                                         PETRA MARTINEZ

                            VERIFICATION

I, PETRA MARTINEZ, am a Plaintiff in the above-entitled action. I have read the
foregoing Complaint and know the contents thereof. The same is true of my own
knowledge, except as to those matters which are therein alleged on information and belief,
and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed at San Francisco, California.


DATED: 10/21/09                      _____
                                     PETRA MARTINEZ, Plaintiff


FIRST AMENDED COMPLAINT FOR DAMAGES IN EXCESS OF $25,000

21

# EXHIBIT A

## DESCRIPTION

All that certain land situated in the unincorporated area of the County of MONTEREY, State of California, and described as follows:

PARCEL I:

PARCEL "D", AS SHOWN AND DESIGNATED ON THAT CERTAIN MAP FILED DECEMBER 5, 1985 IN VOLUME 16 OF PARCEL MAPS, AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL II:

NON-EXCLUSIVE EASEMENT FOR ROAD AND UTILITY PURPOSES OVER THE FOLLOWING DESCRIBED PARCEL OF LAND:

CERTAIN REAL PROPERTY SITUATE IN SECTION 9; T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF A 40 FOOT COUNTY ROAD KNOWN AS ROBLEY ROAD, AT THE INTERSECTION TO THE NORTHERLY BOUNDARY OF A 3.000 ACRE PARCEL OF LAND SHOWN ON THAT CERTAIN RECORD OF SURVEY FILED ON AUGUST 19, 1959 IN VOLUME X-2 OF SURVEYS, AT PAGE 32, RECORDS OF MONTEREY COUNTY, CALIFORNIA, DISTANT FROM THE NORTHWEST CORNER OF SAID PARCEL N. 87° 20' E., 26.26 FEET; THENCE, LEAVING THE LINE OF SAID ROAD AND FOLLOWING THE NORTHERLY BOUNDARY OF SAID PARCEL.

(1) N. 87° 20' E., 16.85 FEET; THENCE, LEAVING SAID BOUNDARY

(2) S. 67° 10' E., 5.53 FEET; THENCE

(3) EASTERLY, 93.46 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 170 FEET; THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS S. 82° 55' E., 92.29 FEET); THENCE

(4) N. 81° 20' E., 114.00 FEET; THENCE

(5) EASTERLY, 97.39 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 930 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS N. 84° 20' E., 97.34 FEET); THENCE

(6) N. 87° 20' E., 143.00 FEET, PARALLEL TO AND ONE FOOT SOUTHERLY OF THE NORTHERLY BOUNDARY OF SAID 3.000 ACRE PARCEL; THENCE

(7) SOUTHEASTERLY, 90.06 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH A RADIUS OF 180 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS S. 78° 20' E., 89.12 FEET); THENCE.

(8) S. 64° 00' E., 166.51 FEET, TO A POINT ON THE EASTERLY BOUNDARY OF SAID 3.00 ACRE PARCEL; THENCE, ALONG SAID BOUNDARY

(9) S. 1° 01' E., 67.35 FEET, TO A 3/4" PIPE, AT THE SOUTHEAST CORNER OF SAID PARCEL;

THENCE, LEAVING SAID BOUNDARY

(10) N. 64° 00' W., 197.10 FEET; THENCE

(11) NORTHWESTERLY, 60.04 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 120 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS N. 78° 20' W., 59.42 FEET); THENCE

(12) S. 87° 20' W., 143.00 FEET; THENCE

(13) WESTERLY, 91.11 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH RADIUS OF 870 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS S. 84° 20' W., 91.06 FEET); THENCE

(14) S. 81° 20' W., 114.00 FEET; THENCE

(15) WESTERLY, 126.45 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 230 FEET, THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS N. 82° 55' W., 124.86 FEET); THENCE

(16) N. 67° 10' W., 30.65 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF ROBLEY ROAD; THENCE FOLLOWING SAID LINE

(17) NORTHEASTERLY, 54.5 FEET, ALONG THE ARC OF A NON-TANGENT CURVE TO THE RIGHT, THE CENTER OF WHICH BEARS S. 61° 37' 45" E., 280.00 FEET, THROUGH A CENTRAL ANGLE OF 11° 03' 35" (LONG CHORD BEARS N. 33° 54' 02" E., 53.96 FEET), TO THE POINT OF BEGINNING.

