DOC ID #: 00012087646601006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00012087646601006

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00012087646601006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00012087646601006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00012087646601006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 00012087646601006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00012087646601006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00012087646601006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 00012087646601006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00012087646601006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

DOC ID #: 0001208764660100é

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00012087646601006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Petra Martinez_ (Seal)
PETRA MARTINEZ                                              -Borrower

_Stanley Atkinson_ (Seal)
STANLEY ATKINSON                                           -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

State of California
County of _Monterey_

DOC ID #: 00012087646601006

On _1/3/06_ before me _Joan E. Santoro, Notary Public_ personally appeared _Peter Mihelich_ or _Stanley Wilkinson_

_____ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Joan E. Santoro_ (Seal)

JOAN E. SANTORO
Commission # 1340896
Notary Public - California
Monterey County
My Comm. Expires Jan 21, 2008

-6A(CA) (0207)          CHL (08/05)          Page 16 of 18          Form 3005 1/01

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LISSETTE SEQUEIRA

Recording Requested By:

───────────────────[Space Above This Line For Recording Data]───────────────────

# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

| 05716299 | 00012087646601006 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)                  Page 1 of 5                  Initials: _____

* 2 3 9 9 1 *

* 1 2 0 8 7 6 4 6 6 8 0 0 0 0 0 1 U 7 9 6 *

DOC ID #: 0001208764660106

THIS FIXED/ADJUSTABLE RATE RIDER is made this FOURTH                day of
JANUARY, 2006     , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Instrument (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

25339 CAMINO DE CHAMISAL
SALINAS, CA 93908
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of     6.500 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first        day of FEBRUARY, 2013  , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
  (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
  (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER            percentage points (     2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials: _TM/SA_

DOC ID #: 00012087646601006

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
◆ MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 3 of 5                    Initials: _PM_ /_BH_

DOC ID #: 0001208764601006

2. When Borrower's Initial fixed Interest rate changes to an adjustable Interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)            Page 4 of 5            Initials: _____

DOC ID #: 00012087646601006

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)
PETRA MARTINEZ                                  -Borrower

_____(Seal)
STANLEY ATKINSON                                -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                  Page 5 of 5

# MARTINEZ-ATKINSON SECURITIZATION FLOW CHART
CHL Mortgage Pass-Through Trust 2006-HYB4



Truth In Lending Audit & Recovery Services, LLC
Copyright 2009

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Lucy Mansourian
TS No. 09-0004835
Title Order No. 3988458

| Stephen L. Vagnini | CRDAWN |
|---|---|
| Monterey County Recorder | 1/28/2009 |
| Recorded at the request of | 12:30:35 |
| **Filer** | |



DOCUMENT: **2009004966**

| Titles: 1/ | Pages: | 3 |
|---|---|---|
| Fees... | | 15.00 |
| Taxes... | | |
| Other... | | |
| AMT PAID | | $15.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $79,555.75, as of 01/27/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

[Page 1 of 2 ]                    *Form Isinod (03/03)*

TS No. 09-0004835

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O Countrywide Home Loans, Inc
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065
FORECLOSURE DEPARTMENT (800)669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

**YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**
NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 01/04/2006, executed by PETRA MARTINEZ, AND STANLEY ATKINSON as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 01/20/2006, as Instrument No. 2006006030 (or Book , Page ) of Official Records in the Office of the County Recorder of Monterey County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,500,000.00.

That a breach of , and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 05/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON 02/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. a written Declaration of Default and Demand for sale, and has deposited with RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.
Dated: January 27, 2009
RECONTRUST COMPANY, N.A., as agent for the Beneficiary
By First American Title Insurance Company, as its Attorney in Fact

By _____
Isabel Santos

[Page 2 of 2 ]                    *Form lstnod (03/03)*



**Countrywide**
HOME LOANS

Mail Stop: PTX A-65
7105 Corporate Drive
Plano, TX 75024

Notice Date: January 15, 2009

| TS # 09-0004835 |
| --- |

Property Address:
25339 Camino DE Chamisal
Salinas, CA 93908

Petra Martinez
25339 Camino De Chamisal
Salinas, CA 93908

## CALIFORNIA DECLARATION

I, Mandelyn Wyrick of Countrywide, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

☐ Countrywide has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ Countrywide tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ Countrywide verified that the borrower has surrendered the property,

☐ Countrywide has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries,

☐ Countrywide has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because

1-21-09   Fort Worth, Texas
Date and Place

Mandelyn Wyrick                    Loss Mit Review Specialist
Name of Signor                      Title and/or Position

## END OF DOCUMENT

CALDECLH 8852 8/29/2008

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY
RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: Lucy Mansourian
TS No. 09-0004835

TSG No. 3988438

| | |
|---|---|
| Stephen L. Vagnini | CRALHA |
| Monterey County Recorder | 5/04/2009 |
| Recorded at the request of | 14:02:21 |
| Public | |

DOCUMENT: 2009026938  Titles: 1/ Pages: 1

| | |
|---|---|
| Fees. | 10.00 |
| Taxes | |
| Other . | |
| AMT PAID | $10.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, PETRA MARTINEZ, AND STANLEY ATKINSON was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 01/04/2006 recorded on 01/20/2006 as Instrument No. 2006006030 in Book Page of Official Records of Monterey County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: January 27, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

)

State of:     California
County of:     Ventura     )

BY _____
Elisavet Meza, Assistant Secretary.

On FEB 0 2 2009 before me, Lucy Mansourian, notary public, personally appeared Elisavet Meza, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Lucy Mansourian

LUCY MANSOURIAN
Commission # 1775098
Notary Public - California
Los Angeles County
My Comm. Expires Oct 27, 2011

END OF DOCUMENT

Form sub (01/09)

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

TS No. 09-0004835
Title Order No. 3988458

Stephen L. Vagnini                    CRALNA
Monterey County Recorder              5/84/2009
Recorded at the request of            14:02:21
Public

DOCUMENT: 2009026989   Titles: 1/ Pages:  1

Fees                    10 00
Taxes
Other
AMT PAID               $10 00

APN No. 416-321-016

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 01/04/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by PETRA MARTINEZ, AND STANLEY ATKINSON, dated 01/04/2006 and recorded 01/20/2006, as Instrument No. 2006006030, in Book , Page of Official Records in the office of the County Recorder of MONTEREY County, State of California, will sell on 05/20/2009 at 10:00 AM, At the front of the main entrance of the Administration Building located at 168 W. Alisal Street, Salinas, CA 93901.

