1  SUNNY S. HUO (State Bar No. 181071)
   ssh@severson.com
2  KALAMA M. LUI-KWAN (State Bar No. 242121)
   kml@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
5  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
6
   Attorneys for Defendants
7  Countrywide Home Loans, Inc. (d/b/a
   America's Wholesale Lender), BAC
8  Home Loans Servicing, LP (f/k/a Countrywide
   Home Loans Servicing L.P.), ReconTrust
9  Co., N.A., Bank of America, N.A., and
   Bank of New York Mellon (erroneously
10 named as Bank of New York)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| PETRA MARTINEZ, | Case No.: 09-cv-05630-WHA |
|---|---|
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| AMERICA'S WHOLESALE LENDER, *et al.*, | Date: January 14, 2010<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor |
| Defendants. | Judge: Hon. William H. Alsup |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Plaintiff Admits That She Has Not Complied With California's Tender Rule .......1

        1. The Tender Rule Applies When A Trustee's Sale Is Pending ....................2

        2. As A Standing Requirement, The Tender Rule Must Be Analyzed At The Start Of Litigation, Not At Its Conclusion......................2

        3. Statements Indicating A Desire To Tender Are Not Substitutes For Actual Offers to Tender.........................................................3

        4. Plaintiff Cannot Escape Compliance With The Rule By Making Empty Offers To Tender Or Asking For A Declaration From The Court ........................................................................3

    B. Plaintiff's Quiet Title Claim Is Legally Defective ...................................................5

        1. Plaintiff Concedes That She Lacks Standing ..............................................5

        2. The UCC Does Not Apply To Nonjudicial Foreclosures............................5

        3. Plaintiff's "Power Of Sale" Argument Is Contrary To California Law ......7

        4. Plaintiff Concedes That She Has Not Been Prejudiced By Any Procedural Irregularities...............................................................8

        5. Plaintiff Cannot State A Quiet Title Claim Based On Fraud ......................8

    C. Plaintiff's RESPA Claim Is Legally Defective ........................................................9

    D. Plaintiff's Unfair Debt Collection Claims Are Legally Defective .........................10

    E. Plaintiff's UCL Claim Is Legally Defective...........................................................10

    F. Plaintiff's Declaratory Relief Claim Is Legally Defective ....................................11

    G. Plaintiff's Accounting, Slander Of Title, and Emotional Distress Claims Should Be Dismissed With Prejudice Because Plaintiff Fails To Refute Defendants' Showing That These Claims Are Legally Defective.............12

    H. Plaintiffs' Request For Leave To Amend Should Be Denied ...............................13

III. CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

## CASES
Page(s)

*Alicea v. GE Money Bank*, 2009 WL 2136969 (N.D. Cal. July 16, 2009) .................................... 2

*Alvara v. Aurora Loan Services, Inc.*, 2009 WL 1689640 (N.D. Cal. June 16, 2009) .................... 2

*Anaya v. Advisors Lending Group*, 2009 WL 2424037 (E.D. Cal. Aug. 5, 2009) ................. 3, 4, 6

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................................................ 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 13

*Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991) ...................................................................... 14

*Bloom v. Martin*, 77 F.3d 318 (9th Cir. 1996) ................................................................................... 14

*Castaneda v. Saxon Mortg. Services, Inc.*, --- F.Supp.2d ----, 2009 WL 4640673
 (E.D. Cal. Dec. 3, 2009) ............................................................................................................. 6

*Catalan v. RBC Mortg. Co.*, 2008 WL 2741159 (N.D. Ill. July 8, 2008) .......................................... 9

*Chavez v. Recontrust Co.*, 2008 WL 5210893 (E.D. Cal. Dec. 11, 2008) ........................................ 2

*Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764 (1st Cir. 1994) ............................. 12

*Farahani v. Cal-Western Reconveyance Corp.*, 2009 WL 1309732
 (N.D. Cal. May 8, 2009) ............................................................................................................. 6

*Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983) ................................................................................... 11

*Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376 (1970) ................................................ 13

*FPCI RE-HAB 01 v. E&G Invs,, Ltd.*, 207 Cal.App.3d 1018 (1989) ............................................... 2

*Gaffney v. Savings & Loan Assn.*, 200 Cal.App.3d 1154 (1988) ...................................................... 3

*Gaitan v. Mortgage Electronic Registration Sys.*, 2009 WL 3244729
 (C.D. Cal. Oct. 5, 2009) ............................................................................................................. 6

*I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal.3d 281 (1985) .............................................................. 6

*In re Si-Va Tech., Inc.*, 35 Fed. Appx. 681, 684 (9th Cir. 2002) ....................................................... 4

*In re Si-Va Tech., Inc.*, 35 Fed. Appx. 681, 684 (9th Cir. 2002) ....................................................... 4

*Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935 (E.D. Pa. Apr. 22, 2008) ............. 9, 10

*Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 118 (1971) ...................................... 4

*Knapp v. Doherty*, 123 Cal.App.4th 76 (2004) .......................................................................... 8, 11

*Lehner v. U.S.*, 285 F.2d 1187 (9th Cir. 1982) ................................................................................ 11

*Moeller v. Lien*, 25 Cal.App.4th 822 (1994) .............................................................................. 6, 7

*Moore v. Chase Bank*, 2009 WL 961161 (N.D. Cal. Apr. 7, 2008) .......................................... 8, 11

