SUNNY S. HUO (State Bar No. 181071)
ssh@severson.com
KALAMA M. LUI-KWAN (State Bar No. 242121)
kml@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
Countrywide Home Loans, Inc. (d/b/a America's Wholesale Lender), BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing L.P.), ReconTrust Co., N.A., Bank of America, N.A., and Bank of New York Mellon f/k/a The Bank of New York as Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETRA MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMERICA'S WHOLESALE LENDER, et al.,<br><br>　　　　Defendants. | Case No.: 09-cv-05630-WHA<br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　March 4, 2010<br>Time:　　　8:00 a.m.<br>Courtroom:　9, 19th Floor<br>Judge:　　　Hon. William H. Alsup |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Defendants Properly Commenced The Foreclosure Process ......................................2

        1. Defendants Complied With Civil Code Section 2923.5..................................2

        2. Defendants Complied With Civil Code Section 2924.....................................4

            a. Civil Code Section 2924.3 Does Not Apply ........................................4

            b. There Is No Material Difference Between The Notices
That Plaintiff Received And The Notices That Were Recorded .........6

            c. The Substitution Of Trustee Was Properly Served..............................6

            d. The Notice Of Default Was Properly Recorded Because
Defendants Complied With Section 2923.5 As It Does Not
Require That Defendants Deliver Notice of Default To Plaintiff .......7

    B. The UCC Does Not Apply To Nonjudicial Foreclosures in California .......................8

        1. Plaintiff's Loan Is Governed By The California Civil Code, Which
As Plaintiff Admits, Does Not Require Production Of The Note...................8

        2. Plaintiff's Loan Is Not Governed By The Commercial Code.........................8

            a. The PSA And The Loan Are Different Contracts
Subject To Different Laws ..................................................................9

            b. Defendants Would Be Entitled To Judgment Even Under
The PSA's Choice Of Law And Contractual Requirements................9

        3. The Civil Code Provides The Exclusive Rights And Powers Of
Parties To Nonjudicial Foreclosure Proceedings Under California Law ......11

    C. Plaintiff Cannot State A Claim As A Matter Of Law ................................................13

        1. Plaintiff Lacks Standing To Pursue Any Of Her Claims..............................13

        2. Plaintiff Is Not Allowed To Plead New Theories In An Opposition ............14

III. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alicea v. GE Money Bank*,
  2009 WL 2136969 (N.D. Cal. July 16, 2009) ................................................................... 13

*Alliance Mortgage Co. v. Laurie Samuel Rothwell*,
  10 Cal.4th 1226 (1995) ............................................................................................... 11, 12

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ..................................................................................................... 15

*Backus v. Sessions*,
  17 Cal.2d 380 (1941) ....................................................................................................... 14

*Bank of America, N.A. v. La Jolla Group II*,
  129 Cal.App.4th 706 (2005) ............................................................................................ 12

*California Golf, L.L.C. v. Cooper*,
  163 Cal.App.4th 1053 (2008) .......................................................................................... 12

*Chavez v. Recontrust Co.*,
  2008 WL 5210893 (E.D. Cal. Dec. 11, 2008) ................................................................. 14

*Flyer v. Sullivan*,
  284 A.D. 697 (N.Y. Sup. Ct. 1954) ................................................................................... 9

*FPCI RE-HAB 01 v. E&G Invs., Ltd.*,
  207 Cal.App.3d 1018 (1989) ................................................................................... 5, 8, 14

*FTC v. Publ'g Clearing House*,
  104 F.3d 1168 (9th Cir. 1997) ........................................................................................... 2

*Gonzalez v. City of Federal Way*,
  299 Fed.Appx. 708 (9th Cir.2008) .................................................................................... 5

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
  652 F.Supp.2d 1039 (N.D. Cal. 2009) .............................................................................. 8

*Huckell v. Matranga*,
  99 Cal.App.3d 471 (1979) ............................................................................................... 12

*I.E. Assocs. v. Safeco Title Ins. Co.*,
  39 Cal.3d 281 (1985) ............................................................................................... 4, 6, 11

*Knapp v. Doherty*,
  123 Cal.App.4th 76 (2004) ............................................................................................ 3, 7

*Lehner v. U.S.*,
    685 F.2d 1187 (9th Cir.1982) .................................................................................................7

*Moeller v. Lien*,
    25 Cal.App.4th 822 (1994) ...................................................................................................11

*Moore v. Chase Bank*,
    2008 WL 961161 (N.D. Cal. Apr. 7, 2008) ............................................................................3

*Nool v. HomeQ Servicing*,
    653 F.Supp.2d 1047 (E.D. Cal. 2009) ....................................................................................8

*Pantoja v. Countrywide Home Loans, Inc.*,
    640 F.Supp.2d 1177 (N.D. Cal. 2009) ....................................................................................7

*Pickern v. Pier 1 Imps. (U.S.), Inc.*,
    457 F.3d 963 (9th Cir.2006) ...........................................................................................5, 14

*Pribus v. Bush*,
    118 Cal.App.3d 1003 (1981) ................................................................................................12

*Reynoso v. Paul Financial, LLC*,
    2009 WL 3833298 (N.D. Cal. Nov. 16, 2009) ......................................................................5

*Spencer v. DHI Mortg. Co., Ltd.*,
    642 F.Supp.2d 1153 (E.D. Cal. 2009) ....................................................................................8

