IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETRA MARTINEZ,

    Plaintiff,

v.

AMERICA'S WHOLESALE LENDER, COUNTRYWIDE HOME LOANS SERVICING LP, BANK OF AMERICA, RECONTRUST COMPANY, AND BANK OF NEW YORK MELLON

    Defendants.
_____/

No. C 09-05630 WHA

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This is a motion for summary judgment in a foreclosure dispute. For the reasons set forth below, defendants' motion for summary judgment is **GRANTED**.

## STATEMENT

Plaintiff Petra Martinez initiated this action against defendants for monetary damages and equitable relief in the Monterey County Superior Court. All defendants removed this action to federal court (Dkt No. 1). Following the removal, defendants filed a motion to dismiss this action (Dkt No. 5), and in response, plaintiff sought to dismiss her federal claims and remand this action back to state court (Dkt Nos. 11, 12). At the hearing for the motion to dismiss before the undersigned, defendants were ordered to file a motion for summary judgment to develop the record more fully, and the motion at issue was dismissed without prejudice (Dkt No. 16).

1  Plaintiff's notice to dismiss her federal claims was construed as an attempt to amend the
2  complaint, but because she did not amend within 21 days of defendants' motion to dismiss,
3  plaintiff could not amend her complaint as a matter of course under Rule 15(a)(1).
4  Plaintiff's notice to dismiss her federal claims was instead treated as a motion to amend her
5  complaint, and was denied (Dkt No. 35). Defendants now move for summary judgment.

6  The facts of the case are as follows.[1] In January 2006, plaintiff and her then husband,
7  Dr. Stanley Atkins, borrowed $1.5 million from defendant America's Wholesale Lender
8  ("AWL") (Compl. ¶ 10). The loan was secured by her home in Salinas (*id*. ¶¶ 1, 10, Exh. B).
9  The loan was an interest-only, adjustable-rate mortgage with a fixed interest rate of 6.5% until
10  March 2013 (*id.* Exh. B). According to the loan application, plaintiff planned to use a little over
11  one million dollars from the loan to refinance the preexisting mortgage on the property, and
12  received the rest of the loan, about $420,000 in cash (Merziotis Decl. Exh. A). The deed of trust
13  for the property lists defendant AWL as the lender, CTC Real Estate Services as trustee, and
14  Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary (Compl. Exh. B).

15  In addition to the $1.5 million mortgage on the property, plaintiff also secured a home
16  equity line of credit on the property and borrowed another $300,000 in March 2006 (Lui-Kwan
17  Decl. Exh. 2). Around the same time, Dr. Atkins transferred his interest in the property to
18  plaintiff by executing an Interspousal Transfer Deed (*id.* Exh. 3).

19  In May 2006, defendant AWL sold plaintiff's mortgage loan to CWMBS, a Delaware
20  corporation, which in turn transferred it to defendant Bank of New York Mellon ("BNYM")
21  (Cerchio Decl. ¶¶ 1–5). Defendant BNYM currently holds the promissory note for the loan
22  (*id*. ¶¶ 5–6). While the promissory note was being transferred between different parties, MERS
23  remained the beneficiary on the deed of trust (Compl. Exh. B).

24  In May 2008, plaintiff stopped making payments on her mortgage loan. Immediately, she
25  and her ex-husband began calling defendant Countrywide trying to negotiate a loan modification
26  (Merziotis Decl. Exh. O). The negotiations over loan modification lasted several months until

---

[1] Plaintiff's objections to defendants' declarations submitted in support of motion for summary judgment are overruled.

2

December 2008 (*ibid.*). Immediately after plaintiff stopped making payments on her loan, defendant Countrywide notified plaintiff via a letter that the loan was in default (*id*. Exh. K). In September 2008, defendant Countrywide sent a letter to plaintiff pursuant to California Code Section 2923.5, asking her to get in touch to discuss her current loan situation (*id.* Exh. L). In November 2008, defendant Countrywide sent another letter, notifying plaintiff that her loan was in default and explaining how she could cure the default (*id.* Exh. M).

In January 2009, defendant Recontrust, acting as agent for MERS, filed and recorded a notice of default against the property, stating that plaintiff was in breach of the loan in the amount of $79,555.75 (Compl. Exh. E). In April 2009, three months after it had filed a notice of default, defendant Recontrust filed a notice of trustee's sale against the property, setting the sale date for May 20 (*ibid.*).

