```
                                              Pages 1 - 10

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

          BEFORE THE HONORABLE WILLIAM H. ALSUP

PETRA MARTINEZ,                  )
                                 )
           Plaintiff,            )
                                 )
   vs.                           ) NO. C 09-05630-WHA
                                 )
AMERICA'S WHOLESALE LENDER,      )
COUNTRYWIDE HOME LOANS SERVICING )
LP, BANK OF AMERICA, RECONTRUST  )
COMPANY, AND BANK OF NEW YORK    )
MELLON,                          )
                                 ) San Francisco, California
           Defendants.           ) Thursday
                                 ) March 4, 2010
_____) 2:15 p.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff**           Michael Rooney Law Office
                            580 California Street, 16th Floor
                            San Francisco, CA  94014
                            (415) 772-9875
                            (415) 704-3321 (fax)
                    **BY:   MICHAEL PATRICK ROONEY**


**For Defendant**           Severson & Werson
                            One Embarcadero Center
                            San Francisco, California  94111
                            (415) 398-3344
                            (415) 956-0439 (fax)
                    **BY:   KALAMA M. LUI-KWAN**




Reported by:    Lydia Zinn, CSR #9223, RPR, CRR
            *Official Reporter - US District Court*

```
 1                THE COURT:  Let's go to Petra Martinez.
 2                THE CLERK:  Case number 09-5630, Petra Martinez
 3   versus America's Wholesale Lender.
 4                Counsel, please state your appearances.
 5                MR. ROONEY:  Mike Rooney, appearing for
 6   Petra Martinez.
 7                MR. LUI-KWAN:  Kalama Lui-Kwan, for defendants.  Good
 8   afternoon, your Honor.
 9                THE COURT:  Good afternoon.
10                All right.  This is a motion by defendants.  Go
11   ahead.
12                MR. LUI-KWAN:  Thank you, your Honor.  I'll be brief.
13   I know your schedule is tight.  I'd like to make just two
14   big-picture points, and I won't belabor any of the details that
15   we've submitted in the briefs.
16                First is that we showed in the briefs that we
17   complied with Section 2924 and the nonjudicial foreclosure
18   statutes.  We showed that we don't have any -- there's no
19   requirement that we possess the promissory note; but in any
20   event, we do.
21                THE COURT:  Say that again.
22                MR. LUI-KWAN:  There's no requirement under
23   California law that we possess the promissory note; but in any
24   event, we do.
25                THE COURT:  All right.
```

1          **MR. LUI-KWAN:**  And that, even though we made --

2          **THE COURT:**  Who is the "we" part?  Which one of these
3  entities does possess it?

4          **MR. LUI-KWAN:**  Bank of New York.

5          **THE COURT:**  Bank of New York.

6          **MR. LUI-KWAN:**  Bank of New York Mellon.

7          **THE COURT:**  And is that in the -- is that document in
8  the record somewhere?

9          **MR. LUI-KWAN:**  Yes, your Honor, it is.

10         **THE COURT:**  Okay.

11         **MR. LUI-KWAN:**  And specifically, if you look at our
12  brief -- at our opening brief at page 19, that will point you
13  to all of the documents.

14         **THE COURT:**  Okay.  All right.  Thank you.

15         **MR. LUI-KWAN:**  Now, even though we've submitted all
16  of this evidence, plaintiff hasn't offered any evidence to show
17  that we're wrong.  For instance, he hasn't -- or she hasn't
18  offered any of evidence showing that any other entity has come
19  forward to demand payment on the mortgage.  And so, quite
20  frankly, there's no dispute as to whether or not we comply with
21  the law, or whether we have an interest in proceeding with
22  foreclosure.  That's point one.

23             Point two is that plaintiff is basically turning
24  nonjudicial foreclosure law in California upside down.  The
25  whole point of the nonjudicial foreclosure statutes is to make

1  sure that there's an efficient, orderly way of proceeding with
2  foreclosure, so that parties can avoid the cost of litigation;
3  but by filing a complaint and multiple briefs that make wild
4  and truly false accusations about defendants, Ms. Martinez is
5  essentially forcing us to engage what is basically a judicial
6  foreclosure process.  And by doing that, she is not only
7  consuming the Court's time/resources, but obviously, our own.