PARCEL III:

A NON-EXCLUSIVE EASEMENT, RIGHT OF WAY, AND RIGHT ON, OVER, UNDER, ACROSS AND THROUGH THE FOLLOWING DESCRIBED PROPERTY FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS AND EGRESS AND FOR THE PLACEMENT, INSTALLATION, CONSTRUCTIONS, USE, OPERATION, MAINTENANCE, REPAIR AND REPLACEMENT OF SUCH WORKS OR IMPROVEMENTS THEREON AS MAY BE NECESSARY, USEFUL OR CONVENIENT TO FURTHER OR TO EXPEDITE THE USE OR UTILIZATION OF THE FOLLOWING DESCRIBED PROPERTY FOR SUCH PURPOSES OF ACCESS, INGRESS AND EGRESS INCLUDING THE RIGHT TO CONSTRUCT, PLACE, INSTALL, USE, OPERATE, MAINTAIN, REPAIR, AND REPLACE DRAINAGE, WATER, SEWER, ELECTRICAL, GAS, CABLE, COMMUNICATION AND OTHER UTILITY LINES OR FACILITIES AND ANY APPURTENANCES THERETO, SAID EASEMENT TO BE RETAINED BY AND INURE TO THE BENEFIT OF GRANTEE, ITS SUCCESSORS AND ASSIGNS AND SHALL RUN WITH AND BENEFIT ANY PARCEL OF LAND OR PART THEREOF NOW OWNED BY GRANTEE WHICH LIES ADJACENT THERETO, SAID EASEMENT BEING ON PROPERTY DESCRIBED AS FOLLOWS:

BEING A PART OF PARCELS, 2, 3 AND 4 OF THAT CERTAIN MAP FILED IN VOLUME 3 OF PARCEL MAPS, AT PAGE 81, MONTEREY COUNTY RECORDS, AND BEING A STRIP OF LAND 60.00 FEET IN WIDTH, 30.00 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING IN THE WESTERN BOUNDARY OF SAID PARCEL 2 FROM WHICH A 1 INCH IRON PIPE "RCE 1215" AT THE SOUTHEASTERN CORNER FOR THAT CERTAIN 2.915 AC. NET PARCEL SHOWN ON THE MAP ENTITLED, "RECORD OF SURVEY OF 3.000 AC. TRACT IN U.S. LOT 4, SEC. 9, T. 16 S., R. 2 E., M.D.B. & M." FILED IN VOLUME X-2 OF SURVEYS AT PAGE 32, MONTEREY COUNTY RECORDS, BEARS ALONG WESTERN BOUNDARY SOUTH 1° 01' EAST 23.56 FEET DISTANT THENCE FROM SAID POINT OF BEGINNING SOUTH 61° 58' EAST, 102.83 FEET TO THE BEGINNING

OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE LEFT WITH A RADIUS OF 800.00 FEET THROUGH A CENTRAL ANGLE OF 16° 02' FOR A DISTANCE OF 223.87 FEET; THENCE SOUTH 78° 00' EAST, 104.75 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 185.00 FEET THROUGH A CENTRAL ANGLE OF 45° 44' FOR A DISTANCE OF 147.67 FEET; THENCE SOUTH 32° 16' EAST, 45.64 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE EASTERLY CURVING TO THE LEFT WITH A RADIUS OF 175.00 FEET, THROUGH A CENTRAL ANGLE OF 72° 30' A DISTANCE OF 221.41 FEET; THENCE NORTH 75° 14' EAST 133.43 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE NORTHERLY CURVING TO THE LEFT WITH A RADIUS OF 150.00 FEET THROUGH A CENTRAL ANGLE OF 72° 38', FOR A DISTANCE OF 190.15 FEET, THENCE NORTH 2° 36' EAST, 44.30 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE NORTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 200 FEET A DISTANCE OF 48 FEET MORE OR LESS TO THE NORTHEASTERN BOUNDARY OF SAID PARCEL 4.