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 25339 CAMINO DE CHAMISAL, SALINAS, CA 93908. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,608,361.83. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

DATED: April 29, 2009
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 781-8219

By:
Rosie Ramos  Team Member
RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

## END OF DOCUMENT

Form ms (07/01)

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn:
TS No. 09-0004835

Title Order No. 3988458

APN No.:416-321-016

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 01/04/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by PETRA MARTINEZ, AND STANLEY ATKINSON, dated 01/04/2006 and recorded 01/20/2006, as Instrument No. 2006006030, in Book , Page , ), of Official Records in the office of the County Recorder of MONTEREY County, State of California, will sell on 05/20/2009 at 10:00 AM, At the front of the main entrance of the Administration Building located at 168 W. Alisal Street, Salinas, CA 93901.

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 25339 CAMINO DE CHAMISAL, SALINAS, CA 93908. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,608,361.83. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

DATED: April 20, 2009
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: /S/ Title Officer

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

*Form mlgnos (07/01)*

RECORDING REQUESTED BY

RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd, CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN
TS No  09-0004835

TSG No.  3988458

THIS DOCUMENT IS BEING SENT TO YOU IN
ACCORDANCE WITH CIVIL CODE SECTION 2934.
THE ORIGINAL OF THIS DOCUMENT HAS
CONCURRENTLY BEEN SENT FOR RECORDING
WITH THE COUNTY RECORDER

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, PETRA MARTINEZ, AND STANLEY ATKINSON was the original Trustor, CTC
REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust
dated 01/04/2006 recorded on 01/20/2006 as Instrument No. 2006006030 in Book  Page of Official
Records of Monterey County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place
and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of
Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A.,
WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter,
and the singular number includes the plural.

DATED:                                         MORTGAGE ELECTRONIC REGISTRATION
                                                    SYSTEMS, INC.

State of:   California                    )
County of: _____      )
                                                    BY: /S/ Beneficiary or Investor

On _____ before me, _____, notary public, personally
appeared _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*Form mlngsub (01/09)*

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Stanley Atkinson
25339 Camino De Chamisal
Salinas, CA 93907

~~2724953~~

Stephen L. Vagnini          RALICIA
Monterey County Recorder    9/12/2005
Recorded at the request of   8:00:00
**First American Title**

DOCUMENT: **2005094877** | Titles: 1/ Pages: 5

| | |
|---|---|
| Fees | 40.00 |
| Taxes | |
| Other | |
| AMT PAID | $40.00 |

Space Above This Line for Recorder's Use Only

A.P.N.: 416-321-016-000                          File No.: 3403-2031286 (KS)

# GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $0.00; CITY TRANSFER TAX $0.00;
SURVEY MONUMENT FEE $

[    ]   computed on the consideration or full value of property conveyed, OR
[    ]   computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
[ X ]   unincorporated area; [  ] City of , and
[ X ]   Exempt from transfer tax; Reason: R&T11911

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Stanley Atkinson, a married man as his sole and separate property**

hereby GRANT(s) to **Stanley Atkinson and Petra Matinez, Husband and Wife as Joint Tenants**

the following described property in the  unincorporated area of , County of Monterey, State of **California**:

**See Exhibit A attached hereto and made apart hereof**

Dated:    __08/02/2005__

Mail Tax Statements To:  SAME AS ABOVE

WELLS FARGO

```
For 24-Hour Customer Service Call:   1-800-642-4720
TDD for Hearing/Speech Impaired:     1-800-419-2265
Outside the US Call Collect:         1-925-825-7600
Wells Fargo Online :                 wellsfargo.com
```

Account Number      4465 4201 9632 0006

```
Statement Closing Date      09/08/09
Credit Line                 $5,300
Available Credit            0
```

Send General Inquiries To:
WELLS FARGO CARD SERVICES PO BOX 10347 DES MOINES, IA 50306

Send Payments To:
WELLS FARGO CARD SERVICES PO BOX 30086 LOS ANGELES, CA 90030-0086

| Account Summary | | Payment Information | |
|---|---|---|---|
| Previous Balance | $5,623.46 | New Balance | $5,828.27 |
| - Credits | $0.00 | Scheduled Minimum Payment | $264.00 |
| - Payments | $0.00 | Past Due Amount | $1,013.00 |
| + Purchases & Other Charges | $74.00 | Overlimit Amount | $528.27 |
| + Cash Advances | $0.00 | Total Amount Due | $1,805.27 |
| + FINANCE CHARGE | $130.81 | Scheduled Payment Due Date | 10/05/09 |
| = New Balance | $5,828.27 | | |

Your Past Due Amount of $1,013.00 is due
immediately. Please also remit a payment for
your Overlimit Amount of $528.27. Your Scheduled
Minimum Payment of $264.00 is due 10/05/09.

You may pay your balance in full at any time. To
avoid additional finance charges, pay the New
Balance by your Scheduled Payment Due Date. The
New Balance on this statement does not include
any transactions, finance charges, or fees
billed, or payments/credits made, after the
Statement Closing Date above.