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997) ..................................................... 12

*Nguyen v. Calhoun*, 105 Cal.App.4th 428 (2003) ......................................................................... 3

*Onoh v. Citigroup*, 2009 WL 2246207 (N.D. Cal. July 27, 2009) ........................................ 10, 11

*Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177 (N.D. Cal. 2009) ........... 2, 3, 4, 5

*Reynoso v. Paul Financial, LLC*, 2009 WL 3833298 (N.D. Cal. Nov. 16, 2009) ................. 6-8, 14

*Singh v. Washington Mut. Bank*, 2009 WL 258885 (N.D. Cal. Aug. 19, 2009) ............................. 9

*Sitanggang v. IndyMacBank, F.S.B.*, 2009 WL 1286484 (E.D. Cal. May 6, 2009) ....................... 4

*Smith v. Wachovia*, 2009 WL 1948829 (N.D. Cal. July 6, 2009) .................................................. 6

*Sondel v. Arnold*, 2 Cal.2d 87 (1934) ............................................................................................ 4

*Sparling v. Daou*, 411 F.3d 1006 (9th Cir. 2005) ........................................................................ 14

*Trerice v. Blue Cross*, 209 Cal.App.3d 878 (1989) .................................................................... 13

*U.S. Cold Storage v. Great Western Sav. & Loan Ass'n*, 165 Cal.App.3d 1214 (1985) ................ 3

*Walker v. Equity I Lenders Group*, 2009 WL 1364430 (S.D. Cal. May 14, 2009) ....................... 9

*Wong v. First Magnus Fin. Corp.*, 2009 WL 2580353 (N.D. Cal. Aug. 20, 2009) ........................ 3

**STATUTES and RULES**

United States Code
    12 U.S.C. § 2605(e)(1) ............................................................................................... 9
    28 U.S.C. § 2201, *et seq* ........................................................................................... 11

Federal Rules of Civil Procedure
    Rule 11(b)(1) ............................................................................................................ 14

California Civil Code
    Section 2924b ............................................................................................................. 8
    Section 2934a ......................................................................................................... 7, 8

I.     INTRODUCTION

Plaintiff Petra Martinez ("Plaintiff") filed this suit against defendants Countrywide Home Loans, Inc. (d/b/a America's Wholesale Lender), BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing L.P.), ReconTrust Company, N.A., Bank of America, N.A., and Bank of New York Mellon (erroneously named as Bank of New York) ("Defendants") not to right a wrong but to delay a proper foreclosure and leverage a favorable loan for herself.

In her opposition ("Opposition" or "Opp.") to Defendants' motion to dismiss ("Motion"), Plaintiff makes a "universal objection" to the conclusion that she is abusing the judicial process. (Opp. at 2.) The problem for Plaintiff, however, is that her first amended complaint ("FAC") and Opposition both suggest she is using the process only to delay the foreclosure sale. The FAC is similar to complaints that Plaintiff's counsel has filed in many other actions in this District since Fall 2009. Similarly, the Opposition not only fails to address points that Defendants raised in their Motion, but perhaps more tellingly, tries to refute an argument that Defendants never made.

Plaintiff also takes issue with Defendants' request for dismissal with prejudice. But Plaintiff has given no indication that she can plead more facts, or that she understands the pleading standard set by Rules 8 and 9(b). (*See* Opp. at 9 ("The test is whether the facts, as alleged, support *any* valid claim entitling plaintiffs to relief . . . not necessarily the one intended by Plaintiff.") (emphasis in original).) Setting aside her willingness to assert legally defective claims, Plaintiff has shown a readiness to make truly outrageous arguments to keep her litigation alive. (*See id.* at 2 (arguing that motion to dismiss "is aimed at an improper and unjust goal of depriving a citizen of the United States and the State of California from her right to due process of law").) Simply put, Plaintiff's lawsuit has all of the hallmarks of a classic stalling action.

There is no reason for this case to remain on the Court's docket. Defendants therefore respectfully request that the Court dismiss this action with prejudice.

II.    ARGUMENT

   A.     **Plaintiff Admits That She Has Not Complied With California's Tender Rule**

For four reasons, the Opposition fails to show that Plaintiff has satisfied (or will satisfy) California's tender rule.

### 1. The Tender Rule Applies When A Trustee's Sale Is Pending

Without citing any legal authority, Plaintiff argues that the tender rule does not apply in this case because the trustee's sale "hasn't occurred yet." (Opp. at 4.) Plaintiff is wrong.

In California, the tender rule applies even where the challenged sale has not yet occurred. Indeed, courts have consistently held the rule applies in the pre- and post-foreclosure context. *See Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure."); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1184 (N.D. Cal. 2009) (holding in case where trustee's sale was pending that "Defendants are entitled to a dismissal on the ground that Plaintiff failed to allege that he has met the 'tender rule' requirements"); *Chavez v. Recontrust Co.*, 2008 WL 5210893, at *6 (E.D. Cal. Dec. 11, 2008) (dismissing request to enjoin sale because the "law is long-established that a trustor or his successor must tender the obligation in full as a prerequisite to challenge the foreclosure sale").