*U.S. Bank, N.A. v. Collymore*,
    890 N.Y.S.2d 578 (N.Y. App. Div. 2009) .............................................................................9

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir.2006) ................................................................................................14

**STATUTES**

California Civil Code
    Section 2923.5 ............................................................................................... 2, 3, 4, 7, 8
    Section 2924.3 .........................................................................................................4, 5
    Section 2924.5 ..............................................................................................................8
    Section 2934a .........................................................................................................6, 7

Commercial Code
    Section 3312 ..............................................................................................................12

**RULES**

Federal Rules of Civil Procedure
    Rule 8 ........................................................................................................................15
    Rule 11....................................................................................................... 2, 5, 13

**OTHER AUTHORITIES**

*May 1, 2006 Pooling and Servicing Agreement*, http://www.sec.gov/Archives/edgar/data/1362460/000090514806004352/efc6-1751_5878313ex991.txt (last visited February 17, 2010) §§ 10.03; 10.04(b) ........................................................................................................9

## I.     INTRODUCTION

In their summary judgment motion ("Motion"), Countrywide Home Loans, Inc. ("CHL") (d/b/a America's Wholesale Lender ("AWL")), BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing L.P.), ReconTrust Co., N.A. ("ReconTrust"), Bank of America, N.A., and Bank of New York Mellon f/k/a The Bank of New York as Trustee ("BNY") ("Defendants") showed that they complied with the Civil Code and Deed of Trust in commencing foreclosure after the admitted default and failure to cure by Petra Martinez ("Plaintiff").

In her opposition ("Opposition" or "Opp."), however, Plaintiff has not responded to most of Defendants' points.  For instance, she does not dispute that: Defendants gave Plaintiff notice of her default (Motion at 9); Plaintiff failed to cure her default (*id.* at 10); ReconTrust properly recorded the Notice of Default as agent for the beneficiary (*id.* at 10-11); ReconTrust properly recorded the Notice of Trustee's Sale as trustee (*id.* at 11-12); the Deed of Trust allows MERS, as the beneficiary, to substitute the trustee on the Loan (*id.* at 13); Ms. Meza properly executed the Substitution of Trustee on behalf of MERS (*id.* at 16-17); and the Notice of Default contained correct dates, and was the same notice served on Plaintiff (*id.* at 14).

The Opposition is silent as to each of these matters—and the silence is notable because Plaintiff has been vocal, since she filed her first amended complaint ("FAC"), about Defendants' alleged failure to properly perform these tasks.  Indeed, with the exception of a few unsupported arguments about the Substitution of Trustee and Civil Code Sections 2923.5 and 2924.3, Plaintiff does not address (let alone refute) Defendants' showing that they complied with the Civil Code.

Perhaps recognizing that Defendants complied with the Civil Code, Plaintiff commits the bulk of her brief to arguing that they did not comply with the UCC.  She argues the UCC applies because a "pooling and servicing agreement" that securitized her Loan (and other unrelated loans) is governed by the New York Commercial Code, and provides "substantive" law supposedly missing from the Civil Code.  The "pooling and servicing agreement", however, has nothing to do with the foreclosure at issue, and California law is clear that parties' rights and powers in nonjudicial foreclosures are governed by the Civil Code.  In any event, it does not matter what law applies, as Defendants have proved that they possess the original promissory note ("Note").

This lawsuit is nothing more than a baseless stalling tactic, which is designed to keep Plaintiff in her $1.5 million home rent-free (beyond the nearly two years that she has resided there for free), and which has forced the Court and Defendants to fritter away considerable amounts of time and resources. Because Plaintiff does not (and cannot) refute Defendants' showing that they complied with the Civil Code and Deed of Trust in commencing foreclosure, and that they have the original Note, Defendants respectfully request that judgment be entered in their favor.

## II.  ARGUMENT

### A.  Defendants Properly Commenced The Foreclosure Process

#### 1.  Defendants Complied With Civil Code Section 2923.5

Plaintiff argues that Defendants "contend that only a declaration of compliance, and not actual compliance, is required to satisfy Civil Code § 2923.5." (Opp. at 20.) Defendants, however, did not make any such argument.[1] Rather, the Motion shows that instead of merely preparing a declaration, Defendants fully complied with Section 2923.5(g)'s requirement that they contact Plaintiff. For four reasons, Plaintiff's argument fails to create an issue of fact.

First, Section 2923.5(g)(1) requires Defendants to "contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency." Cal. Civ. Code § 2923.5(g)(1). As Defendants explained, they sent a September 16, 2008 letter to Plaintiff pursuant to the statute. (Motion at 15 (citing Merziotis Decl., Ex. L).) The letter contains HUD's telephone number, and specifically states that it "is being sent pursuant to California Code section 2923.5." (Merziotis Decl., Ex. L.)[2]

---

[1] Plaintiff has also misconstrued several of Defendants' other points. For instance, without citing a page in the Motion, she claims "defendants argue that they do not need a demonstrable interest in the property to foreclose, and that California's laws create a loophole through which BONY may foreclose on any house it likes." (Opp. at 12.) The Motion makes no such argument as it would be preposterous for a lender to "foreclose on any house it likes." Rather, the Motion shows that Defendants have a legal interest, and properly initiated foreclosure. (Motion at 8-23.) In making false arguments, Plaintiff and her counsel should be mindful of their duties not "to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1).