Meanwhile, in February 2009, after a notice of default had been filed against the property, Ron Doster, a loan broker representing plaintiff, sent a fax to defendant Countrywide, asking defendant Countrywide to approve plaintiff's offer to sell the property for an amount less than the amount owed on the loan to her ex-husband, Dr. Atkins, a procedure known as a short sale (Merziotis Decl. Exh. N). From March through September 2009, plaintiff and Dr. Atkins called defendant Countrywide numerous times to follow up on the status of Dr. Atkins' offer for the property (*id.* Exh. P).

In August 2009, plaintiff commenced this lawsuit in the Monterey County Superior Court and filed a *lis pendens* against the property, which stalled the foreclosure proceeding on the property. In September 2009, defendant Countrywide informed Dr. Atkins that his offer for a short sale had been declined due to his relationship with plaintiff and for being a party to the January 2006 deed of trust (Merziotis Decl. Exh. Q).

Plaintiff alleges that defendants have no legal right to foreclose upon the property because none of the defendants possesses the original promissory note and that defendants did not comply with various federal and state statutory provisions. Plaintiff claims that defendants violated the Real Estate Settlement Practice Act, the Federal Fair Debt Collections Act, the Rosenthal Fair Debt Collection Practices Act, California Business & Professional Code Section 17200 and that

3

1 they intentionally and negligently inflicted emotional distress on her. She also asserts claims for
2 slander of title against the property, declaratory relief, accounting, and quiet title.

## ANALYSIS

### 1. LEGAL STANDARD.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A genuine issue of "material" fact is one that could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

To achieve a grant of summary judgment, the moving party must first "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does *not* meet its initial burden, the motion must be denied. If the moving party *does* meet its initial burden, the non-moving party must then point to specific facts beyond the pleadings showing that there is a genuine issue for trial. *Id.* at 325. Neither conclusory allegations nor unsubstantiated assertions will satisfy this burden. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). But claims based on personal knowledge or other evidence are sufficient. In evaluating the evidence presented, this order may not weigh conflicting evidence or make credibility determinations regarding statements made in affidavits, declarations, or depositions. *See T.W. Electrical Service, Inc., v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). All factual controversies that arise due to the parties' submission of contrary evidentiary facts are resolved in favor of the *non-moving* party. *See Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007).

### 2. PLAINTIFF'S CLAIMS.

Plaintiff's complaint is implicitly premised on two overarching claims: (1) none of the defendants possesses the promissory note, and none of the defendants has the legal right to initiate foreclosure proceeding; and (2) defendants violated statutory provisions in conducting the

4

foreclosure proceeding. This order addresses these two claims before turning to claims listed in the complaint.

### A. RIGHT TO INITIATE FORECLOSURE PROCEEDING.

California Civil Code Sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. *Moeller v. Lien*, 25 Cal. App. 4th 822 (1994). Under Section 2924, production of the original note is not a requirement to proceed with a non-judicial foreclosure. *See* Cal. Civ. Code § 2924(a)(1).[2] Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal. App. 4th at 830. But because one of two overarching claims in the complaint is premised on claim of defective chain of title, it is worthwhile to pause over this issue.

#### *(1) Possession of the Note.*

Plaintiff borrowed $1.5 million from defendant AWL. Defendant AWL is listed as the lender in the deed of trust and in the note. The deed of trust allows the note and the deed to be transferred to other parties (Compl. Exh. B).

Plaintiff argues that there is a defective chain of title because there is no chain of title from defendant AWL to defendant Countrywide, and from defendant Countywide to defendant BNYM.

---

[2] California Civil Code Section 2924 provides the procedural framework to initiate a non-judicial foreclosure proceeding and states that:

> (1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:
>
> (A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.
>
> (B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.
>
> (C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

In their summary judgment motion, defendants have produced evidence that the plaintiff's mortgage loan was sold by defendant AWL to a Delaware corporation, which in turn transferred it to defendant BNYM, which currently holds the promissory note and keeps it at its office (Cerchio Decl. ¶ 2–6). In short, defendants have produced evidence that there is a complete chain of title between defendant AWL and defendant BNYM. Plaintiff has failed to produce any evidence to the contrary to create a genuine issue of material fact as to whether defendant BNYM does not hold the note.