8           And, just like so many of these other
9  foreclosure-delayed cases, three things almost always happen at
10 the end.  Number one, plaintiff will spend more time on the
11 property without paying rent or without paying mortgage.
12 Number two, the suit gets dismissed for failure to state a
13 claim.  And, number three, defendants end up paying for truly
14 unnecessary legal fees responding to baseless accusations.
15          I'll pause here.  I realize you have a time issue.
16          **THE COURT:**  All right.  Let's hear from the
17 plaintiff.
18          **MR. ROONEY:**  I'll just respond to those, your Honor.
19 Excuse me.
20          They represent they've complied with 2924.
21          That's not the case.  The first sentence of 2924
22 requires there be a note and a mortgage interest in favor of
23 the party seeking to foreclose under that statute.
24          There is no evidence on the record that they possess
25 it.  The only evidence is testimony from Michael Cerchio, who

1  has no evident personal knowledge of any of the facts he
2  testifies to.
3         The Bank of New York Mellon does not provide a copy
4  either of the original note, or of a note that's been
5  transferred to the Bank of New York Mellon.  The only note on
6  the record remains a note made in favor of America's Wholesale
7  Lender.  So, for a party claiming that its foreclosure interest
8  arises from transfer of the note, it's appropriate for the
9  Court to require evidence of such a transfer, because they
10 can't foreclose on someone else's right.
11        The declaration of Petra Martinez not only shows that
12 the defendants failed to contact her prior to filing a notice
13 of default pursuant to 2923.5, but it also points out the --
14 many of the origination documents offered into evidence by the
15 defendants are clearly redated by another person who wasn't the
16 plaintiff or her husband, who also signed the documents
17 sometime after origination.
18        In no uncertain terms, her declaration states that
19 she signed and dated on the 4th, and that it's not her
20 handwriting.  That shows the date being January 13th.  And if
21 you'll look through -- I believe it's the declaration of
22 George Merziotis, at Exhibit A, the loan application has been
23 redated by another person.  Exhibit B, the truth in lending
24 disclosure statement, you can clearly tell that that's neither
25 her nor her husband's handwriting and date.  The notice of

1  right to cancel, again, has been redated.  And it looks like
2  initials have been cut and pasted from another document.  And
3  the whole thing is a fabrication.
4          So that's what evidence we brought, because
5  essentially, that's -- that's what they mentioned in their
6  motion.  So we didn't go outside that scope.
7          **THE COURT:**  Let me ask you a question about something
8  you said.
9          Plaintiff's declaration says -- I'm going to quote
10 from paragraph 16 of her declaration under oath.
11              "Prior to December 27th, 2009."
12     Do you have that handy?
13         **MR. ROONEY:**  I am looking.  Yes.
14         **THE COURT:**  (Reading)
15              "Prior to December 7th, 2009,
16         defendants did not attempt to reach me by
17         phone pursuant to Civil Code Section
18         2923.5.  Defendants did not send me the
19         letters described therein" --
20     -- referring, I guess, to 2923.5.
21         -- "or certified letters described
22         therein to try to work my loan default out
23         with me."
24         Is that right?
25         **MR. ROONEY:**  Yes.

1      **THE COURT:**  Now, in the submission by defendants,
2 there is an Exhibit Number N, as in "Nancy."  It's a fax.  And
3 looks like it was a fax that was sent on behalf of your client,
4 Ms. Martinez, by someone called "Placer Financial Services."
5 Looks like someone named Ron D-o-s-t-e-r.  Doster.  Are you
6 with me so far?
7      **MR. ROONEY:**  Yes, your Honor.
8      **THE COURT:**  All right.  So that fax says, dated
9 2/24/09,
10          "To Whom it may Concern, Please review
11          attached for a short sale or loan
12          modification for Petra Martinez."