TOGETHER WITH SLOPE EASEMENTS AS REQUIRED FOR CUT AND FILL PURPOSES FOR THE PROPOSED ROAD CONSTRUCTION.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL B, AS SAID PARCEL IS SHOWN AND SO DESIGNATED ON PARCEL MAP FILED DECEMBER 5, 1985 IN BOOK 16 OF PARCEL MAPS AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL IV:

AN EASEMENT 8 FEET WIDE, FOR ACCESS, UTILITIES AND INCIDENTAL PURPOSES, SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF PARCEL 2, AS SAID PARCEL IS SHOWN AND DESIGNATED UPON THAT CERTAIN PARCEL MAP FILED DECEMBER 13, 1972 IN VOLUME 3 OF PARCEL MAPS AT PAGE 81, RECORDS OF MONTEREY COUNTY, CALIFORNIA, AND RUNNING ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL

1) S. 26° 34' 15" W., 341.92 FEET TO AN ANGLE POINT IN SAID LINE; THENCE CONTINUING ALONG SAID LINE

2) S. 49° 34' 45" W., 20.47 FEET; THENCE LEAVING SAID LINE

3) N. 26° 34'15" E., 361.81 FEET TO THE NORTHEASTERLY LINE OF SAID PARCEL; THENCE ALONG SAID LINE

4) S. 60° 25' E., 8.01 FEET TO THE POINT OF BEGINNING.

PARCEL V:

AN UNDIVIDED 1/30TH INTEREST IN AND TO THAT CERTAIN WATER SYSTEMS DESIGNATED IN THE DOCUMENT ENTITLED "CHAMISAL WATER ASSOCIATION, RECORDED JUNE 28, 1979 IN REEL 1341, PAGE 572 MONTEREY COUNTY RECORDS, AS DESCRIBED IN THE DEED FROM CHAMISAL TENNIS CLUB, ET AL, RECORDED NOVEMBER 28, 1989 IN REEL 2438, PAGE 124, OFFICIAL RECORDS.

APN No: 416-321-016-000

# END OF DOCUMENT

( 7 PAGES )

Prepared by: LISSETTE SEQUEIRA

LOAN #: 120876466

# InterestOnly<sup>SM</sup>  ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JANUARY 04, 2006                     SACRAMENTO                     CALIFORNIA
    [Date]                              [City]                         [State]

25339 CAMINO DE CHAMISAL, SALINAS, CA 93908
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,500,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the   first        day of every month, beginning on   MARCH 01, 2006
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on
  FEBRUARY 01, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 8,125.00      before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
* MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
8DN06-XX (04/03)(d)                                   Page 1 of 4                              Initials: _____





LOAN #: 120876466

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of FEBRUARY, 2013, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

LOAN #: 120876466

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN #: 120876466

     If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

     To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

     If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PETRA MARTINEZ                                           -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

*[Sign Original Only]*

FNT 716299
Recording Requested By:
K. POCHY

Stephen L. Vagnini     CRMARIA
Monterey County Recorder   1/20/2006
Recorded at the request of     8:00:00
**Fidelity Title**

DOCUMENT: **2006006030** 

| | |
|---|---|
| Titles: 1/ Pages: 27 | |
| Fees.... | 86 00 |
| Taxes... | |
| Other . | |
| AMT PAID | $86.00 |

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LISSETTE SEQUEIRA

————————— [Space Above This Line For Recording Data] —————————

05716299                 00012087646601006
[Escrow/Closing #]               [Doc ID #]

# DEED OF TRUST

MIN 1000157-0001487488-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 04, 2006    , together with all Riders to this document.
(B) "Borrower" is
PETRA MARTINEZ, AND STANLEY ATKINSON

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 18

VMP -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291        Form 3005 1/01
CONV/VA





DOC ID #: 00012087646601006

Borrower's address is
25339 CAMINO DE CHAMISAL, SALINAS, CA 93908
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JANUARY 04, 2006     . The
Note states that Borrower owes Lender
ONE MILLION FIVE HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,500,000.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2036   .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00012087646601006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                          of                          MONTEREY
[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 416321016                                    which currently has the address of
                        25339 CAMINO DE CHAMISAL, SALINAS
                                        [Street/City]
California    93908        ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,