### Notice About Electronic Check Conversion

When you provide a check as payment, you authorize us either to use information from your check
to make a one-time electronic fund transfer from your account or to process the payment
as a check transaction. When we use information from your check to make an electronic fund transfer,
funds may be withdrawn from your account as soon as the same day we receive your payment,
and you will not receive your check back from your financial institution.

```
5596 0000 VFD 1   7  5  090908   F X Page 1 of 2        5583 2000 C276   01BH559600000000
```

```
Account Number      4465 4201 9632 0006
New Balance                  $5,828.27
Scheduled Minimum Payment    $264.00
Past Due Amount              $1,013.00
Overlimit Amount             $528.27
Total Amount Due             $1,805.27           VFD4
Scheduled Payment Due Date   10/05/09
```

WELLS FARGO CARD SERVICES
PO BOX 30086
LOS ANGELES, CA 90030-0086

VIRGINIA E SERRANO                  000000
2070 SULLIVAN AVE
DALY CITY CA 94015-2266

Additional Information Regarding
Account Number    4465 4201 9632 0006                            WELLS FARGO
Statement Closing Date:     09/08/09

Rate Information

YOUR RATE MAY VARY ACCORDING TO THE TERMS OF YOUR AGREEMENT.

| Type of Balance | Corresponding ANNUAL PERCENTAGE RATE | Daily FINANCE CHARGE Rate | Average Daily Balance |
|---|---|---|---|
| PURCHASE(S) | 26.24% | .07189% | $5,469.11 |
| CASH ADVANCE(S) | 26.24% | .07189% | $217.46 |

Composite ANNUAL PERCENTAGE RATE 26.24%                    Days in Billing Cycle 32

Important Information

YOUR ACCOUNT IS PAST DUE. PLEASE CALL 1-800-988-8019 OR VISIT
WELLSFARGO.COM TO MAKE A PAYMENT. THIS IS AN ATTEMPT TO COLLECT A DEBT
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

AN OVERLIMIT FEE WAS ASSESSED WHEN YOUR ACCOUNT BALANCE
EXCEEDED THE ESTABLISHED CREDIT LIMIT ON 09/08/09.

Transactions

| Trans | Post | Reference Number | Description | Credits | Charges |
|---|---|---|---|---|---|
| 09/08 | 09/08 | | OVERLIMIT FEE | | 35.00 |
| 09/08 | 09/08 | | LATE FEE | | 39.00 |
| | | PERIODIC *FINANCE CHARGE* PURCHASES $125.81 CASH ADVANCE | $5.00 | | 130.81 |

5596 0000 VFD 1   7  5  090908    F X  Page 2 of 2      5583 2000 C276   01BH559600000000

RECEIVED   2009/10/07 14:32:44

A.P.N.:

Grant Deed - continued          File No.: 3403-kirsten1 (KS)
                                 Date:  08/02/2005

*[signature]*

**Stanley Atkinson**

_____

STATE OF *California*          )SS
COUNTY          *Monterey*          )
OF

On *August 26 , 2005* , before me; *Kathleen M. Nevin, Notary Public*
personally appeared          *Stanley Atkinson*
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *[signature]*

My Commission Expires: *nov. 16, 2007*

This area for official
KATHLEEN M. NEVIN
Commission # 1451229
Notary Public - California
Monterey County
My Comm. Expires Nov 16, 2007

Notary Name: *Kathleen M. Nevin*          Notary Phone: *831-583-9000*
Notary Registration Number: *1451229*          County of Principal Place of Business: *Monterey County*

Order No.: 2729953c
Reference No.: MARTINEZ
Escrow Officer: SILVERS, KIRSTEN
Escrow Number: 3403-2031286

EXHIBIT A

## DESCRIPTION

All that certain land situated in the unincorporated area of the County of MONTEREY, State of California, and described as follows:

PARCEL I:

PARCEL "D", AS SHOWN AND DESIGNATED ON THAT CERTAIN MAP FILED DECEMBER 5, 1985 IN VOLUME 16 OF PARCEL MAPS, AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL II:

NON-EXCLUSIVE EASEMENT FOR ROAD AND UTILITY PURPOSES OVER THE FOLLOWING DESCRIBED PARCEL OF LAND:

CERTAIN REAL PROPERTY SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF A 40 FOOT COUNTY ROAD KNOWN AS ROBLEY ROAD, AT THE INTERSECTION TO THE NORTHERLY BOUNDARY OF A 3.000 ACRE PARCEL OF LAND SHOWN ON THAT CERTAIN RECORD OF SURVEY FILED ON AUGUST 19, 1959 IN VOLUME X-2 OF SURVEYS, AT PAGE 32, RECORDS OF MONTEREY COUNTY, CALIFORNIA, DISTANT FROM THE NORTHWEST CORNER OF SAID PARCEL N. 87° 20' E., 26.26 FEET; THENCE, LEAVING THE LINE OF SAID ROAD AND FOLLOWING THE NORTHERLY BOUNDARY OF SAID PARCEL.

(1) N. 87° 20' E., 16.85 FEET; THENCE, LEAVING SAID BOUNDARY

(2) S. 67° 10' E., 5.53 FEET; THENCE

(3) EASTERLY, 93.46 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 170 FEET, THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS S. 82° 55' E., 92.29 FEET); THENCE

(4) N. 81° 20' E., 114.00 FEET; THENCE

(5) EASTERLY, 97.39 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 930 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS N. 84° 20' E., 97.34 FEET); THENCE

(6) N. 87° 20' E., 143.00 FEET, PARALLEL TO AND ONE FOOT SOUTHERLY OF THE NORTHERLY BOUNDARY OF SAID 3.000 ACRE PARCEL; THENCE

(7) SOUTHEASTERLY, 90.06 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH A RADIUS OF 180 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS S. 78° 20' E., 89.12 FEET); THENCE

(8) S. 64° 00' E., 166.51 FEET, TO A POINT ON THE EASTERLY BOUNDARY OF SAID 3.00 ACRE PARCEL; THENCE, ALONG SAID BOUNDARY

(9) S. 1° 01' E., 67.35 FEET, TO A 3/4" PIPE, AT THE SOUTHEAST CORNER OF SAID PARCEL;

Page 6

Order No.: 2729953c
Reference No.: MARTINEZ
Escrow Officer: SILVERS, KIRSTEN
Escrow Number: 3403-2031286

THENCE, LEAVING SAID BOUNDARY

(10) N. 64° 00' W., 197.10 FEET; THENCE

(11) NORTHWESTERLY, 60.04 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 120 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS N. 78° 20' W., 59.42 FEET); THENCE