### 2. As A Standing Requirement, The Tender Rule Must Be Analyzed At The Start Of Litigation, Not At Its Conclusion

Plaintiff argues that the Court should suspend the tender rule and instead "condition[] its judgment upon Plaintiff's tendering" of the amount owed on her $1,500,000.00 debt. Put another way, Plaintiff wants the Court to defer any analysis of Plaintiff's standing until the end of the litigation. This argument is nonsense.

Courts impose the rule as a threshold standing requirement at the outset of litigation because if plaintiffs "could not have redeemed the property" in the first place, then they could not have been harmed by any alleged irregularities in the sale procedure. *FPCI RE-HAB 01 v. E&G Invs,, Ltd.*, 207 Cal.App.3d 1018, 1022 (1989). And if plaintiffs were not harmed by any such irregularities, then allowing them to proceed "would be nothing but an idly and expensively futile act[,]" wasting the time and resources of defendants and the judicial system. *Alvara v. Aurora Loan Services, Inc.*, 2009 WL 1689640, at *6 (N.D. Cal. June 16, 2009) (citation omitted). Plaintiff's standing to pursue her claims should thus be decided at the outset of litigation.

### 3. Statements Indicating A Desire To Tender Are Not Substitutes For Actual Offers to Tender

In a half-baked attempt to comply with the tender rule, Plaintiff states that she "wishes to pay the mortgage." (Opp. at 5.) This proclamation of Plaintiff's *desire* to "pay the mortgage" is not enough to satisfy the tender rule. As a matter of law, "to challenge the foreclosure sale, plaintiff must indeed allege that the amount due has been tendered." *Wong v. First Magnus Fin. Corp.*, 2009 WL 2580353, at *2 (N.D. Cal. Aug. 20, 2009) (citing *U.S. Cold Storage v. Great Western Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1222 (1985)); *Pantoja*, 640 F.Supp.2d at 1184. For instance, in *Pantoja*, plaintiff conferred with his lender and submitted an application for a loan-modification. The court held that even these steps were insufficient to comply with the tender rule, explaining that "[t]hese allegations merely inform Defendants that Plaintiff submitted documents requested by Countrywide. Plaintiff's allegations are devoid of facts to show that a valid and viable tender offer was made." *Id.* In this case, Plaintiff has done even less, and cannot satisfy the rule by stating only that she "wishes" to pay the mortgage. (Opp. at 5.)

To be clear, there is no room for creativity in compliance with the tender rule—the rule is "strict and strictly applied" by California courts. *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439 (2003). Because Plaintiff does not (and cannot) allege that she has tendered the full amount owed, she lacks standing to pursue any of her claims as a matter of law. *Id.* ("In other words, with respect to tender, 'it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect.'") (quoting *Gaffney v. Savings & Loan Assn.*, 200 Cal.App.3d 1154, 1165 (1988)).

### 4. Plaintiff Cannot Escape Compliance With The Rule By Making Empty Offers To Tender Or Asking For A Declaration From The Court

Plaintiff makes the bold statement that neither *Nguyen v. Calhoun* "nor any other case shows that it is appropriate to dismiss a case at the onset where plaintiff is willing to tender upon determination [by] the court of her obligations." (Opp. at 8.) For three reasons, she is wrong.

First, an offer to tender is an empty offer where a plaintiff has no ability to do so. *Anaya v. Advisors Lending Group*, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 5, 2009) ("Simply put, if the offeror 'is without the money necessary to make the offer good and knows it' the tender is

**1** without legal force or effect.") (quoting *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.App.3d
**2** 112, 118 (1971)); *see also In re Si-Va Tech., Inc.*, 35 Fed. Appx. 681, 684 (9th Cir. 2002) ("As to
**3** the alleged tender of May 6, 1998, it too must fail.  An offer of performance is of no effect if not
**4** made in good faith with intent and ability to perform.  Therefore, 'insincere' and 'evasive' offers
**5** are not effective tenders.") (citing *Sondel v. Arnold*, 2 Cal.2d 87, 90 (1934)).

**6**       Here, Plaintiff's statement that she is "willing" to tender has no legal effect.  (Opp. at 8.)
**7** She does not (and cannot) dispute that she failed to make her monthly payments.  (RJN, Ex. 2.)
**8** Her failure to comply with those payment obligations hollows out any allegation she can make
**9** indicating that she will tender the full balance owed.  Because "Plaintiff's inability to make
**10** monthly promissory note payments reflects [an] inability to tender amounts owed[,]" she cannot
**11** credibly plead that she will tender the full amount.  *Anaya*, 2009 WL 2424037, at *10; *see also*
**12** *Sitanggang v. IndyMacBank, F.S.B.*, 2009 WL 1286484, at *2 (E.D. Cal. May 6, 2009) (same).
**13** She certainly alleges no facts to support the conclusion that she can carry out her wishful
**14** statement that she is willing to tender.

**15**       Second, Plaintiff cannot escape the rule by claiming that the Court must first determine
**16** the amount owed.  (Opp. at 8.)  A borrower cannot sue a lender and argue that she owes nothing
**17** until the lender can prove how much she owes.  *See Pantoja*, 640 F.Supp.2d at 1192 (rejecting
**18** argument that "there is no way to determine what [plaintiff] owes without an accounting by
**19** Defendants" because "Plaintiff does not claim that he is owed anything by Defendants nor is it
**20** difficult to calculate what Plaintiff owes Defendants based on the attached Notice of Default").