[2] Plaintiff tries to refute this fact by testifying that "Defendants did not send me the letters . . . ." (Martinez Decl. ¶ 16; *see also* Opp. at 22.) Her broker, however, sent the September 16, 2008 letter back to Countrywide on February 26, 2009, showing that she received the letter and gave it to her broker. (Merziotis Decl., Ex. N); *see also FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Second, the statute requires Defendants to "contact the borrower by telephone at least three times at different hours and on different days." Cal. Civ. Code § 2923.5(g)(2). Plaintiff argues that these calls were not made. (Opp. at 22.) But the documents tell a different story. Defendants' business records show that on December 5, 2008, Plaintiff spoke with Defendants, who advised her "that we have not contacted anyone on this loan since 9/29/08-when we spoke with you about a [short payoff]" of the Loan. (Merziotis Decl., Ex. P.) In other words, on September 29, 2008, just after sending the September 16 letter, Defendants "contact[ed] the borrower by telephone" and discussed a short sale in compliance with Section 2923.5(g)(2).

Third, Plaintiff argues that Defendants failed to send a certified letter two weeks after attempting to make contact. (Opp. at 22.) The problem with this argument is that Defendants were not required by Section 2923.5(g)(3) to send any such letter. They would have been required to send a certified letter "[i]f the borrower does not respond within two weeks" after attempts were made to contact Plaintiff by telephone. Cal. Civ. Code § 2923.5(g)(3). But since Defendants made contact with Plaintiff under Section 2923.5(g)(2), they did not need to send a "certified letter" pursuant to Section 2923.5(g)(3).[3]

Fourth, Plaintiff argues that Defendants did not include "a prominent link on their website for borrowers to get help" under Section 2923.5(g)(5). (Opp. at 22.)[4] Subsection (g)(5) requires that the mortgagee, beneficiary, or authorized agent "post[] a prominent link on the homepage of its Internet Web site" to web pages containing four categories of information. Cal. Civ. Code § 2923.5(g)(5). But Plaintiff does not provide any evidence to support her claim. She does not mention which website she visited, when she visited the site, and what information was missing.

In addition, even if she could prove the website lacked this information, she did not suffer any harm as a result. *Knapp v. Doherty*, 123 Cal.App.4th 76, 92 (2004) (sale not invalidated where procedural defect was not prejudicial); *Moore v. Chase Bank*, 2008 WL 961161, at *4

---

[3] Plaintiff also claims there is an issue of fact "related to the mailing of notices" under Sections 2923.5 and 2924 as Defendants have not offered proof of mailing. (Opp. at 24.) With regard to Section 2923.5, as set forth above, a certified letter was not required. As to Section 2924, she has not shown what notices (if any) were supposed to have been sent by certified mail. In any event, she has not shown how the absence of either certificate would create a dispute of material fact.

[4] Plaintiff does not (and cannot) challenge Defendants' compliance with Section 2923.5(g)(4), as Defendants "provided a means for the borrower to contact" them. Cal. Civ. Code § 2923.5(g)(4).

(N.D. Cal. Apr. 7, 2008) ("Without even an allegation of prejudice, the Court will not intervene based on what may be, at most, a technicality."). Indeed, it would be impossible for Plaintiff to show she was harmed because Defendants provided the four categories of information to her.

To start with, when Plaintiff spoke with the Loan servicer on September 29, 2008, the parties discussed the possibility of a Short Pay Off of the Loan, *i.e.*, an "option[] that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure" on the security. Cal. Civ. Code § 2923.5(g)(5)(A).

Then, on December 5, 2008, Plaintiff was advised about information she had to "collect and be prepared to present" to qualify for loan assistance. *Id.* § 2923.5(g)(5)(B). She "refused to give [the] info", and after being informed that "without that info we will not be able to move fwd with assistance[,]" Plaintiff again "refused and disconnected the call." (Merziotis Decl., Ex. P.) Plaintiff was therefore given the information required by Section 2923.5(g)(5)(B).

Similarly, Section 2923.5(g)(5)(C) requires that Plaintiff be given a "toll-free number for borrowers who wish to discuss options for avoiding foreclosure" with their mortgagee, beneficiary, or authorized agent. Defendants provided that toll-free number in the September 16, 2008 letter to Plaintiff. (Merziotis Decl., Ex. L ("Please call us at 1-800-669-6654, so that we can discuss in greater detail this opportunity to help you save your home.").)

Finally, the statute requires that Plaintiff receive "[t]he toll-free number made available by HUD to find a HUD-certified housing counseling agency." Cal. Civ. Code § 2923.5(g)(5)(D). That phone number was given to Plaintiff in the September 16, 2008 letter. (Merziotis Decl., Ex. L ("You may find a HUD-approved housing counselor near you by calling 1-800-569-4287.").)

She thus cannot create an issue of fact as to Defendants' compliance with Section 2923.5.

### 2. Defendants Complied With Civil Code Section 2924

Plaintiff has tossed up four arguments in response to Defendants' showing that they complied with Section 2924. None of these arguments is sufficient to create an issue of fact.

#### a. Civil Code Section 2924.3 Does Not Apply

Plaintiff argues that "sending an unsigned undated unrecorded copy does not comply with Section 2924.3's requirements" that Defendants send her a "copy of the notice of default filed" in

the Recorder's Office. (Opp. at 28.) There are three problems with this argument.