### *(2)* *Beneficiary/Trustee's Right to Initiate Foreclosure.*

Plaintiff alleges that defendant Recontrust was not authorized to initiate and conduct foreclosure proceeding and only defendant AWL, the lender, ever had any authority to conduct a foreclosure proceeding. Plaintiff is incorrect.

California Civil Code Section 2924 allows "the trustee, mortgagee, or beneficiary" to file and record a notice of default and begin the foreclosure process. Section 2924(b)(4) allows a "person authorized to record the notice of default or the notice of sale" including "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." While the promissory note was being transferred between different parties, MERS remained the beneficiary in the deed of trust. Thus, MERS had the authority to conduct a foreclosure proceeding on behalf of whoever owned the note once plaintiff stopped making payments on her loan and refused to cure. Defendant Recontrust, as an agent for MERS, could file and record a notice of default against the property, and file a notice of trustee's sale.

Additionally, California Civil Code Section 2934a authorizes the beneficiary to substitute the trustee. When MERS substituted defendant Recontrust as trustee in May 2008, MERS had the authority, as beneficiary, to make the substitution. Thus, defendant Recontrust was authorized to initiate foreclosure sale in the capacity of the trustee, as well as in its capacity as an agent for MERS.

In short, there is a complete chain of title from defendant AWL to defendant BNYM. Furthermore, defendant Recontrust was authorized to conduct a foreclosure proceeding.

6

1 Plaintiff has produced no evidence to the contrary. Accordingly, there is no genuine issue of
2 material fact as to whether defendants have the right to enforce foreclosure against the property.

### B. DEFICIENT NOTICE.

Plaintiff alleges that defendants did not comply with various statutory provisions when they initiated the foreclosure proceeding. Defendants' alleged noncompliance generally concerns whether they properly notified plaintiff pursuant to California Civil Code Section 2923.5. Section 2923.5 provides that a party seeking to foreclose cannot file a notice of default until thirty days after contacting the borrower in person or by telephone to assess the borrower's financial situations, or after satisfying the due diligence requirement to contact the borrower.

In their motion for summary judgment, defendants produced evidence that defendant Countrywide diligently tried to contact plaintiff in accordance with Section 2923.5 (Lui-Kwan Decl. Exh. 4). Defendants have also produced evidence that in September 2008, defendant Countrywide sent a letter to plaintiff pursuant to California Code Section 2923.5, asking her to get in touch with defendant Countrywide to discuss her current loan situation (Merziotis Decl. Exh. L). Additionally, between May 2008 (when she first stopped making payments on the loan) and September 2009 (when Dr. Atkins' offer to buy the property in a short sale was rejected), there were numerous phone conversations between plaintiff, Dr. Atkins, and defendant Countrywide, discussing a potential loan modification and an offer of short sale from Dr. Atkins (*id.* Exhs. P, Q).

Plaintiff asserts in a sworn declaration that she has never received any letters from defendants pursuant to Section 2923.5 and that defendants did not attempt to reach her via phone until December 17, 2009 (Martinez Decl. ¶ 16). Shockingly, in direct contrast to her sworn declaration, the February 2009 fax from Ron Doster to defendant Countrywide, communicating plaintiff's desire to sell the property to her ex-husband in a short sale *actually included the September 2008 letter from defendant Countrywide*, indicating that plaintiff did, in fact, receive the September 2008 letter.

Plaintiff's counsel asserted at the March 4 hearing that plaintiff did not commit perjury when she declared that she did not receive any letters pursuant to Section 2923.5 because the

7

1  September 2008 letter did not fully comply with Section 2923.5. Plaintiff's counsel explained
2  that he read the statute in question to his client who responded that she did not receive any letter
3  fully complying with the statute. Plaintiff is not a lawyer. Plaintiff's counsel argued at an earlier
4  hearing that plaintiff is an unsophisticated borrower who had been misled by her broker and
5  defendant AWL as to the terms of the loan. This order does not attempt to sort out whether
6  plaintiff is indeed a naive, unsophisticated borrower, who was defrauded into taking on an
7  exorbitant loan on her broker's representations without even reading any of the paperwork, or
8  whether she is a savvy enough individual who can interpret legal statutes.