13   And then this says, "From Ron Doster," and phone numbers,
14 and so forth.  And attached to that is a letter from Ron
15 Doster, again asking for consideration of a short sale.
16      Then, going back to page -- doesn't have a page, but
17 there's a letter on Countrywide Home Loans' stationery, dated
18 September 16th, 2008, addressed to Petra Martinez.  And it
19 starts off saying,
20          "This letter is being sent pursuant to
21          California Code Section 2923.5."
22      Now, the way I read this is that her own broker had
23 this letter from Countrywide under 2923.5.  And I don't see how
24 you can reconcile that, if that's true, with what your client
25 says; that no one ever sent her such a letter under 2923.5.  So

1  what am I missing here?
2          **MR. ROONEY:** Your Honor, in the opposition at page
3  21, line 4, through page 22, line 7, it sets forth the
4  requirements of 2923.5. I understand that they sent her this
5  single letter. I showed Ms. Martinez 2923.5, which contains
6  numerous requirements beyond a single letter stating to be
7  under 2923.5.
8          For one thing, such letter can only be sent after due
9  diligence has been made on behalf of the beneficiary to contact
10 the borrower personally.
11         Secondly, borrower has a right to schedule a meeting
12 within 14 days, and to be represented by an attorney at that
13 meeting.
14         At G -- Subsection G. of 2923.5, it says, Despite
15 such due diligence, if they can't reach the borrower, then
16 they'll first attempt to contact by sending a first-class
17 letter. After the letter has been sent, they'll attempt to
18 contact the borrower by phone three times at different hours on
19 different days. They can use an automated dialing system. If
20 the phone number's disconnected, it's excused; but if they
21 don't respond within two weeks after the telephone call, then
22 they shall send a certified letter with return receipt
23 requested, and provide such means to contact them during
24 business hours.
25         Mortgagee, beneficiary, or authorized agent has a

1  puts a prominent link on the home page of its Internet website.
2  Options that may be available to borrowers are listed on the
3  website.  List of financial documents, a toll-free number, and
4  a number to HUD.  Those are the requirements of 2923.5.
5           In the opposition at page 22, line 8, on, is the
6  argument why a single letter doesn't satisfy 2923.5, nor do the
7  contents of that letter satisfy the spirit of 2923.5.
8           **THE COURT:**  So when your client said under oath,
9  "Defendants did not send me the letters," plural, "described
10 therein or the certified letters described therein to work out
11 my loan default with me," was she aware of this letter right
12 here that was attached (indicating) to the other side's
13 submission, which letter was dated September 16th, 2008?
14          **MR. ROONEY:**  I'm sure she was aware of the letter,
15 your Honor.  I don't think the wording of her declaration is
16 such that she's denying receipt of that single letter.
17          She's saying that, with knowledge of the entire
18 scheme of 2923.5, defendants did not comply.
19          **THE COURT:**  Is she a lawyer?
20          **MR. ROONEY:**  Well, I read her 2923.5.  And I had her
21 look at it.  And I asked her, "Did they do all of this stuff
22 before the default?"  And she said, "No."
23          **THE COURT:**  Is she a lawyer?
24          **MR. ROONEY:**  No.
25          **THE COURT:**  All right.  I'll have to leave it there.

```
 1  Under submission.  Thank you.
 2              MR. LUI-KWAN:  Thank you, your Honor.
 3              Oh, one last item, your Honor.  Mr. Rooney and I have
 4  been discussing our upcoming case management conference in this
 5  case, which I believe is currently set for a week from today.
 6  In light of the Court's pending ruling on the motion for
 7  summary judgment, would the Court be willing to continue the
 8  C.M.C. by 30 days?
 9              THE COURT:  When is it coming up?
10              MR. LUI-KWAN:  Next week, Wednesday.
11              THE COURT:  We'll put it off one week.  Postpone that
12  by one week.  All right.  Thank you.
13              MR. LUI-KWAN:  Thank you, your Honor.
14              MR. ROONEY:  Thank you, your Honor.
15              THE COURT:  Mm-hm.  All right.
16              (At 2:30 p.m. the proceedings were concluded)
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

    I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C. 09-5630 WHA, Petra Martinez v. America's Wholesale Lender, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

    The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Thursday, March 4, 2010