(12) S. 87° 20' W., 143.00 FEET; THENCE

(13) WESTERLY, 91.11 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH RADIUS OF 870 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS S. 84° 20' W., 91.06 FEET); THENCE

(14) S. 81° 20' W., 114.00 FEET; THENCE

(15) WESTERLY, 126.45 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 230 FEET, THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS N. 82° 55' W., 124.86 FEET); THENCE

(16) N. 67° 10' W., 30.65 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF ROBLEY ROAD; THENCE FOLLOWING SAID LINE

(17) NORTHEASTERLY, 54.5 FEET, ALONG THE ARC OF A NON-TANGENT CURVE TO THE RIGHT, THE CENTER OF WHICH BEARS S. 61° 37' 45" E., 280.00 FEET, THROUGH A CENTRAL ANGLE OF 11° 03' 35" (LONG CHORD BEARS N. 33° 54' 02" E., 53.96 FEET), TO THE POINT OF BEGINNING.

PARCEL III:

A NON-EXCLUSIVE EASEMENT, RIGHT OF WAY, AND RIGHT ON, OVER, UNDER, ACROSS AND THROUGH THE FOLLOWING DESCRIBED PROPERTY FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS AND EGRESS AND FOR THE PLACEMENT, INSTALLATION, CONSTRUCTIONS, USE, OPERATION, MAINTENANCE, REPAIR AND REPLACEMENT OF SUCH WORKS OR IMPROVEMENTS THEREON AS MAY BE NECESSARY, USEFUL OR CONVENIENT TO FURTHER OR TO EXPEDITE THE USE OR UTILIZATION OF THE FOLLOWING DESCRIBED PROPERTY FOR SUCH PURPOSES OF ACCESS, INGRESS AND EGRESS INCLUDING THE RIGHT TO CONSTRUCT, PLACE, INSTALL, USE, OPERATE, MAINTAIN, REPAIR, AND REPLACE DRAINAGE, WATER, SEWER, ELECTRICAL, GAS, CABLE, COMMUNICATION AND OTHER UTILITY LINES OR FACILITIES AND ANY APPURTENANCES THERETO, SAID EASEMENT TO BE RETAINED BY AND INURE TO THE BENEFIT OF GRANTEE, ITS SUCCESSORS AND ASSIGNS AND SHALL RUN WITH AND BENEFIT ANY PARCEL OF LAND OR PART THEREOF NOW OWNED BY GRANTEE WHICH LIES ADJACENT THERETO, SAID EASEMENT BEING ON PROPERTY DESCRIBED AS FOLLOWS:

BEING A PART OF PARCELS, 2, 3 AND 4 OF THAT CERTAIN MAP FILED IN VOLUME 3 OF PARCEL MAPS, AT PAGE 81, MONTEREY COUNTY RECORDS, AND BEING A STRIP OF LAND 60.00 FEET IN WIDTH, 30.00 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING IN THE WESTERN BOUNDARY OF SAID PARCEL 2 FROM WHICH A 1 INCH IRON PIPE "RCE 1215" AT THE SOUTHEASTERN CORNER FOR THAT CERTAIN 2.915 AC. NET PARCEL SHOWN ON THE MAP ENTITLED, "RECORD OF SURVEY OF 3.000 AC. TRACT IN U.S. LOT 4, SEC. 9, T. 16 S., R. 2 E., M.D.B. & M." FILED IN VOLUME X-2 OF SURVEYS AT PAGE 32, MONTEREY COUNTY RECORDS, BEARS ALONG WESTERN BOUNDARY SOUTH 1° 01' EAST 23.96 FEET DISTANT THENCE FROM SAID POINT OF BEGINNING SOUTH 61° 58' EAST, 102.83 FEET TO THE BEGINNING

Page 7

Order No.: 2729953c
Reference No.: MARTINEZ
Escrow Officer: SILVERS, KIRSTEN
Escrow Number: 3403-2031286

OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE LEFT WITH A RADIUS OF 800.00 FEET THROUGH A CENTRAL ANGLE OF 16° 02' FOR A DISTANCE OF 223.87 FEET; THENCE SOUTH 78° 00' EAST, 104.75 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 185.00 FEET THROUGH A CENTRAL ANGLE OF 45°.44' FOR A DISTANCE OF 147.67 FEET; THENCE SOUTH 32° 16' EAST, 45.64 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE EASTERLY CURVING TO THE LEFT WITH A RADIUS OF 175.00 FEET, THROUGH A CENTRAL ANGLE OF 72° 30' A DISTANCE OF 221.41 FEET; THENCE NORTH 75° 14' EAST 133.43 FEET TO THE BEGINNING A TANGENT CURVE; THENCE NORTHERLY CURVING TO THE LEFT WITH A RADIUS OF 150.00 FEET THROUGH A CENTRAL ANGLE OF 72° 38', FOR A DISTANCE OF 190.15 FEET, THENCE NORTH 2° 36' EAST, 44.30 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE NORTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 200 FEET A DISTANCE OF 48 FEET MORE OR LESS TO THE NORTHEASTERN BOUNDARY OF SAID PARCEL 4.

TOGETHER WITH SLOPE EASEMENTS AS REQUIRED FOR CUT AND FILL PURPOSES FOR THE PROPOSED ROAD CONSTRUCTION.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL B, AS SAID PARCEL IS SHOWN AND SO DESIGNATED ON PARCEL MAP FILED DECEMBER 5, 1985 IN BOOK 16 OF PARCEL MAPS AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL IV:

AN EASEMENT 8 FEET WIDE, FOR ACCESS, UTILITIES AND INCIDENTAL PURPOSES, SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF PARCEL 2, AS SAID PARCEL IS SHOWN AND DESIGNATED UPON THAT CERTAIN PARCEL MAP FILED DECEMBER 13, 1972 IN VOLUME 3 OF PARCEL MAPS AT PAGE 81, RECORDS OF MONTEREY COUNTY, CALIFORNIA, AND RUNNING ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL

1) S. 26° 34' 15" W., 341.92 FEET TO AN ANGLE POINT IN SAID LINE; THENCE CONTINUING ALONG SAID LINE

2) S. 49° 34' 45" W., 20.47 FEET; THENCE LEAVING SAID LINE

3) N. 26° 34' 15" E., 361.81 FEET TO THE NORTHEASTERLY LINE OF SAID PARCEL; THENCE ALONG SAID LINE

4) S. 60° 25' E., 8.01 FEET TO THE POINT OF BEGINNING.