**21**       Third, a "determination" of the amount owed is unnecessary because Plaintiff knew at
**22** every stage of the foreclosure process how much she owed to her lender.  The Notice of Default
**23** told Plaintiff how much she needed to pay to stop the foreclosure process:

> IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).
>
> This amount is $79,555.75, as of 01/27/2009 and will increase until your account becomes current.

**28** (RJN, Ex. 2.)

1   Similarly, the Notice of Sale told Plaintiff the amount of the outstanding balance at the
2   time the notice was prepared:

> The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,608,361.83. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

(RJN, Ex. 4.)

The answer to Plaintiff's question of how much she needs to tender to have standing is a simple one: $1,608,361.83. Because Plaintiff has failed to allege that she can and will tender this amount, she has no standing to file this suit.

### B. Plaintiff's Quiet Title Claim Is Legally Defective

For five separate and independent reasons, the Opposition fails to show that Plaintiff can state a quiet title claim as a matter of law.

#### 1. Plaintiff Concedes That She Lacks Standing

Plaintiff appears to concede that it would be impossible for her to obtain quiet title without repaying the money owed on her loan. (Motion at 5; Opp. at 5-7.) Because she has failed to refute Defendants' showing in this regard, her quiet title claim should be dismissed.

#### 2. The UCC Does Not Apply To Nonjudicial Foreclosures

Plaintiff argues that Defendants are required to offer "evidence as to who owns the note" before commencing foreclosure proceedings. (Opp. at 7.) For two reasons, she is wrong.

First, Plaintiff's contentions on this point are inconsistent. On the one hand, she argues that Defendants are required to show who "owns the note" (*id.*); but on the other hand, she claims that she is "not seek[ing] to litigate physical possession of the note" (*id.* at 5). Because Plaintiff's Opposition is a jumbled mess, it is unclear exactly what she is trying to argue.

Second, to the extent Plaintiff is claiming that the promissory note is a negotiable instrument, and must therefore be enforced by the note holder pursuant to the Uniform Commercial Code ("UCC"), she is wrong. (*Id.* at 7.) The UCC governs negotiable instruments; it does not govern nonjudicial foreclosure under deeds of trust.

As Defendants explained in the Motion, the rules governing nonjudicial foreclosure of a deed of trust are set forth in the California Civil Code beginning at Section 2924. (Motion at 6-

7.) California courts have repeatedly held that these Civil Code provisions establish a "comprehensive" and "exclusive" set of regulations for the conduct of non-judicial foreclosures. *Moeller v. Lien*, 25 Cal.App.4th 822, 834 (1994) ("The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive."); *I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985) ("The statutory provisions regulating the nonjudicial foreclosure of deeds of trust are contained in sections 2924-2924i. These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.").

Because the Civil Code provides the "comprehensive" and "exclusive" rules governing nonjudicial foreclosures, the UCC does not play any role in the foreclosure process. *See*, *e.g.*, *Farahani v. Cal-Western Reconveyance Corp.*, 2009 WL 1309732, at *2 (N.D. Cal. May 8, 2009) ("Plaintiff's opposition to the motion to dismiss is based almost entirely on provision of the California Commercial Code. The case law cited by Plaintiff that purportedly applies the Commercial Code to transfer of a deed is inapposite, as those cases do not involve foreclosure of residential property. While Commercial Code § 3301 arguably requires that the foreclosing party have possession of the underlying deed or note, such possession is not required for a non-judicial foreclosure."); *Smith v. Wachovia*, 2009 WL 1948829, at *3 (N.D. Cal. July 6, 2009) ("Plaintiff is incorrect that the UCC is the governing law in this matter. . . . The non-judicial foreclosure process is covered exclusively by section 2924 of the California Civil Code.").[1]

That state and federal courts in California have soundly rejected this theory is not news to Plaintiff's counsel, Michael Rooney. In another foreclosure-delay lawsuit, Mr. Rooney litigated and lost on this very same point. *Reynoso v. Paul Financial, LLC*, 2009 WL 3833298, at *4

---

[1] *See also Castaneda v. Saxon Mortg. Services, Inc.*, --- F.Supp.2d ----, 2009 WL 4640673, at *7 (E.D. Cal. Dec. 3, 2009) (rejecting argument that defendants "were not in possession of the Note, and are not beneficiaries, assignees or employees of the entity in possession of the note, and are therefore not 'person[s] entitled to enforce' the security interest on the property in accordance with section 3301" because "section 3301 reflects California's adoption of the Uniform Commercial Code, and does not govern non-judicial foreclosures, which is governed by California Civil Code section 2924"); *Gaitan v. Mortgage Electronic Registration Sys.*, 2009 WL 3244729, at *10 (C.D. Cal. Oct. 5, 2009) ("Plaintiff's argument about the 'holder of the note' is premised on his interpretation of Cal. Com. Code §§ 3301, 3309. . . . Those statutory provisions reflect California's adoption of the Uniform Commercial Code, and generally define a 'Person entitled to enforce' a 'lost, destroyed or stolen instrument.' Non-judicial foreclosure in California is not governed by this statute, but rather by Cal. Civ. Code §§ 2924, *et seq.*").