First, Section 2924.3 does not require that Defendants deliver a copy of the Notice of Default (or anything else) to Plaintiff. The statute provides that

> a person who has undertaken as an agent of a mortgagee, beneficiary, or owner of a promissory note . . . to make collections of payments from an obligor under the note, shall mail the following notices . . . to each mortgagee, beneficiary or owner for whom the agent has agreed to make collections from the obligor . . . .

Cal. Civ. Code § 2924.3. In other words, to the extent any of Defendants is "an agent of a mortgagee, beneficiary, or owner of a promissory note[,]" they are required to mail the notice to the "mortgagee, beneficiary or owner" on whose behalf they are acting. *Id.* Defendants are not acting on Plaintiff's behalf, however, and are not required by the statute to send her such notices.

Second, Plaintiff's counsel, Michael P. Rooney, knows full well that this contention is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2); *Reynoso v. Paul Financial, LLC*, 2009 WL 3833298, at *3 (N.D. Cal. Nov. 16, 2009). In *Reynoso*, Mr. Rooney's client argued that defendant failed to send him the notice of default in a timely manner under Section 2924.3. *Id.* The Honorable Judge Samuel Conti disagreed, explaining to Mr. Rooney that "even assuming that this section applies to Quality, it only requires the agent to mail the Notice of Default to the beneficiary—not the trustor/borrower." *Id.* (citing Cal. Civ. Code § 2924.3).

Third, even if Section 2924.3 worked the way Plaintiff wants it to work, judgment would still be appropriate because she does not allege a violation of the statute in her FAC. The FAC does not mention the statute, let alone plead a violation of it. Because Plaintiff cannot create a material fact by manufacturing a fictional dispute, judgment should be entered against her. *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.2006) (refusing to allow plaintiff to raise new theories in opposition to summary judgment).[5]

---

[5] Plaintiff similarly claims for the first time that "[t]here is no evidence of any . . . agency agreements" between or among Defendants. (Opp. at 29.) Plaintiff did not raise this issue in her FAC, and should not be allowed to use it at this late stage to create a meaningless dispute of fact. *See*, *e.g.*, *Gonzalez v. City of Federal Way*, 299 Fed.Appx. 708, 710 (9th Cir.2008) (affirming refusal to consider claim not in complaint and "raised for the first time on summary judgment"). Indeed, the mocking tone (and inaccurate summary) suggests that it was offered more as commentary than argument. (*See* Opp. at 29 (demanding that Defendants produce evidence

### b. There Is No Material Difference Between The Notices That Plaintiff Received And The Notices That Were Recorded

Plaintiff argues that the Substitution of Trustee and the Notice of Trustee's Sale that Stanley Atkinson received were different than the copies that were recorded with the Recorder's Office. (Opp. at 27, 29.) This argument is nonsense.

As Plaintiff admits, the only difference between the two sets of documents is that "the version mailed to Stanley Atkinson was [d]ated April 30 and not signed" whereas the "recorded version was [d]ated April 29th and signed . . . ." (*Id.*) In all other respects, the documents are identical. Both versions of the Substitution of Trustee identify the same borrowers, lenders, original trustee, new trustee, beneficiary, and deed of trust. (*Compare* Atkinson Decl., Ex. 1 *with* Lui-Kwan Decl., Ex. 5.) Likewise, both versions of the Notice of Trustee's Sale identify the same deed of trust, borrowers, trustee, sale date and time, sale location, property address, and amount of unpaid balance. (*Compare* Atkinson Decl., Ex. 1 *with* Lui-Kwan Decl., Ex. 6.)

There is no material difference between the two sets of documents, and as such, it is impossible for Plaintiff to create an issue of material fact based on the purported discrepancies.[6]

### c. The Substitution Of Trustee Was Properly Served

Plaintiff argues that service of the Substitution of Trustee was defective under Section 2934a(b) because the copy that "Stanley Atkinson actually received was not filled in, signed, or dated." (Opp. at 28.) Her argument fails for two reasons.

First, the substitution that Mr. Atkinson received is not different in any meaningful way from the substitution that was recorded with the Recorder's Office. *See supra* § II(A)(2)(b). The

---

showing that "ReconTrust is an agent for MERS, who is an agent for America's Wholesale Lender, who is no longer in interest, but it hopes that its agency for AWL applies to the current beneficiary, who purports to be a trust, for which BONY is an agent").)

[6] Plaintiff makes the unsupported argument that "[t]he Trustee was Substituted as of 5/4/09, whereas the Notice of Sale was [s]ent . . . on 4/30/2009 in violation of 2924." (Opp. at 27.) This argument is based on a misreading of the statute. MERS, however, signed a notarized "Substitution of Trustee" on February 2, 2009 (*i.e.*, before the anticipated trustee's sale). (Motion at 11 (citing (Tapia Decl. ¶¶ 5-7, 9)).) Under the Civil Code, the substitution became effective on February 2, 2009, when it was signed, and not on May 4, 2009, when it was recorded. *See* Cal. Civ. Code § 2934a(d) ("A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents.").

only items not "filled in, signed, or dated" on the notice Mr. Atkinson received were the signature and notary blocks. The version that Mr. Atkinson received and the version that was recorded are otherwise identical. (*Compare* Atkinson Decl., Ex. 1 *with* Lui-Kwan Decl., Ex. 5.)