9  This order holds as a matter of law that the September 2008 letter and the declaration
10 attached to the notice of default satisfied the notification requirement under Section 2923.5.
11 Accordingly, defendants complied with the notification statute, and there is no genuine issue of
12 material fact as to this claim.

### C. FRAUD.

14 Although the complaint fails to specifically set forth fraud as a claim for relief, it makes
15 references to fraud on the part of defendants. The complaint contains one paragraph that refers
16 to "excessive financing . . . Defendants as part of their continuing scheme intentionally placed
17 Plaintiff in a sub-prime loan to the benefit of the Defendants with excessively high interest
18 rates, Defendants failed to provide Plaintiff mandated disclosures, and Defendants repeatedly
19 employed coercive tactics in order to force Plaintiff to sign the loan documents" (Compl. ¶ 81).
20 The complaint also alleges that defendants engaged in an illegal scheme to make commissions,
21 kickbacks, illegal undisclosed yield spread premiums, and undisclosed profits and that they
22 misrepresented facts to force plaintiff to pay large amounts of money or to abandon the property
23 to foreclosure sale (*id.* ¶¶ 46, 48). At the hearing on January 14, 2010, plaintiff's counsel argued
24 that plaintiff had been misled by her broker and defendant AWL as to the terms of the loan.
25 But plaintiff has not provided any evidence to support such a claim in the complaint nor since the
26 hearing. Rule 9(c) requires that a party state with particularity the circumstances constituting
27 fraud. Zero evidence to support this theory has been advanced. Accordingly, plaintiff has not
28 created a genuine issue of material fact as to the fraud claim.

8

### D.   QUIET TITLE.

Plaintiff seeks to quiet title against defendants Recontrust, defendant Countrywide, and all Does (Compl. ¶ 56-92). Plaintiff alleges that defendants do not possess the promissory note, and thus cannot foreclose upon the property (*id.* ¶ 57-62). The purpose of a quiet title action "is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." *Peterson v. Gibbs*, 147 Cal. 1, 5 (1905). "[A] mortgagor of real property, cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). "The cloud upon [one's] title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). Undisputed facts show that plaintiff has an outstanding loan on the property, and that defendant BNYM holds the promissory note. Plaintiff cannot quiet the title until she repays the mortgage. There is no genuine issue of material fact on this claim.

### E.   ACCOUNTING.

Plaintiff asserts an accounting claim against defendants AWL, Countrywide, Recontrust, and Does 1–100. An accounting may take the form of a legal remedy or an equitable claim. Plaintiff presents no case for either. Plaintiff asserts that an accounting is necessary to determine how much money defendants owe Plaintiff. However, plaintiff has not presented any evidence suggesting that defendants owe her any money. There is no genuine issue of material fact and plaintiff's accounting claim fails as a matter of law.

### F.   REAL ESTATE SETTLEMENT PROCEDURES ACT.

Plaintiff asserts that defendant Countrywide violated RESPA, 12 U.S.C. 2607(b), when it did not respond to her fax from May 12, 2009. In May 2009, after a trustee's sale had been set for later that month, plaintiff faxed a request to defendant Recontrust, seeking the cancellation of the trustee's sale because the sale was not brought in the name of the "real party in interest" and sought copies of all assignments of the deed of trust between defendant AWL, the lender, and defendant BNYM (Compl. ¶ 17, Exh. D). Section 2607 prohibits splitting of fees for the rendering of a real estate settlement service in connection with a federally related mortgage loan other than for services actually performed. But it is actually Section 2605 that governs claims

9

1 regarding written requests. Section 2605(e)(1) requires servicers of federally related mortgage
2 loans to respond to "qualified written requests" from borrowers seeking information relating to
3 loan servicing. 12 U.S.C. § 2605(e)(1). Servicers' failure to provide a response is actionable
4 under Section 2605(f).