PARCEL V:

AN UNDIVIDED 1/30TH INTEREST IN AND TO THAT CERTAIN WATER SYSTEMS DESIGNATED IN THE DOCUMENT ENTITLED "CHAMISAL WATER ASSOCIATION, RECORDED JUNE 28, 1979 IN REEL 1341, PAGE 572 MONTEREY COUNTY RECORDS, AS DESCRIBED IN THE DEED FROM CHAMISAL TENNIS CLUB, ET AL, RECORDED NOVEMBER 28, 1989 IN REEL 2438, PAGE 124, OFFICIAL RECORDS.

APN No: 416-321-016-000

END OF DOCUMENT

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY | Reserved for Clerk's File Stamp |
|---|---|
| Martinez, Petra A,<br>Plaintiff/Petitioner<br><br>VS.<br><br>America's Wholsale Lender,<br>Defendant/Respondent | **FILED**<br><br>AUG 0 3 2009<br><br>CONNIE MAZZEI<br>CLERK OF THE SUPERIOR COURT<br>_____DEPUTY<br>LEE BERRY |
| **CASE MANAGEMENT NOTICE** | Case No. M100410 |

**Case Management Conference Date: February 4, 2010 at 9:00 a.m.**

1.  NOTICE is hereby given that a CASE MANAGEMENT STATEMENT shall be filed with the Court and served on all parties NO LATER than:  30 days before the above date of the initial CASE MANAGEMENT CONFERENCE.

2.  No party may stipulate to extend any of the dates set above.

3.  At the CASE MANAGEMENT CONFERENCE, it is expected that trial counsel for each party and each self-represented party shall attend and be fully prepared to participate effectively in the conference.

4.  On receipt of the CASE MANAGEMENT STATEMENT and at or before the CASE MANAGEMENT CONFERENCE the Court may make the following orders:

    a.  refer the matter to arbitration, the court-directed mediation program, or other alternative dispute resolution procedures;
    b.  identify the case as one which may be protracted and in need of special attention;
    c.  assign the case to a particular judge for all purposes;
    d.  assign a mandatory settlement conference and trial date;
    e.  make orders establishing discovery schedules and cut-offs, including expert witness disclosure and discovery;
    f.  make appropriate Trial Management Orders; and/or
    g.  make any other orders to achieve the interests of justice and the timely disposition of the case, including the setting of additional Status Conferences.

5.  It is the policy of this Court that all complaints and cross-complaints be filed and served, all challenges to the pleadings be heard, and the matter be at-issue no later than 180 days from the filing of the complaint.  It is the policy of this Court that all civil matters be resolved in no more than 12 to 24 months of the filing of the complaint.

6.  Failure to file the CASE MANAGEMENT STATEMENT, attend the CASE MANAGEMENT CONFERENCE and participate effectively, or comply with any CASE AND TRIAL MANAGEMENT RULES may result in sanction.

7.  It is the responsibility of the parties and/or their attorneys to be familiar with the Monterey County Case and Trial Management Policies and Rules and to comply therewith.

BY ORDER OF THE PRESIDING JUDGE

Date: August 3, 2009          By: _____  LEE BERRY

Deputy Clerk

Page 1 of 5

# Alternative Dispute Resolution
## OPTIONS FOR RESOLVING YOUR DISPUTE

**There Are Alternatives to Going to Trial**
Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement.

**Advantages of ADR**
Here are some potential advantages of using ADR:
- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.
- **Increase Control over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.
- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

**What Are the ADR Options?**
The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

**Mediation**
In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

**Cases for Which Mediation May Be Appropriate:** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate:** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. There-fore, it may not be a good choice if the parties have a history of abuse or victimization.

## Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

**Cases for Which Arbitration May Be Appropriate:** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate:** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

## Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate:** Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate:** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

## Settlement Conference

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | |
|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional)<br>EMAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY**<br>MAILING ADDRESS: 1200 Aguajito Road<br>CITY AND ZIP CODE: Monterey, CA 93940 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |
| **Request to Vacate or Continue Initial<br>Case Management Conference and Order** | Case Number: |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:               Time:          Dept.:              Div.:      Room:

---

► IF APPLICABLE, THIS REQUEST AND ORDER MUST BE FILED CONCURRENTLY WITH THE CASE MANAGEMENT STATEMENTS, WHICH ARE DUE NO LATER THAN 30 DAYS BEFORE THE INITIAL CASE MANAGEMENT CONFERENCE.

► PER LOCAL RULE 6.08(g), IF THE PARTIES DO NOT RECEIVE A SIGNED COPY OF THE ORDER GRANTING THE REQUEST, THEY MUST ATTEND THE CASE MANAGEMENT CONFERENCE.

---

Counsel and the parties certify that the initial Case Management Conference should be vacated or continued for the following reasons [circle one]:

1.  All parties have appeared and agree to engage in the below ADR program (check ⬚ one]:

   ❑ Court-Directed mediation          ❑ Private mediation                 THE

   ❑ Nonbinding judicial arbitration   ❑ Private arbitration

   ❑ Other:

   PARTIES AGREE TO COMPLETE THE ALTERNATIVE DISPUTE RESOLUTION PROGRAM WITHIN 90 DAYS OF THE FILING OF THIS FORM. Further Case Management Conference is requested

2.  Case is concluded and judgment or dismissal has been entered as to all parties.

3.  Case has settled; dismissal shall be filed on or before _____.

4.  Case is at-issue and all parties agree that matter may be set for trial without the necessity of a Case Management Conference.

5.  All defendants have not been served and the plaintiff has been granted an extension by the court until _____ to complete service on all defendants.   Further Case Management Conference is requested.

6.  A defendant has filed bankruptcy; case should be stayed pending the completion of bankruptcy. Plaintiff shall file a Supplemental Case Management Statement within ten (10) days of any action by the debtor or the Bankruptcy Court that would act as a lifting of said stay.

7.  Case has been removed to Federal Court.  Plaintiff shall file a Supplemental Case Management Statement within ten (10) days of any remand back to Superior Court or of any judgment or dismissal filed in the Federal Court.

| Request to Vacate or Continue Initial Case Management Conference and Order | Case Number: |
|---|---|

8. Plaintiff has obtained a default as to all defendants and will perfect the default by entry of court or clerk judgment in timely manner.  Further Case Management Conference is requested.

9. All defendants have appeared and discovery is proceeding in a timely manner.  For reasons set forth in the parties' Case Management Statements, the case should be designated (circle one) Category I, Category II  or Category III.   Parties anticipate case will be ready to set for trial as of _____.  Further Case Management Conference is requested.

10. Other:

_____

_____

_____

_____.  Further Case Management Conference is requested.

| Counsel for Plaintiff (*print name*) | Counsel for Defendant (*print name*) |
|---|---|
| Signature | Signature |
| Counsel for Plaintiff (*print name*) | Counsel for Defendant (*print name*) |
| Signature | Signature |

*For additional parties, attach additional signature pages as needed.*

Good Cause appearing, **IT IS SO ORDERED** that the Case Management Conference set for

_____ is vacated.

❑ Supplemental Case Management Statements shall be filed as set forth in 6 or 7 above.

❑ Receipt of Dismissal is set for _____

❑  Further  Case  Management  Conference  is  set  for _____
Parties shall file Case Management Statements prior to said hearing per Local Rule 6.08(e).

**PLAINTIFF MUST SERVE A COPY OF THIS ORDER ON ALL PARTIES.**

Dated: _____

_____
*Judge of the Superior Court*

| | |
|---|---|
| Stephen L. Vagnini<br>Monterey County Recorder<br>Recorded at the request of<br>**Filer** | CRREBECCA<br>9/29/2009<br>9:35:22 |

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Michael Patrick Rooney, Esq.
580 California Street 16th Floor
San Francisco, CA 94104

DOCUMENT: 2009061388   Titles: I/ Pages: 6

Fees.... 25.00
Taxes...
Other
AMT PAID $25.00

**FILED**

OCT 07 2009

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
BY V DEPUTY
S. HANS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

MONTERREY COUNTY (UNLIMITED CIVIL JURISDICTION)

1

2

3

4

5

6

7

8

9  PETRA MARTINEZ,                          CASE NO:   M 100 410

10        Plaintiff,                        **NOTICE OF PENDENCY OF ACTION**
                                            [Cal. Code Civ. Proc. § 405.20]
11  vs.

12  AMERICA'S WHOLESALE LENDER,
    COUNTRYWID/BANK OF AMERICA,
13  RECON TRUST/MERS, and DOES 1-100,

14        Defendants.

15

16

17        Notice is given that the above-entitled action was filed in the above-entitled court

18  on  August 23, 2009 by PETRA MARTINEZ, against AMERICA WHOLESALE

19  LENDER, *et al.*, Defendants. The action affects title to specific real property and the right

    to possession of specific real property identified in the COMPLAINT.
20
          The specific real Property affected by the action is located in MONTERREY
21
    County, California, and is described as in Exhibit A, attached and hereby incorporated by
22
    reference.
23
    Dated September 23, 2009                    ACKNOWLEDGMENT ATTACHED
24
                                            _____
25                                            Michael Patrick Rooney, Esq.
                                              MICHAEL ROONEY LAW OFFICE
26                                              Attorney for PETRA MARTINEZ

27

28

# EXHIBIT A

## DESCRIPTION

All that certain land situated in the unincorporated area of the County of MONTEREY, State of California, and described as follows:

PARCEL I:

PARCEL "D", AS SHOWN AND DESIGNATED ON THAT CERTAIN MAP FILED DECEMBER 5, 1985 IN VOLUME 16 OF PARCEL MAPS, AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL II:

NON-EXCLUSIVE EASEMENT FOR ROAD AND UTILITY PURPOSES OVER THE FOLLOWING DESCRIBED PARCEL OF LAND:

CERTAIN REAL PROPERTY SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF A 40 FOOT COUNTY ROAD KNOWN AS ROBLEY ROAD, AT THE INTERSECTION TO THE NORTHERLY BOUNDARY OF A 3.000 ACRE PARCEL OF LAND SHOWN ON THAT CERTAIN RECORD OF SURVEY FILED ON AUGUST 19, 1959 IN VOLUME X-2 OF SURVEYS, AT PAGE 32, RECORDS OF MONTEREY COUNTY, CALIFORNIA, DISTANT FROM THE NORTHWEST CORNER OF SAID PARCEL N. 87° 20' E., 26.26 FEET; THENCE, LEAVING THE LINE OF SAID ROAD AND FOLLOWING THE NORTHERLY BOUNDARY OF SAID PARCEL.

(1) N. 87° 20' E., 16.85 FEET; THENCE, LEAVING SAID BOUNDARY

(2) S. 67° 10' E., 5.53 FEET; THENCE

(3) EASTERLY, 93.46 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 170 FEET; THROUGH A CENTRAL ANGLE OF 91° 30' (LONG CHORD BEARS S. 82° 55' E., 92.29 FEET); THENCE

(4) N. 81° 20' E., 114.00 FEET; THENCE

(5) EASTERLY, 97.39 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 930 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS N. 84° 20' E., 97.34 FEET); THENCE

(6) N. 87° 20' E., 143.00 FEET, PARALLEL TO AND ONE FOOT SOUTHERLY OF THE NORTHERLY BOUNDARY OF SAID 3.000 ACRE PARCEL; THENCE

(7) SOUTHEASTERLY, 90.06 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH A RADIUS OF 180 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS S. 78° 20' E., 89.12 FEET); THENCE.

(8) S. 64° 00' E., 166.51 FEET, TO A POINT ON THE EASTERLY BOUNDARY OF SAID 3.00 ACRE PARCEL; THENCE, ALONG SAID BOUNDARY

(9) S. 1° 01' E., 67.35 FEET, TO A 3/4" PIPE, AT THE SOUTHEAST CORNER OF SAID PARCEL;

THENCE, LEAVING SAID BOUNDARY

(10) N. 64° 00' W., 197.10 FEET; THENCE

(11) NORTHWESTERLY, 60.04 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 120 FEET, THROUGH A CENTRAL ANGLE OF 28° 40' (LONG CHORD BEARS N. 78° 20' W., 59.42 FEET); THENCE

(12) S. 87° 20' W., 143.00 FEET; THENCE

(13) WESTERLY, 91.11 FEET, ALONG THE ARC OF A CURVE TO THE LEFT WITH RADIUS OF 870 FEET, THROUGH A CENTRAL ANGLE OF 6° 00' (LONG CHORD BEARS S. 84° 20' W., 91.06 FEET); THENCE

(14) S. 81° 20' W., 114.00 FEET; THENCE

(15) WESTERLY, 126.45 FEET, ALONG THE ARC OF A CURVE TO THE RIGHT WITH RADIUS OF 230 FEET, THROUGH A CENTRAL ANGLE OF 31° 30' (LONG CHORD BEARS N. 82° 55' W., 124.86 FEET); THENCE

(16) N. 67° 10' W., 30.65 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF ROBLEY ROAD; THENCE FOLLOWING SAID LINE

(17) NORTHEASTERLY, 54.5 FEET, ALONG THE ARC OF A NON-TANGENT CURVE TO THE RIGHT, THE CENTER OF WHICH BEARS S. 61° 37' 45" E., 280.00 FEET, THROUGH A CENTRAL ANGLE OF 11° 03' 35" (LONG CHORD BEARS N. 33° 54' 02" E., 53.96 FEET), TO THE POINT OF BEGINNING.

PARCEL III:

A NON-EXCLUSIVE EASEMENT, RIGHT OF WAY, AND RIGHT ON, OVER, UNDER, ACROSS AND THROUGH THE FOLLOWING DESCRIBED PROPERTY FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS AND EGRESS AND FOR THE PLACEMENT, INSTALLATION, CONSTRUCTIONS, USE, OPERATION, MAINTENANCE, REPAIR AND REPLACEMENT OF SUCH WORKS OR IMPROVEMENTS THEREON AS MAY BE NECESSARY, USEFUL OR CONVENIENT TO FURTHER OR TO EXPEDITE THE USE OR UTILIZATION OF THE FOLLOWING DESCRIBED PROPERTY FOR SUCH PURPOSES OF ACCESS, INGRESS AND EGRESS INCLUDING THE RIGHT TO CONSTRUCT, PLACE, INSTALL, USE, OPERATE, MAINTAIN, REPAIR, AND REPLACE DRAINAGE, WATER, SEWER, ELECTRICAL, GAS, CABLE, COMMUNICATION AND OTHER UTILITY LINES OR FACILITIES AND ANY APPURTENANCES THERETO, SAID EASEMENT TO BE RETAINED BY AND INURE TO THE BENEFIT OF GRANTEE, ITS SUCCESSORS AND ASSIGNS AND SHALL RUN WITH AND BENEFIT ANY PARCEL OF LAND OR PART THEREOF NOW OWNED BY GRANTEE WHICH LIES ADJACENT THERETO, SAID EASEMENT BEING ON PROPERTY DESCRIBED AS FOLLOWS:

BEING A PART OF PARCELS, 2, 3 AND 4 OF THAT CERTAIN MAP FILED IN VOLUME 3 OF PARCEL MAPS, AT PAGE 81, MONTEREY COUNTY RECORDS, AND BEING A STRIP OF LAND 60.00 FEET IN WIDTH, 30.00 FEET ON EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE:

BEGINNING IN THE WESTERN BOUNDARY OF SAID PARCEL 2 FROM WHICH A 1 INCH IRON PIPE "RCE 1215" AT THE SOUTHEASTERN CORNER FOR THAT CERTAIN 2.915 AC. NET PARCEL SHOWN ON THE MAP ENTITLED, "RECORD OF SURVEY OF 3.000 AC. TRACT IN U.S. LOT 4, SEC. 9, T. 16 S., R. 2 E., M.D.B. & M." FILED IN VOLUME X-2 OF SURVEYS AT PAGE 32, MONTEREY COUNTY RECORDS, BEARS ALONG WESTERN BOUNDARY SOUTH 1° 01' EAST 23.56 FEET DISTANT THENCE FROM SAID POINT OF BEGINNING SOUTH 61° 58' EAST, 102.83 FEET TO THE BEGINNING

OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE LEFT WITH A RADIUS OF 800.00 FEET THROUGH A CENTRAL ANGLE OF 16° 02' FOR A DISTANCE OF 223.87 FEET; THENCE SOUTH 78° 00' EAST, 104.75 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE SOUTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 185.00 FEET THROUGH A CENTRAL ANGLE OF 45° 44' FOR A DISTANCE OF 147.67 FEET; THENCE SOUTH 32° 16' EAST, 45.64 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE EASTERLY CURVING TO THE LEFT WITH A RADIUS OF 175.00 FEET, THROUGH A CENTRAL ANGLE OF 72° 30' A DISTANCE OF 221.41 FEET; THENCE NORTH 75° 14' EAST 133.43 FEET TO THE BEGINNING A TANGENT CURVE; THENCE NORTHERLY CURVING TO THE LEFT WITH A RADIUS OF 150.00 FEET THROUGH A CENTRAL ANGLE OF 72° 38', FOR A DISTANCE OF 190.15 FEET, THENCE NORTH 2° 36' EAST, 44.30 FEET TO THE BEGINNING OF A TANGENT CURVE; THENCE NORTHEASTERLY CURVING TO THE RIGHT WITH A RADIUS OF 200 FEET A DISTANCE OF 48 FEET MORE OR LESS TO THE NORTHEASTERN BOUNDARY OF SAID PARCEL 4.

TOGETHER WITH SLOPE EASEMENTS AS REQUIRED FOR CUT AND FILL PURPOSES FOR THE PROPOSED ROAD CONSTRUCTION.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING WITHIN PARCEL B, AS SAID PARCEL IS SHOWN AND SO DESIGNATED ON PARCEL MAP FILED DECEMBER 5, 1985 IN BOOK 16 OF PARCEL MAPS AT PAGE 117, MONTEREY COUNTY RECORDS.

PARCEL IV:

AN EASEMENT 8 FEET WIDE, FOR ACCESS, UTILITIES AND INCIDENTAL PURPOSES, SITUATE IN SECTION 9, T. 16 S., R. 2 E., M.D.B.M., MONTEREY COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF PARCEL 2, AS SAID PARCEL IS SHOWN AND DESIGNATED UPON THAT CERTAIN PARCEL MAP FILED DECEMBER 13, 1972 IN VOLUME 3 OF PARCEL MAPS AT PAGE 81, RECORDS OF MONTEREY COUNTY, CALIFORNIA, AND RUNNING ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL

1) S. 26° 34' 15" W., 341.92 FEET TO AN ANGLE POINT IN SAID LINE; THENCE CONTINUING ALONG SAID LINE

2) S. 49° 34' 45" W., 20.47 FEET; THENCE LEAVING SAID LINE

3) N. 26° 34' 15" E., 361.81 FEET TO THE NORTHEASTERLY LINE OF SAID PARCEL; THENCE ALONG SAID LINE

4) S. 60° 25' E., 8.01 FEET TO THE POINT OF BEGINNING.

PARCEL V:

AN UNDIVIDED 1/30TH INTEREST IN AND TO THAT CERTAIN WATER SYSTEMS DESIGNATED IN THE DOCUMENT ENTITLED "CHAMISAL WATER ASSOCIATION, RECORDED JUNE 28, 1979 IN REEL 1341, PAGE 572 MONTEREY COUNTY RECORDS, AS DESCRIBED IN THE DEED FROM CHAMISAL TENNIS CLUB, ET AL, RECORDED NOVEMBER 28, 1989 IN REEL 2438, PAGE 124, OFFICIAL RECORDS.

APN No: 416-321-016-000

# END OF DOCUMENT

## DECLARATION OF SERVICE
### [Cal. Code Civ. Proc. § 405.20]

I, Michael Patrick Rooney, declare:

1. On September 23, 2009, I sent via certified mail, return receipt requested, a copy of the
   *Lis Pendens* executed on September 23, 2009 on behalf of PETRA MARTINEZ,
   affecting title to the real property commonly known as 25339 Camino de Chamisal,
   Salinas, CA 93908 in Monterrey County, CA, to all known addresses of the parties to
   whom the real property claim is adverse and to all owners of record of the real property
   affected by the real property claim as shown by the latest county assessment roll, which
   are:
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. C/O Countrywide
   Home Loans, Inc., 400 Countrywide Way SV-35, Simi Valley, CA 93065; BANK OF
   AMERICA CA 919-01-41 450 America Street, Simi Valley, CA 93065; RECON TRUST
   Corp. 1800 Tapo Canyon Road CA-6-914-01-94, Simi Valley, CA 93063

2. I declare under penalty of perjury under the laws of the State of California that the foregoing is
   true and correct, and was executed at San Francisco, California, on September 23, 2009.

Michael Patrick Rooney, Esq.
MICHAEL ROONEY LAW OFFICE
Attorney for PETRA MARTINEZ

**END OF DOCUMENT**

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _San Francisco_ }

On _9/23/09_ before me, _Joseph N. Cervelin, Notary Public_
_Date_ Here Insert Name and Title of the Officer

personally appeared _Michael Patrick Rooney_
 Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> JOSEPH N. CERVELIN
> Commission # 1862558
> Notary Public - California
> San Francisco County
> My Comm. Expires Aug 24, 2013

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Joseph N Cull_
 Signature of Notary Public

Place Notary Seal and/or Stamp Above

────────── OPTIONAL ──────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 2008 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5907   Reorder: Call Toll-Free 1-800-876-6827

FILED

AUG 1 7 2009

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
DEPUTY
P. Conder

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF MONTEREY

Date: August 17, 2009

Hon.  Susan M. Dauphiné        , Judge        Perla Z. Conder        , Deputy Clerk
--                              , Bailiff      --                    , Court Reporter

| | |
|---|---|
| Martinez, Petra,<br>Plaintiff/Petitioner | Case No. M100410 |
| vs. | MINUTE ORDER |
| America's Wholesale Lender, et al.<br>Defendant/Respondent | |

The court has received Plaintiff's renewed request for approval of notice of pendency of action.

Plaintiff's renewed request is denied without prejudice.

To the extent that Plaintiff may wish to submit another request for approval of notice of pendency of action in the future, Plaintiff shall submit *a new notice of pendency of action* that complies with Code of Civil Procedure section 405.20 ["The notice [of pendency of action] shall contain the names of all parties to the action and a description of the property affected by the action"].

DATE: 8/17/09

Hon. Susan M. Dauphiné
Judge of the Superior Court

1

# CERTIFICATE OF MAILING
## C.C.P. SEC. 1013a

I do hereby certify that I am not a party to the within stated cause and that on
___AUG 1 7 2009___, I deposited true and correct copies of the following
document:

### MINUTE ORDER

in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,
California 93901, directed to each of the following named persons at their
respective addresses and facsimile numbers, as hereinafter set forth:

Petra Martinez
25339 Camino de Chamisal
Salinas, California 93908

Dated:  AUG 1 7 2009                   CONNIE MAZZEI, Clerk of the
                                       Superior Court, for the County of Monterey

                                       By _____
                                            P. Conder

2