(N.D. Cal. Nov. 16, 2009) (quoting *Moeller*, 25 Cal.App.4th at 834).  In *Reynoso*, as in this case, Mr. Rooney argued that "the promissory note is a negotiable instrument, and must therefore be enforced by the note holder pursuant to section 3301 of the California Commercial Code."  *Id.* The Honorable Judge Samuel Conti disagreed, explaining that Mr. Rooney's attempt to import the UCC's rules into the Civil Code's framework "must fail" because "[i]t would be inconsistent with the comprehensive and statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings."  *Id.* (quoting *Moeller*, 25 Cal.App.4th at 834).

Simply put, the overwhelming weight of authority on this point is clear—the UCC does not apply to nonjudicial foreclosures.  Plaintiff's suggestion that "[t]here is no such law or ruling in existence to support this idea" is therefore disingenuous at best.  (Opp. at 6.)  Because she cannot show that Defendants are required to produce the note or otherwise comply with the UCC before commencing foreclosure proceedings, Plaintiff's quiet title claim fails as a matter of law.

### 3. Plaintiff's "Power Of Sale" Argument Is Contrary To California Law

Plaintiff argues that "there is no chain of title from America's Wholesale Lender, the original note holder, to Bank of New York Mellon, who purports to be entitled to collect now." (Opp. at 5.)  There are two problems with Plaintiff's argument.

First, Defendants complied with California law in commencing the foreclosure process. (Motion at 2, 6-8.)  Plaintiff makes much to do about MERS purportedly breaking the "chain of title" by "attempt[ing] to substitute [the] trustee despite expressly not having the power to do so" under paragraph 24 of the Deed of Trust.  (Opp. at 5.)  But as the beneficiary, MERS was allowed to substitute the trustee.  Civil Code Section 2934a specifically authorizes the beneficiary to execute a substitution of trustee, even if a deed of trust contains a "contrary provision":

> The trustee under a trust deed upon real property . . . given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, *may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by . . . all of the beneficiaries under the trust deed*, or their successors in interest, and the substitution shall be effective *notwithstanding any contrary provision in any trust deed* executed on or after January 1, 1968 . . . .

Cal. Civ. Code § 2934a(a)(1) (emphasis added).  Thus, although paragraph 24 of the Deed of Trust identifies the lender as the party that may appoint a successor trustee, the trustee in this case (*i.e.*, MERS) "possessed the power of sale upon default, which it could transfer to a trustee." *Reynoso*, 2009 WL 3833298, at *2.

Second, Plaintiff's counsel knows full well that this contention is not warranted by existing law.  As with other arguments in the Opposition, Plaintiff's counsel has already litigated and lost on this same point.  In *Reynoso*, for instance, Mr. Rooney argued that "Paul Financial, as the lender, was the only party granted the power of sale."  *Reynoso*, 2009 WL 3833298, at *2. Judge Conti explained that Mr. Rooney's contention "is plainly false" because under California law, "[t]he beneficiary is free to make a substitution of the trustee in order to conduct the foreclosure sale."  *Id.* at *2 (citing Cal. Civ. Code §§ 2934a, 2924b(b)(4)).  The "power of sale" theory that Plaintiff's counsel offered in *Reynoso* is no different than the "power of sale" theory offered in the boilerplate complaint here, and should be rejected.

### 4. Plaintiff Concedes That She Has Not Been Prejudiced By Any Procedural Irregularities

As Defendants explained in the Motion, the FAC does not show how Plaintiff was prejudiced (if at all) by their alleged failure to comply with statutory requirements governing nonjudicial foreclosures.  (Motion at 8-9 (citing *Knapp v. Doherty*, 123 Cal.App.4th 76, 92 (2004).)  The Opposition avoids contesting this point altogether, effectively conceding that Plaintiff cannot make that showing.  Because she cannot show that she suffered any prejudice as a result of the purported errors, her quiet title claim fails as a matter of law.  *See Moore v. Chase Bank*, 2009 WL 961161, at *4 (N.D. Cal. Apr. 7, 2008) ("Without even an allegation of prejudice, the Court will not intervene based on what may be, at most, a technicality.").

### 5. Plaintiff Cannot State A Quiet Title Claim Based On Fraud

In the Motion, Defendants explained that the FAC cannot state a quiet title claim based on fraud because it does not: (1) challenge any particular representation; (2) explain why any such representation was false when made; or (3) identify the speaker of the representation.  (Motion at 9-10.)  Despite having forced Defendants to brief the issue by pleading it in her FAC, Plaintiff has

1  not mentioned (or refuted) Defendants' showing in her Opposition.  Because she apparently
2  cannot resolve this pleading defect, her quiet title claim should be dismissed.

3       **C.**      **Plaintiff's RESPA Claim Is Legally Defective**

4  For three reasons, the Opposition does not do enough to save Plaintiff's claim under the
5  Real Estate Settlement Procedures Act ("RESPA").

6  First, as Defendants explained in the Motion, Plaintiff cannot state a claim based on a
7  failure to respond to a qualified written request ("QWR") because she does not allege that she
8  sent a QWR in the first place.  (Motion at 10-11.)  In her Opposition, Plaintiff suggests that she
9  did not need to clearly allege that she sent a QWR because, by asserting that Defendants failed to
10 respond, "an inference may be drawn that such communications were sent."  (Opp. at 7.)

11 The problem for Plaintiff, however, is that an "inference" that "communications" were
12 sent is not enough to show that Defendants had a duty to respond.  Even if Plaintiff alleged more
13 than an inference, her claim would still fail because Plaintiff does not allege that her
14 "communications" satisfied the statutory requirements of a QWR.  *See Walker v. Equity I Lenders*
15 *Group*, 2009 WL 1364430, at *4-5 (S.D. Cal. May 14, 2009) (citing 12 U.S.C. § 2605(e)(1) (B))
16 (a "qualified written request must enable the servicer to identify the name and account of the
17 borrower, and include a statement of the reasons for the belief of the borrower that the account is
18 in error").  And even if her "communications" did satisfy the statutory requirements of a QWR, it
19 is impossible to tell whether Plaintiff mailed them to the address designated by the loan servicer
20 for the purpose of receiving QWRs.  *See Catalan v. RBC Mortg. Co.*, 2008 WL 2741159, at *5
21 (N.D. Ill. July 8, 2008) ("If the servicer chooses to establish a separate and exclusive office and
22 address, borrowers who fail to submit their QWRs to that location do so at their peril.").  Thus,
23 even if Plaintiff alleged that "communications" were sent, her claim would still fail.

24 Second, the Opposition apparently concedes that Plaintiff has not suffered actual damages
25 as a result of the purported RESPA violation.  As Defendants pointed out, Plaintiff's failure to
26 identify any actual damages is fatal to her RESPA claim.  (Motion at 11 (citing *Singh v.*
27 *Washington Mut. Bank*, 2009 WL 258885, at *5 (N.D. Cal. Aug. 19, 2009); *Jones v. Select*
28 *Portfolio Servicing, Inc.*, 2008 WL 1820935, at *9-10 (E.D. Pa. Apr. 22, 2008)).  The Opposition,

however, has completely ignored the Motion in this regard, effectively conceding that Plaintiff does not (and cannot) allege that she suffered actual damages.

Third, in her Opposition, Plaintiff asks "why move to dismiss" the RESPA claim without making "a statute of limitations or lack of standing argument, where dismissal is appropriate . . . ." (Opp. at 8.) Defendants, however, did make those very arguments. To start with, the Motion explains that Plaintiff's RESPA claim is time-barred if the "communications" at issue were sent before August 3, 2008. (Motion at 11 n.6.) But without factual allegations about the purported QWR, it is impossible to conclusively determine whether the claim is time-barred. In addition, Defendants explained in the Motion that Plaintiff lacks standing to pursue any of her claims as a matter of law because she has not and cannot tender the full balance of her debt. (*Id.* at 3.)

Plaintiff's RESPA claim is therefore legally defective and should be dismissed.

### D. Plaintiff's Unfair Debt Collection Claims Are Legally Defective

According to Plaintiff, "Defendant's argument regarding Plaintiff's Unfair Debt Collection Practices claim is that 'foreclosure is protected activity.'" (Opp. at 8.) Defendants, however, did not make any such argument. In the Motion, they explained that: (1) foreclosure does not constitute "debt collection" under the federal or state fair-debt collection practices act; and (2) in any event, Plaintiff has not alleged any facts to state a claim. (Motion at 12.)

Plaintiff does not address either of these points, most likely because "Plaintiff's opposition is, barring some details, the same as the opposition filed by plaintiff's counsel in a previous case." *Onoh v. Citigroup*, 2009 WL 2246207, at *1 (N.D. Cal. July 27, 2009) (Alsup, J.). Because Plaintiff has ignored Defendants' showing in this regard, her claims under the federal and state Fair Debt Collection Practices Act should be dismissed with prejudice.

### E. Plaintiff's UCL Claim Is Legally Defective

For three reasons, Plaintiff's arguments are insufficient to save her UCL claim.

First, the Opposition string-cites cases and contends that the FAC "provides the alleged [unlawful, unfair, and fraudulent] practices throughout." (Opp. at 9-10.) This response, however, does not address Defendants' showing that the FAC lacks factual allegations: (1) identifying the

1  challenged advertisements and defendant(s) that published them; and (2) sufficient to state a
2  fraud-based UCL claim under Rule 9(b).  (Motion at 12-13; Opp. at 8-10.)
3      Second, Plaintiff cannot comply with her pleading burden by simply arguing that she
4  complied with her pleading burden.  *Onoh*, 2009 WL 2246207, at *2 (Alsup, J.) ("It seems as if
5  plaintiff is emboldened by her oft-stated belief that courts must take all allegations, both legal and
6  factual, no matter how incredible or argumentative, to be true.  This belief is inaccurate.").
7      Third, the only factual allegation that Plaintiff identifies in support of her UCL claim is a
8  factual allegation that was not alleged in her UCL claim—*i.e.*, that "Plaintiff was never contacted
9  pursuant to Cal. Civ. Code § 2923.5 prior to Defendants recording a Notice of Default" in
10 violation of the UCL.  (Opp. at 10.)  Plaintiff did not assert a violation of Section 2923.5 in
11 support of her UCL claim.  The UCL claim is based only upon "Defendants' advertising," not a
12 purported violation of the Civil Code.  (FAC ¶ 101.)
13     Further, assuming only for the sake of argument that Plaintiff had asserted a UCL claim
14 based on a Section 2923.5 violation, and assuming (again, only for the sake of argument) that
15 Plaintiff "was never contacted" (Opp. at 10), her UCL claim would still fail.  As Defendants
16 explained in the Motion, Plaintiff cannot state a claim based on Section 2923.5 because she "has
17 completely failed to allege in her FAC how she was prejudiced (if at all) by Defendants'
18 purported failure to comply" with the statute.  (Motion at 8-9 (citing *Knapp*, 123 Cal.App.4th at
19 94; *Lehner v. U.S.*, 285 F.2d 1187, 1190-91 (9th Cir. 1982); *Moore*, 2008 WL 961161, at *4).
20 Without "even an allegation of prejudice, the Court will not intervene based on what may be, at
21 most, a technicality."  *Id.*   Plaintiff's UCL claim should therefore be dismissed with prejudice.
22     **F.    Plaintiff's Declaratory Relief Claim Is Legally Defective**
23     Plaintiff continues to insist that she may assert "declaratory relief" as a standalone claim.
24 For two reasons, she is wrong.
25     First, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, *et seq.*, "only permits the
26 district court to adopt a specific remedy when jurisdiction exists."  *Fiedler v. Clark*, 714 F.2d 77,
27 79 (9th Cir. 1983).  It does not confer upon plaintiffs a basis for asserting an independent cause of
28 action.  As Defendants have pointed out, the DJA "is procedural in nature, and merely offers an

Case3:09-cv-05630-WHA   Document14   Filed12/31/09   Page16 of 19

**1**  additional remedy to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997)

**2**  (*quoted by* Motion at 13); *see also Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764,

**3**  775 (1st Cir. 1994) ("A declaratory judgment is not a theory of recovery."). Plaintiff does not cite

**4**  any authority to the contrary; her only citation is to the DJA itself, which provides for the

**5**  "[c]reation of [a] remedy", not a new cause of action. As such, her declaratory relief claim fails.

**6**  Second, the Opposition fails to refute Defendants' showing that the declaratory relief

**7**  claim is superfluous. (Motion at 14; Opp. at 8.) Indeed, the Opposition does not even address

**8**  Defendants' showing in this regard. For this additional reason, Plaintiff's declaratory relief claim

**9**  should be dismissed with prejudice.

**10**       **G.    Plaintiff's Accounting, Slander Of Title, and Emotional Distress Claims Should Be Dismissed With Prejudice Because Plaintiff Fails To Refute**

**11**             **Defendants' Showing That These Claims Are Legally Defective**

**12**  The Opposition does not do enough to save Plaintiff's remaining claims for accounting,

**13**  slander of title, and emotional distress. In some respects, it does nothing at all. First, Plaintiff has

**14**  abandoned her "accounting" claim. The Opposition says nothing about Defendants' showing that

**15**  accounting can only be a valid claim where the defendant owes the plaintiff money—not the other

**16**  way around. (Motion at 15.) As such, the claim should be dismissed with prejudice.

**17**  Second, Plaintiff argues that her "slander of title" claim should not be dismissed because

**18**  there is no authority "show[ing] that it is appropriate to dismiss a case at the onset where plaintiff

**19**  is willing to tender upon determination of the court of her obligations." (Opp. at 8.) As discussed

**20**  above, this argument is nonsense. *Supra* § II(A)(4). In addition, this argument fails to address

**21**  the other basis Defendants identified for dismissing the slander of title claim—*i.e.*, recordation of

**22**  a notice of default and a notice of sale are absolutely privileged acts upon which no tort claim of

**23**  any sort, other than malicious prosecution, may be based. (Motion at 14.)

**24**  Third, Plaintiff argues that her emotional distress (and other) claims should not be

**25**  dismissed because although Defendants are "ask[ing] for dismissal without leave to amend," their

**26**  "real argument . . . is that they would like to see more facts pled." (Opp. at 7.) This argument

**27**  fails for two reasons. To start with, Plaintiff does not dispute Defendants' showing that a creditor

**28**  cannot be liable for emotional distress when "it has merely pursued its own economic interests

11952/0255/780123.1          - 12 -          Reply ISO Motion to Dismiss
Case No. 3:09-cv-05630-WHA

and asserted its legal rights." *Trerice v. Blue Cross*, 209 Cal.App.3d 878, 885 (1989) (*cited by* Motion at 15); *see also Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 395 (1970) (a defendant is "undoubtedly . . . privileged, in pursuing its own economic interests, to assert its legal rights" even if "it is substantially certain that in doing so emotional distress will be caused").

In addition, Plaintiff is wrong—Defendants would not "like to see" Plaintiff allege more facts. (Opp. at 7.) Defendants truly are requesting that the Court dismiss the FAC without leave to amend. It would be impossible for Plaintiff to plead any facts sufficient to state a claim under any theory without running far afoul of her Rule 11 obligations; put another way, allowing Plaintiff to proceed further with her litigation would amount to an expensive exercise in futility. If Plaintiff has additional facts to support her claims, she should raise them at the January 14, 2010 hearing on the Motion or be required to submit a motion for leave to amend, explaining what additional facts she could assert in another amended complaint.

### H.  Plaintiffs' Request For Leave To Amend Should Be Denied

Plaintiff makes much to do about the notice-pleading standard of Rule 8, going so far as to devote one-fourth of her Opposition to the topic. (Opp. at 2-4.) But a plaintiff cannot satisfy the notice-pleading standard by simply heaving "multiple grounds for relief" onto a piece of paper and calling them claims. (*Id.* at 4.)

Nor can a plaintiff satisfy the standard by throwing "multiple grounds" at the wall in the hope that something will stick. As the Supreme Court recently explained, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Nor does a complaint "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1940 (quoting *Twombly*, 550 U.S. at 557). But that is exactly what Plaintiff has done.

The FAC, with all of its generalized and boilerplate allegations, does not plead any facts sufficient to state a claim under any of its 10 theories of liability. Nor can it. It would be

1  impossible for Plaintiff to plead facts, even under Rule 8's notice-pleading standard, because those
2  facts do not exist. This is not news to Plaintiff—if she had such facts, those facts would have been
3  pled in the FAC and identified in the Opposition.

4      Leave to amend is not automatic whenever a plaintiff loses a Rule 12 motion. To justify
5  the request to amend, Plaintiff should explain what she can add to the FAC to overcome the fatal
6  obstacles that exist. Otherwise, granting leave to amend amounts to a pure delay in the final
7  disposition of the case, and a concomitant waste of judicial and party resources. *See Sparling v.*
8  *Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005) (complaint may be dismissed with prejudice if it is
9  clear that it cannot be saved by amendment); *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996)
10 ("Dismissing a complaint without leave to amend is appropriate when granting leave would serve
11 no purpose because the acts complained of cannot constitute a claim for relief."); *Bell v. City of*
12 *Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). (dismissal with prejudice is proper if amendment
13 "would be futile in saving the plaintiff's case").

14     Plaintiff has not identified any facts she could plead in a second amended complaint to
15 overcome the noted defects. Accordingly, her request for leave to amend should be denied.

## III.  CONCLUSION

17     Plaintiff's FAC is devoid of any merit whatsoever. As a threshold matter, regardless of
18 any additional facts Plaintiff could allege, her action fails because she has no standing to sue.
19 *Supra* § II(A); (Motion at 3-5). Further, even if she had standing, Plaintiff cannot plead facts that
20 could state a claim under any of her 10 theories of liability. *Supra* §§ II(B)-(G); (Motion at 5-16).

21     The reason Plaintiff is suing without standing, and without properly alleging any facts or
22 claims, is not because she was wronged, but because she is using this litigation as an expensive
23 tool to force Defendants to delay the trustee's sale and give her a new loan. She is, in other
24 words, using the judicial system to "cause unnecessary delay" and "needlessly increase the cost of
25 litigation[.]" Fed. R. Civ. P. 11(b)(1).

26     Plaintiff's counsel must know by now that the claims pled by his client are legally
27 defective. He is no stranger to foreclosure-delay actions, and has litigated and lost on the same
28 theories that his client is pursuing here. *See Reynoso*, 2009 WL 3833298, at *4 ("Attorney for

1 Plaintiff is warned that dismissal without prejudice is, in this case, by no means an invitation to
2 replead certain causes of action.  Plaintiff's prior submission of a redundant, poorly-organized
3 Complaint that pleads twenty-four causes of action borders on vexatious.").

4      Perhaps recognizing that the claims are untenable, he has littered his client's FAC and
5 Opposition with hyperbole, hoping the Court will be swayed more by rhetoric than reason.  For
6 instance, Plaintiff suggests (repeatedly) that Defendants violated her rights under the Fourteenth
7 Amendment by filing a motion to dismiss.  (*See* Opp. at 2 ("Plaintiff hereby makes a universal
8 objection to each and every argument of the Defendants [*sic*] motion, as well as the motion as a
9 whole, on the basis that this motion . . . is aimed at an improper and unjust goal of depriving a
10 citizen of the United States and the State of California from her right to due process of law."); *id.*
11 at 5 ("Plaintiff has asked the court for a determination of her rights and responsibilities . . . so that
12 due process ensues."); *id.* at 8 (motion to dismiss is "an inappropriate and inequitable request
13 aimed at depriving Plaintiff of her rights as a citizen of the United States").  Of course, the notion
14 that Defendants violated Plaintiff's due process rights by filing a Rule 12(b)(6) challenge is
15 absurd, but in the absence of legitimate claims, absurdity is all she has to stand on.

16      For these reasons, and as set forth in their opening papers, Defendants respectfully request
17 that the Court dismiss Plaintiff's FAC without leave to amend.

18      Alternatively, because the Opposition suggests that Plaintiff has no facts or legitimate
19 claims to plead, Defendants respectfully request that Plaintiff be required to explain what (if
20 anything) she would allege in an amended complaint either at the January 14, 2010 hearing or in a
21 separately noticed motion for leave to amend.

22 DATED: December 31, 2009     Respectfully submitted,

23      SEVERSON & WERSON
     A Professional Corporation
24
     By: _____*/s/ Kalama M. Lui-Kwan*_____
25             Kalama M. Lui-Kwan

26      Attorneys for Defendants Countrywide Home Loans,
     Inc. (d/b/a America's Wholesale Lender), BAC
27      Home Loans Servicing, LP (f/k/a Countrywide
     Home Loans Servicing L.P.), ReconTrust Co., N.A.,
28      Bank of America, N.A., and Bank of New York
     Mellon (erroneously named as Bank of New York)