Second, Plaintiff argues that Defendants violated Section 2934a(b) because "strict compliance with the Civil Code is required" in California. (Opp. at 28.) But she does not cite any authority for this proposition. Nor can she. Courts have "rejected claims of deficient notice where no prejudice was suffered as the result of a procedural irregularity." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009) (rejecting claim that notice of default failed to name beneficiary); *see also Knapp v. Doherty*, 123 Cal.App.4th 76, 93-94 (2004) (rejecting claim based on deviation from notice requirement where "[t]here was no prejudicial procedural irregularity"); *Lehner v. U.S.*, 685 F.2d 1187, 1190-91 (9th Cir.1982) (rejecting claim based on failure to provide written notice of foreclosure sale where plaintiff had actual notice). Without a showing of prejudice, Plaintiff cannot create an issue of material fact.[7]

### d. The Notice Of Default Was Properly Recorded Because Defendants Complied With Section 2923.5 As It Does Not Require That Defendants Deliver Notice of Default To Plaintiff

Plaintiff argues that the Notice of Default was "prematurely recorded" because Defendants did not comply with Section 2923.5 before recording the notice. (Opp. at 28.) In particular, she claims that the September 16, 2008 letter Defendants sent to her "does not comply with § 2923.5's requirements featuring a much more detailed requirement for contact . . . ." (Opp. at 27-28.) But as set forth above, Section 2923.5(g)(1) requires only that Defendants send a letter with "the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency." Cal. Civ. Code § 2923.5(g)(1); *supra* § II(A)(1). The letter satisfies

---

[7] Plaintiff's argument fails for the additional reason that she is relying on a version of the statute that expired over a decade ago. She quotes an old version of Section 2934a(b) that applies where a "substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale . . . ." (*Id.*) Subsection (d) of this version, however, states that "[t]his section shall remain in effect only until January 1, 1998, and shall have no force or effect after that date . . . ." Cal. Civ. Code § 2934a(d). The statute has since been replaced by an updated version. For the reasons set forth above, however, Defendants have complied with their obligations under Section 2934a(b) regardless of whether the expired or updated version is applied.

this requirement by stating, "You may find a HUD-approved housing counselor near you by calling 1-800-569-4287." (Merziotis Decl., Ex. L.) Defendants thus complied with the statute.[8]

### B. The UCC Does Not Apply To Nonjudicial Foreclosures in California

Plaintiff argues that Defendants are required to show that they possess the original promissory note before commencing foreclosure. For five reasons, she is wrong.

#### 1. Plaintiff's Loan Is Governed By The California Civil Code, Which As Plaintiff Admits, Does Not Require Production Of The Note

Plaintiff concedes that she cannot prevail if only the Civil Code is applied to this case, admitting that "[Section] 2924 does not require 'production of the note' for non-judicial sales" in California. (Opp. at 15.) It would, of course, be difficult if not impossible for Plaintiff to argue that the Civil Code requires production of the note. As Defendants explained in their opening papers, courts have universally held that possession of the original note is not a prerequisite to nonjudicial foreclosure under California law. (Motion at 17-18.)[9] Accordingly, to the extent Plaintiff's action is based on a supposed failure to produce the note, her claims should be rejected.

#### 2. Plaintiff's Loan Is Not Governed By The Commercial Code

Recognizing that she cannot prevail under the Civil Code, Plaintiff devotes a substantial portion of her brief to arguing that the Commercial Code applies because "Defendant's own PSA adapts [*sic*] the UCC chain-of-title requirements expressly." (Opp. at 13; *see also id.* at 26-27.) There are two fatal problems with this argument.

---

[8] Notably, Plaintiff does not explain what other "detailed requirement" must be satisfied under Section 2924.5. (Opp. at 28.) The reason she does not do so is because she cannot. Section 2923.5(g)(1) does not contain any additional requirements. It would therefore be impossible for her to create a dispute of material fact in this regard.

[9] Plaintiff nevertheless challenges Defendants' position by arguing that they rely upon "slip opinions of district court judges" to support their showing. (Opp. at 14; *see also* Motion at 17-18 (citations omitted).) The rule articulated by those "slip opinions of district court judges", however, is consistent with the rule articulated by published opinions of district court judges. *See*, *e.g.*, *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009) (Alsup, J.) ("California law does not require possession of the note as a precondition to non-judicial foreclosure under a deed of trust . . . Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a non-judicial foreclosure.") (citation omitted); *Spencer v. DHI Mortg. Co., Ltd.*, 642 F.Supp.2d 1153, 1166 (E.D. Cal. 2009) ("Under Civil Code section 2924, no party needs to physically possess the promissory note.") (citation omitted); *Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047, 1053 (E.D. Cal. 2009) ("It is well-established that non-judicial foreclosures can be commenced without producing the original promissory note.").

### a. The PSA And The Loan Are Different Contracts Subject To Different Laws

Plaintiff suggests that Defendants are required to produce the Note before foreclosing under the Civil Code because the May 1, 2006 pooling and servicing agreement ("PSA") is governed by the New York Commercial Code ("NYCC"). (Opp. at 12-14.) But Plaintiff is conflating two different agreements: (1) the January 13, 2006 Loan (to which Plaintiff was a party); and (2) the May 1, 2006 PSA (to which Plaintiff was not a party). The two agreements are separate and unrelated instruments that are governed by separate sets of laws.

Under the Loan, Plaintiff borrowed $1.5 million, and delivered the Note to CHL. The Loan is governed by California law. (Lui-Kwan Decl., Ex. 1 ¶ 16.). Later, under the PSA, CHL sold the Loan to the Depositor, which transferred the Note to BNY. The PSA is subject to New York law.[10] The PSA also states that certain terms are subject to the NYCC.[11] The Loan has nothing to do with the PSA. In fact, the PSA does not at all address foreclosure procedures on the Loan or any other individual loans. But Plaintiff is conflating the two agreements, hoping the Court will apply the law and contractual requirements of one to the other.

Because the parties to the Loan are not required to comply with any "chain of title" requirements in the PSA, the Court should reject Plaintiff's completely nonsensical argument.

### b. Defendants Would Be Entitled To Judgment Even Under The PSA's Choice Of Law And Contractual Requirements

Even if the Court were to entertain Plaintiff's nonsensical argument that the PSA's choice of law and contract provisions applied to the Loan (they do not), judgment would still be proper for two reasons. First, in New York, "physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (N.Y. App. Div. 2009); *see also Flyer v. Sullivan*, 284 A.D. 697, 699 (N.Y. Sup. Ct. 1954) ("mortgage

---

[10] *May 1, 2006 Pooling and Servicing Agmt.*, http://www.sec.gov/Archives/edgar/data/1362460/000090514806004352/efc6-1751_5878313ex991.txt, § 10.03 ("This agreement shall be construed in accordance with and governed by the substantive laws of the State of New York . . . .").

[11] *See id.* § 10.04(b) ("This Agreement creates a valid and continuing security interest (as defined in the Uniform Commercial Code as enacted in the State of York (the 'NY UCC') . . . .").

may be transferred by delivery without a written assignment"). Here, the Note was delivered to BNY on May 25, 2006 (Cerchio Decl. ¶ 6), before the Notice of Default was recorded on January 28, 2009 (Lui-Kwan Decl., Ex. 4). Thus, under New York law, this would be the end of inquiry and foreclosure would be proper.

Going a step further in Plaintiff's convoluted and baseless arguments pertaining to the PSA, even if the PSA contained a "chain of title" requirement that was somehow imposed on parties to the Loan (Opp. at 13), Defendants would still be entitled to judgment, as they provided that chain of title in their opening papers. To start with, Plaintiff signed the Note on January 4, 2006, when "Plaintiff, as borrower, made, executed and delivered to Defendant, America's Wholesale Lender, a written promissory Note . . . ." (FAC ¶ 10.)

CHL received the Note when Plaintiff delivered it to AWL on January 4, 2006. CHL and AWL are the same entity. As Defendants explained in their Certification of Interested Entities or Persons, "America's Wholesale Lender is the trade name of Countrywide Home Loans, Inc." (Dkt. No. 2.) Plaintiff argues the conclusion that this could not be the case, and that Defendants must prove "a transfer from [AWL] to Countrywide Home Loans, Inc." (Opp. at 14.) The problem for Plaintiff, however, is that she offers no evidence to refute the fact that AWL is simply the trade name of CHL. (*See* Opp. at 13-14.) Without offering any evidence showing that AWL and CHL are not the same entity, Plaintiff cannot credibly dispute that CHL obtained the original Note when it was obtained by AWL.

CHL then sold the Note to Depositor, which transferred the note to BNY, the current holder of the Note.[12] Under the PSA, the Depositor purchased certain loans from CHL and one or more other sellers ("Sellers"). (Cerchio Decl. ¶ 3.) These loans included the Loan at issue. (*Id.* ¶ 5.) After the Depositor purchased the Loan (and other similar loans) from CHL and the Sellers, it transferred the Loan (along with the other loans) to BNY, who "is the designated custodian for all of the collateral documents conveyed to the trustee under the PSA." (*Id.* ¶ 4.) BNY still

---

[12] BNY is the trustee for a trust known as "CHL Mortgage Pass-Through Trust 2006-HYB4" ("Trust"). (Cerchio Decl. ¶ 2.) Pursuant to the PSA, the assets of the Trust consist primarily of a pool of mortgage loans secured by first liens on one- to four-family residential properties. (*Id.*, ¶¶ 2, 5.) The parties to the PSA are the Depositor, the Sellers, Countrywide Home Loans Servicing LP (as master servicer to the loans), and BNY (as trustee). (*Id.* ¶ 5.)

possesses the Note, which it stores in its offices at Cypress, California. (*Id.* ¶ 6.)

In short, as Defendants established in their opening papers, Plaintiff delivered the Note to AWL, which is another name for CHL; CHL then sold the Note to the Depositor pursuant to the PSA, which then (also under the PSA) transferred the Note to BNY, which currently holds the Note as trustee. Thus, even if Defendants were somehow required to comply with the PSA's "chain of custody" requirement, they would still be entitled to judgment against Plaintiff.

### 3. The Civil Code Provides The Exclusive Rights And Powers Of Parties To Nonjudicial Foreclosure Proceedings Under California Law

Plaintiff argues that the UCC applies in nonjudicial foreclosure because Section 2924 is "a procedural statute, not a substantive one[,]" and, "2924 by its own terms, looks outside of the statute to the actual obligation to see if there was a breach, and if the note is unenforceable under Article 3 . . . ." (Opp. at 19; *see also id.* at 14-20.) She warns that if the UCC is not enforced as a "substantive" part of the Civil Code, California would "allow strangers to steal people's homes under the color of law." (*Id.* at 15.) This argument, like the rest of Plaintiff's arguments, fails.

First, as set forth above, Plaintiff's argument is not supported by law. *See supra* § II(B)(1)-(2); (Motion at 17-22). The California Supreme Court has explained that the "statutory provisions regulating the nonjudicial foreclosure of deeds of trust are contained in sections 2923-2924i. These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." *I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985). To put a finer point on it, these provisions and the deed of trust cover the "rights and powers of trustees in nonjudicial foreclosure proceedings" in California. *Id.* at 287; *see also Moeller v. Lien*, 25 Cal.App.4th 822, 834 (1994) ("The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive."). Thus, the notion that Section 2924 and deeds of trust do not confer substantive rights or powers upon parties is contrary to California law.

Second, Plaintiff cites a number of decisions, but none of them stands for the proposition that a trustee must comply with the UCC before commencing nonjudicial foreclosure, or that the UCC confers "substantive" rights on parties subject to nonjudicial foreclosure. For instance, citing *Alliance Mortgage Co. v. Laurie Samuel Rothwell*, 10 Cal.4th 1226 (1995), she argues that

Section 2924 is "not exclusive of other substantive laws[,]" presumably including the UCC. (Opp. at 17.) But the court explained only that "the antideficiency statutes do not preclude an action against a borrower for fraud in the inducement" after a judicial foreclosure. *Alliance*, 10 Cal.4th at 1237. Put another way, the court did not rule on whether a trustee must possess the note before commencing nonjudicial foreclosure; it simply allowed a simultaneous fraud action because "a suit for fraud is a completely separate remedy than a suit on the promissory note secured by the deed of trust." *Id.* at 1238 (citation and internal quotation marks omitted).[13]

At most, the Opposition's authorities suggest that a plaintiff may pursue certain causes of action in addition to any remedies they obtain in connection with a foreclosure sale. They do not, however, stand for the proposition that the UCC is a "substantive" part of Civil Code Section 2924. Plaintiff's authorities are therefore inapposite and should be disregarded as such.

Third, Plaintiff's argument is not supported by logic. Her contentions in this lawsuit, including the argument that Defendants must comply with the UCC, are belied by the facts. On the one hand, she makes wild and unconvincing accusations that, for instance, "Defendants engage . . . in a pattern and practice of using the non-judicial foreclosure procedures of this State to take title to real properties when they do not, in fact, have the right to do so" under California law. (FAC ¶ 28.) But on the other hand, she does not dispute that she obtained the Loan from Defendants, made multiple payments on the Loan to Defendants, and had been negotiating a loan modification with Defendants for more than a year before filing this action. (*See* Merziotis Decl.

---

[13] Plaintiff also cites *California Golf, L.L.C. v. Cooper*, 163 Cal.App.4th 1053 (2008), and argues that the court "specifically held that provisions in UCC Article 3 were allowed in the foreclosure context[.]" (Opp. at 18.) Plaintiff is taking liberties with her authorities. In *California Golf*, a vendor obtained a beneficial interest in property from a bank. *California Golf*, 163 Cal.App.4th at 1057. The vendor pursued a nonjudicial foreclosure on the property, sold the property to a winning bidder, but later sued the bidder for breach of warranty under Commercial Code Section 3312 based on a dispute over certain cashier's checks. *Id.* at 1058-59. The court explained that the vendor-beneficiary was allowed to pursue foreclosure as well as a remedy under Section 3312 because the "Commercial Code provisions governing cashier's checks are entirely compatible with the Civil Code sections governing nonjudicial foreclosures." *Id.* at 1072. Cashier's checks have nothing to do with this case, and even if they were at issue here, Plaintiff is not a foreclosing beneficiary entitled to sue Defendants under a breach of warranty theory. Plaintiff's remaining authorities are also of no help to her. None of them stands for the proposition that Defendants were required to possess or produce the Note before commencing foreclosure on the Property. (*See* Opp. at 16 (citing *Bank of America, N.A. v. La Jolla Group II*, 129 Cal.App.4th 706 (2005); *Huckell v. Matranga*, 99 Cal.App.3d 471 (1979); *Pribus v. Bush*, 118 Cal.App.3d 1003 (1981)).)

¶ 3 (describing Loan origination documents); *id.* ¶ 5 (describing business records concerning loan-modification discussions from May 13, 2008 to September 22, 2009); Tapia Decl. ¶¶ 12-13 (describing 12 postponements of trustee's sale between May 20, 2009 and March 5, 2010).)

Even when Defendants filed a declaration testifying that they possess the Note, Plaintiff failed to offer evidence in response, opting to argue only that the declaration "blatantly refers to numerous papers which are neither attached to or served with it." (Opp. at 9; *see also* Cerchio Decl. ¶ 6.) To be sure, she has not (and cannot) offer evidence showing that any other entity has shown up and demanded payment from her. Because she has no factual basis for disputing that Defendants possess the Note, and no evidence to suggest that the wrong entities may be foreclosing here, it would be impossible for her to create a genuine issue of material fact.

And to be frank, Plaintiff has never had a factual basis for claiming that Defendants lack possession of the Note. She, of course, knows that she gave the Note to CHL at the time of the Loan origination on January 13, 2006. And two years later, on May 13, 2008, at her husband's request, Defendants faxed a copy of the Note to Mr. Atkinson. (Merziotis Decl., Ex. P (May 13, 2008 facsimile to Stan Atkinson, enclosing cover letter and promissory note).) Thus, when Plaintiff filed her October 21, 2009 FAC, December 21, 2009 opposition to motion to dismiss, and January 28, 2010 opposition to motion for summary judgment, among other things, she knew that Defendants had the Note but nevertheless forced them to respond to her arguments to the contrary. In other words, despite their Rule 11 duties, Plaintiff and her counsel have prosecuted this lawsuit, and forced Defendants to incur a substantial amount of legal costs and fees, although they knew that Plaintiff's contentions lack evidentiary support. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the factual contentions have evidentiary support"). Of course, Plaintiff's Opposition confirms that she had no evidentiary support for her wild allegations in the FAC.

Accordingly, Defendants are entitled to judgment against Plaintiff.

### C. Plaintiff Cannot State A Claim As A Matter Of Law

#### 1. Plaintiff Lacks Standing To Pursue Any Of Her Claims

Plaintiff argues that she is not required to comply with the "tender rule" because: (1) the

rule does not apply where a trustee's sale has not yet occurred; and (2) she "made a viable offer of tender" by "refinancing her home" in 2006.  (Opp. at 11-12.)  Plaintiff is wrong on both counts.

First, the tender rule applies even where the sale has not yet occurred.  Courts have uniformly held the rule applies in the pre- and post-foreclosure context.  *See Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure."); *Chavez v. Recontrust Co.*, 2008 WL 5210893, at *6 (E.D. Cal. Dec. 11, 2008) (denying request to enjoin sale since tender is "a prerequisite to challenge the foreclosure sale").

Second, Plaintiff argues that the mere event of "refinancing her home . . . satisfies the requirement."  (Opp. at 12.)  The tender rule, however, is a standing requirement that obligates plaintiff-borrowers to submit the amount owed on a loan before bringing suit.  *See FPCI RE-HAB 01 v. E&G Invs., Ltd.*, 207 Cal.App.3d 1018, 1022 (1989).  Under Plaintiff's reasoning, rather than *tender* the outstanding balance *to* the lender, borrowers need to show only that they *received* the outstanding balance *from* the lender.  The argument, quite simply, makes no sense.[14]

### 2. Plaintiff Is Not Allowed To Plead New Theories In An Opposition

Perhaps recognizing that it would be impossible for her to identify a dispute of material fact based on the current record, Plaintiff is trying to keep her lawsuit alive by asserting new theories of liability for the first time in her Opposition.  The Ninth Circuit has held, however, that this is an unacceptable pleading tactic.  *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Pickern*, 457 F.3d at 968-69 (plaintiff may not advance theories "presented for the first time in [plaintiff's] opposition to summary judgment").

---

[14] Plaintiff's reliance on *Backus v. Sessions*, 17 Cal.2d 380 (1941), is misplaced.  The *Backus* opinion addresses the doctrine of rescission, not the tender rule.  Further, the *Backus* court explained that plaintiff had submitted a "notice of rescission . . . with a statement of an offer to restore the $800" owed to defendants, and that when she made the offer, she had assets and "sufficient credit" available to pay the $800 that she offered.  *Id.* at 389-90.  Here, Plaintiff has not shown that she delivered an offer to restore the amount owed on her Loan; indeed, unlike the *Backus* plaintiff, Plaintiff here does not have the ability to pay the Loan.  (Meziotis Decl., Ex. N, at p. 21 ("I can no longer afford to make the payments on the house.").)  Plaintiff thus cannot (and will not) comply with the tender rule, and therefore lacks standing to pursue any of her claims.

In particular, the FAC pleads a claim under California's unfair competition law ("UCL") based on the singular ground that "Defendants' advertising" constituted an unfair business practice. (FAC ¶ 101.) The Opposition, however, argues that "[s]ummary [j]udgment should be granted for the plaintiff" under the UCL based not on "advertising" but on purported violations of the federal Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"). (Opp. at 23; *see also id.* at 30.) These facts and theories, however, were not alleged in the FAC. Plaintiff does not mention TILA in the FAC, let alone plead a claim under TILA. And although the FAC alleges that Defendants failed "to respond to Plaintiff's communications under RESPA[,]" it does not plead any of the facts alleged in the Opposition. (*Compare* FAC ¶¶ 95-99 *with* Opp. at 23, 30.) Simply put, Plaintiff is using her Opposition to either allege new causes of action or flesh out what she apparently recognizes is an inadequate pleading. Accordingly, her attempt to manufacture a genuine dispute of fact should be rejected.[15]

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment in their favor as to each of Plaintiff's claims.

DATED: February 18, 2010

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By: _____*/s/ Kalama M. Lui-Kwan*_____
Kalama M. Lui-Kwan

Attorneys for Defendants Countrywide Home Loans, Inc. (d/b/a America's Wholesale Lender), BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing L.P.), ReconTrust Co., N.A., Bank of America, N.A., and Bank of New York Mellon f/k/a The Bank of New York as Trustee

---

[15] Further, even if Plaintiff were allowed to raise new claims for the first time in the Opposition, judgment against her would still be appropriate because none of the new allegations are sufficient to state a claim. Plaintiff, for instance, does not identify the specific statute within the RESPA framework that Defendants purportedly violated. (*See* Opp. at 23, 30.) Similarly, Plaintiff contends that Defendants violated TILA, but other than stating that a finance charge is a "material disclosure under 15 U.S.C. § 1635", she does not explain what statute Defendants violated, or how they violated the statute. (*See* Opp. at 23-24, 30); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).