A number of courts have read Section 2605(f) to require a showing of pecuniary damages. In *Hutchinson v. Del. Sav. Bank FSB*, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." 410 F. Supp. 2d 374, 383 (D.N.J. 2006). Here, regardless of defendants' alleged non-response to plaintiff's written request, plaintiff fails to provide any evidence that she suffered actual damages as a result of the alleged RESPA violation, which is fatal to her claim. *See Singh v. Washington Mutual Bank*, 2009 WL 2588885, at *5 (N.D. Cal. 2009). Accordingly, there is no genuine issue of material fact as to her RESPA claim and this claim fails as a matter of law.[3]

### G. UNFAIR COMPETITION.

Plaintiff asserts a claim of unfair competition against defendants AWL, Countrywide, and BNYM. Plaintiff alleges that these defendants' advertising violated California Business & Professional Code Section 17200, which prohibits "any unlawful, unfair or fraudulent business act or practice." Plaintiff fails to present any evidence showing that defendants' advertising constituted unlawful, unfair, or fraudulent business or practices. Plaintiff fails to create a genuine issue of material fact when she merely accuses defendants that they engaged in unlawful conduct or that she was harmed by their conduct and presents no evidence to actually support her claim.

### H. UNFAIR DEBT COLLECTIONS PRACTICES.

Plaintiff alleges defendants Countrywide and Recontrust violated the Federal Fair Debt Collections Act, the Rosenthal Fair Debt Collection Practices Act, and the Real Estate Settlement Procedures Act, without presenting any evidence as to what defendants did that violated these

---

[3] Plaintiff also addressed her qualified written request to defendant Recontrust, who is the trustee. Defendants do not clarify which defender should be considered the servicer, but the record and plaintiff's naming of defendant Countrywide as to this claim suggests if any defendant should have received the request, it should have been defendant Countrywide, who had been in constant communication with plaintiff regarding the servicing of her loan.

10

statutory provisions. As stated above, plaintiff must present some evidence to create a genuine issue of material fact.

This order also notes that the section that plaintiff refers to, California Civil Code Section 1788(e) and (f), does not exist.

### I. DECLARATORY RELIEF.

Plaintiff seeks declaratory relief. This claim is actually a request for remedy — to weigh it, the court must look to its underlying claims. *See Boeing Co. v. Cascades Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). If plaintiff seeks declaratory relief, she should request it as part of her prayer for relief.

### J. SLANDER OF TITLE.

Plaintiff claims slander of title against all defendants for recording a notice of default against the property. Slander of title is a "tortious injury to property resulting from *unprivileged*, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." *Southcott v. Pioneer Title Co.*, 203 Cal. App. 2d 673, 676 (1962) (emphasis added). California Civil Code Section 2924(d) explicitly states that notice requirements of nonjudicial foreclosure sales are privileged communications. *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008). Plaintiff's claim for slander of title fails as a matter of law. There is no genuine issue of material fact as to this claim.

### K. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's claim for intentional infliction of emotional distress amounts to the vague assertion that defendants' conduct caused her humiliation, mental anguish, and emotional and physical distress. The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Sup. Court*, 54 Cal. 3d 868, 903 (1991).

Plaintiff fails to present any evidence to show that defendants' conduct was so extreme and outrageous as to "exceed all bounds of that usually tolerated in a civilized community."

*Davidson v. City of Westminister*, 32 Cal. 3d 197, 209 (1982) (citations omitted). Recording a notice of default against her home when she failed to make her monthly loan payments and seeking to foreclose upon the property can hardly be characterized as conduct so extreme and outrageous as to exceed all bounds of tolerable behavior. Plaintiff's claim fails as a matter of law and there is no genuine issue of material fact.

### L. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's claim for negligent infliction of emotional distress merely repeats the same allegation that plaintiff asserted above: that defendants' conduct caused her humiliation, mental anguish, and emotional and physical distress. Negligent infliction of emotional distress is not an independent tort, but "the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 126 (2002) (citation omitted). Plaintiff fails to present any evidence demonstrating how any of the defendants owed her a duty of care and how they breached such a duty. Accordingly, there is no genuine issue of material fact and plaintiff's claim fails as a matter of law.

### CONCLUSION

In her opposition to defendants' motion for summary judgment, plaintiff argues that she should have summary judgment entered in her favor. If plaintiff wishes to file a motion for summary judgment, she must give proper notice and follow procedures under the applicable Federal Rules of Civil Procedure and the local rules.

For the foregoing reasons, this order finds that there is no genuine issue of material fact as to any of the claims. Accordingly, defendants' motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**

Dated: March 12, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE